# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. ZAZZALI, as Trustee for the DBSI Private Actions Trust,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ADVISORY GROUP EQUITY SERVICES, LTD, et al.,<br><br>　　　　　　Defendants. | C.A. No. 11-475-GMS |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION IN THE ALTERNATIVE

| SAUL EWING LLP | LOCKE LORD LLP |
|---|---|
| Lucian B. Murley (No. 4892)<br>Michael J. Farnan (No. 5165)<br>222 Delaware Avenue, Suite 1200<br>P.O. Box 1266<br>Wilmington, DE 19899<br>Telephone: (302) 421-6898 / 6895<br>Facsimile: (302) 421-6813<br>Email: lmurley@saul.com<br>　　　　mfarnan@saul.com | Martin W. Jaszczuk (Illinois Bar No. 6277720)<br>Alan M. Wolper (Illinois Bar No. 6305212)<br>Helen Din (Illinois Bar No. 6296239)<br>111 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 443-0610 / 0401 / 0222<br>Facsimile: (312) 896-6610/ 6401/ 6222<br>E-mail:mjaszczuk@lockelord.com<br>　　　　awolper@lockelord.com<br>　　　　hdin@lockelord.com |

*Counsel for Defendants Calton & Associates, Inc., Merrimac Corporate Securities, Inc., J.W. Cole Financial, Inc., and Resource Horizons Group, LLC*

DATED: October 24, 2011

608999.1 10/24/2011

-i-

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ................................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.     The Court Should Compel The Trustee to Arbitrate his Claims Against The Moving Defendants. ............................................................................................ 2

    A.     The Claims at Issue Are Covered by Valid And Binding Arbitration Agreements. ............................................................................................ 2

    B.     As An Assignee of Arbitrable Claims, The Trustee Is Required to Arbitrate to The Same Extent as The Signatories to The Arbitration Agreements. ............................................................................................ 3

    C.     Certain Underlying Customers of J.W. Cole and Resource Horizons Group Have Already Initiated Arbitration Before FINRA Asserting Claims As To Their DBSI Investments. ............................................................................................ 5

CONCLUSION ..................................................................................................................... 7

-ii-

# TABLE OF AUTHORITIES

### FEDERAL CASES

*BAE Sys. Aircraft Controls v. Eclipse Aviation Corp.*, 224 F.R.D. 581 (D. Del 2004) .................. 3

*Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3d Cir. N.J. 1985) ............................... 3

*E-Time Sys. v. Voicestream Wireless Corp.*, 2002 U.S. Dist. LEXIS 15568 (E.D. Pa. Aug. 19, 2002) .................. 3

*Great Amer. Lumber Corp. v. Nat'l R. Passenger Corp.*, 886 F.2d 50 (3d Cir. 1989) ................... 3

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225 (3d Cir. 1998) ..................... 4

*John Hancock Mut. Life Insur. Co. v. Olick*, 151 F. 3d 132 (3d Cir. 1998) ................................ 3

*Milo H. Segener v. Securities America, et al*, Case No. 10-cv-1884-F (N.D. Tex. 2011) .......... 4, 5

*Paine Webber, Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990) .............................................. 1, 3

*Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300 (S.D. Tex. 1999) ............................................ 3

### STATE CASES

*Resort Point Custom Homes, LLC v. Tait*, 2010 Del. Super. LEXIS 144 (Del. Super. Ct. Apr. 7, 2010) .................. 3

### FEDERAL STATUTES

9 U.S.C. § 3 ........................................................................................................................... 3

## INTRODUCTION

Plaintiff James R. Zazzali, acting as the trustee of the DBSI Private Actions Trust ("the Trustee"), purports to bring this action as the assignee of claims from numerous investors who allegedly purchased securities issued by DBSI, Inc. or entities it played a role in forming. The Trustee alleges that the defendants are liable under the federal securities laws and the common law of unidentified states for investments that they allegedly sold to unidentified PAT beneficiaries. As evidenced by the declarations and exhibits attached hereto, any investor that purchased a DBSI security through any of the Moving Defendants[1] would have signed a valid and binding arbitration agreement. As an assignee of those investors' claims, the Trustee is bound to arbitrate those claims as well.

## NATURE AND STAGE OF THE PROCEEDINGS

A detailed factual background and statement of the nature and stage of the proceedings is contained in the Opening Brief in Support of Motion to Dismiss the Complaint in its Entirety with Prejudice For Failure to Sufficiently State Claims for Relief filed by certain broker-dealer defendants. The Moving Defendants hereby incorporate that motion in its entirety.

## SUMMARY OF ARGUMENT

Any investor who purchased securities sold by DBSI through any of the Moving Defendants would have signed a valid arbitration agreement provision that requires them to arbitrate any dispute related to the sale of those securities. Where "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement," the court must compel arbitration. *Paine Webber, Inc. v. Hartmann*, 921 F.2d 507,

---

[1] The following defendants join in this motion: Calton & Associates, Inc., Merrimac Corporate Securities, Inc., J.W. Cole Financial, Inc., and Resource Horizons Group, LLC.

511 (3d Cir. 1990). The Trustee, as an assignee of claims from those investors, is required to arbitrate to the same extent as the investors themselves.

## ARGUMENT

I. **The Court Should Compel The Trustee to Arbitrate His Claims Against The Moving Defendants.**

   A. **The Claims at Issue Are Covered by Valid And Binding Arbitration Agreements.**

Any customer who purchased securities through the Moving Defendants (which necessarily includes any investors who assigned their claims to the PAT) signed a valid arbitration agreement that requires any dispute arising out of his or her account to be arbitrated and not litigated.[2] The Trustee has provided preliminary lists to the Moving Defendants identifying investors who allegedly purchased DBSI securities through the Moving Defendants and who purportedly assigned their claims to the Trustee. The Trustee, however, has failed to provide Moving Defendants with a complete and final list of investors on whose behalf Plaintiff

---

[2] **Calton & Associates, Inc.'s** agreement covers "any controversy arising out of or relating to" accounts with Calton. *See* Ex. 1, Decl. of Dwayne Calton.

**Merrimac Corporate Securities, Inc.'s** agreement covers "any and all controversies, disputes or claims between the undersigned and you, or the introducing broker…arising out of, in connection with, from or with respect to (a) any provisions or the validity of this agreement…, (b) the relationship of the parties hereto, or (c) any controversy arising out of your business, the introducing broker's business or the undersigned's accounts." *See* Ex. 2, Decl. of Richard L. Barrett.

**J.W. Cole Financial, Inc.'s** agreement covers "all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened…." *See* Ex. 3, Account Applications and Pre-Dispute Arbitration Agreements for the J.W. Cole investors who the Trustee has preliminarily identified as having assigned their claims to the Trustee.

**Resource Horizons Group, LLC's** agreement covers "any controversy between [the investor] and Resource Horizons Group, LLC arising out of the business of Resource Horizons Group, LLC." *See* Ex. 4, New Account Form and Customer Agreement and Disclosure Statement for William Goldman, the sole investor who the Trustee has preliminarily identified as having assigned his claims to the Trustee.

is suing in this case and such information is not contained where it properly belongs – the Trustee's Complaint.

The Federal Arbitration Act ("FAA") mandates that where, as in this case, an issue in a pending lawsuit is referable to arbitration under a written agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. § 3. A court is only required to engage in a "limited review to determine whether the dispute is arbitrable." *John Hancock Mut. Life Insur. Co. v. Olick*, 151 F. 3d 132, 137 (3d Cir. 1998). If a "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement," the court must compel arbitration. *Id.*; *Paine Webber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). Where all of the issues in a case are arbitrable, as they are here, the court has authority to dismiss the case. *BAE Sys. Aircraft Controls v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del 2004).

### B. As An Assignee of Arbitrable Claims, The Trustee Is Required to Arbitrate to The Same Extent as The Signatories to The Arbitration Agreements.

The Trustee is obligated to arbitrate to the same extent as the investors who signed the arbitration agreements. It is black letter law that an assignee stands in the shoes of an assignor and takes "assigned claims subject to all defenses of the obligor against the assignor." *Resort Point Custom Homes, LLC v. Tait*, 2010 Del. Super. LEXIS 144 (Del. Super. Ct. Apr. 7, 2010); *Great Amer. Lumber Corp. v. Nat'l R. Passenger Corp.*, 886 F.2d 50, 55 (3d Cir. 1989). A party that is assigned an otherwise arbitrable claim is bound to arbitrate that claim to the same extent as the assignor who signed an arbitration agreement. *E-Time Sys. v. Voicestream Wireless Corp.*, 2002 U.S. Dist. LEXIS 15568 (E.D. Pa. Aug. 19, 2002); *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 316 (S.D. Tex. 1999); *see also Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d

923, 938 (3d Cir. N.J. 1985) (reversed on other grounds) ("a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles"); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 229 (3d Cir. 1998) (same).

Several courts have applied this rule to compel a trustee to arbitrate disputes assigned to him by investors. In *Trefny*, for example, the Securities Investor Protection Corporation ("SIPC") sued a failing brokerage firm, MBM, that had allegedly stolen money from its customers. *Id.* at 305. The court appointed a trustee to oversee the liquidation of MBM and referred the liquidation to the bankruptcy court. *Id.* While that case was pending, the SIPC advanced funds to the trustee to pay customer claims; in return, the customers assigned any claims they might have to the trustee. *Id.* Acting pursuant to those assignments, the trustee sued Bear Stearns, who had served as a clearing broker for MBM. *Id.* at 306. The trustee alleged that Bear Stearns was liable for the fraud committed by the defunct brokerage firm. *Id.* When they opened an account at MBM, each customer executed a written agreement with Bear Stearns that obligated them to arbitrate any claims against Bear Stearns. *Id.* at 305. Based on these agreements, Bear Stearns filed a motion to compel the trustee to arbitrate the claims in the adversary proceeding. *Id.* at 307. The court applied basic principles of agency law and granted the motion. *Id.* at 316. Because the trustee asserted claims derived from or on behalf of the signatories, he was bound by the arbitration provisions "to the extent that they bind the signatories." *Id.*

Just two months ago, a different court reached the same conclusion in a case that is nearly identical to this one. In *Milo H. Segener v. Securities America*, Case No. 10-cv-1884-F (N.D. Tex. 2011), the court ordered a bankruptcy trustee to arbitrate claims that the trustee had

received through assignment because the assignors had signed valid arbitration agreements with the defendants. A copy of that opinion is attached as Ex. 5. The trustee in *Segner* was presiding over the estate of a company that syndicated oil and gas partnerships. *Id.* at 2-3. Just like here, as part of the bankruptcy proceeding, a trust was established to pursue claims against third parties. *Id.* at 5. As in this case, investors assigned their claims to the trust. *Id.* The trustee of the litigation trust brought suit against broker-dealers who had sold securities issued by the entity. *Id.* at 2. The trustee alleged that the bankrupt entity was a Ponzi scheme and sought to hold the broker-dealers liable for selling securities issued by the entity. *Id.* at 3-4. Faced with a motion to compel arbitration by the broker-dealer defendants, the court ordered that any claims the trustee was pursuing via an assignment from investors (who had signed arbitration agreements) had to be arbitrated. *Id.* at 23. The court ruled that the trustee "as the assignee of the investors' claims, stands directly in the shoes of the investors as if they had brought these claims themselves." *Id.* The investors themselves would have to arbitrate the claims if they had brought them directly and the trustee "[s]tanding in their shoes, cannot compel a different result." *Id.*

Here too, any investors who purchased a security through the Moving Defendants, including any investor who assigned claims to the Trustee, signed an arbitration agreement. Because the Trustee stands in the shoes of those investors, he must arbitrate those claims.

### C. Certain Underlying Customers of J.W. Cole and Resource Horizons Group Have Already Initiated Arbitration Before FINRA Asserting Claims As To Their DBSI Investments.

The Trustee has preliminarily indicated that he is suing on behalf of two investors, David J. Williams and David Goldman, who have previously initiated separate arbitrations against their respective broker-dealers regarding their investments in DBSI offerings. Ignoring the fact that

these customers have already decided to arbitrate their claims, the Trustee nevertheless attempts to have two bites at the proverbial apple by including duplicitous claims in this case.

Notably, before investing in any DBSI offerings through J.W. Cole Financial, Inc. ("J.W. Cole"), Mr. Williams executed an agreement to arbitrate "[a]ll controversies that may arise between us (including, but not limited to controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between us, whether entered into or arising before, on or after the date this account is opened)." *See* Ex. 3, Account Application and Customer Account Pre-Dispute Arbitration Agreement for David Williams. Similarly, Mr. Goldman executed an agreement to arbitrate "any controversy between myself and Resource Horizons Group, LLC arising out of the business of Resource Horizons Group, LLC." *See* Ex. 4, New Account Form and Customer Agreement and Disclosure Statement for William Goldman.

Pursuant to his arbitration agreement with J.W. Cole, on or about April 8, 2011 Mr. Williams, through his counsel Fishman Haygood Phelps Walmsley Willis & Swanson, LLP, filed an arbitration against J.W. Cole. *See* Ex. 6, Ltr. from FINRA and Arbitration Submission Agreement Executed by David Williams on Dec. 29, 2010. This arbitration was brought before the Financial Industry Regulatory Authority ("FINRA") and encompasses the claims concerning Mr. Williams' investment in DBSI offerings that the Trustee brought again here. On or about June 7, 2011, Mr. Williams, through his counsel, filed an amended arbitration demand against J.W. Cole. *See* Ex. 7, Amended Statement of Claim.

Similarly, following his arbitration agreement with RHG, Mr. Goldman, through his counsel, Stoltmann Law Offices, P.C., initiated an arbitration before FINRA against RHG

asserting claims over his DBSI investments. *See* Ex. 8, Statement of Claim and FINRA Submission Agreement by William Goldman.

Both Mr. Williams and Mr. Goldman are contractually obligated to arbitrate their respective claims against their broker-dealers pursuant to their arbitration agreements. As demonstrated above, the Trustee, as assignee of their claims, is also obligated to arbitrate any claims against J.W. Cole and RHG.

## CONCLUSION

For all of the foregoing reasons, the Moving Defendants respectfully request that this Court enter an order granting their Motion to Dismiss the Complaint for Lack of Standing and Subject Matter Jurisdiction and their Motion to Dismiss the Complaint In Its Entirety, or, in the alternative, grant this Motion to Compel Arbitration.

        **SAUL EWING LLP**

By: /s/ Michael J. Farnan
Lucian B. Murley (No. 4892)
Michael J. Farnan (No. 5165)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6898 / 6895
(302) 421-6813 (Fax)
Email:   lmurley@saul.com
            mfarnan@saul.com

-and-

Martin W. Jaszczuk (Illinois Bar No. 6277720)
Alan M. Wolper (Illinois Bar No. 6305212)
Helen Din (Illinois Bar No. 6296239)
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0610 / 0401 / 0222
Facsimile: (312) 896-6610/ 6401/ 6222 (Fax)
E-mail:   mjaszczuk@lockelord.com
           awolper@lockelord.com
           hdin@lockelord.com

*Counsel for Defendants Calton & Associates, Inc., Merrimac Corporate Securities, Inc., J.W. Cole Financial, Inc., and Resource Horizons Group, LLC*

DATED: October 24, 2011