# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JAMES R. ZAZZALI, as Trustee for the DBSI Private Actions Trust,<br><br>        Plaintiff,<br><br>  v.<br><br>ADVISORY GROUP EQUITY SERVICES, LTD.,<br><br><br>        Defendants. | CIVIL ACTION<br>NO. 1:11-cv-00475-GMS |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF STANDING AND SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Christopher Viceconte (No. 5568)
Gibbons P.C.
1000 North West Street, Suite 1200
Wilmington, DE 19801-1058
Telephone: (302) 295-4875
Facsimile: (302) 295-4876
cviceconte@gibbonslaw.com

Brian J. McMahon
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
bmcmahon@gibbonslaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................iii

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 2

STATEMENT OF FACTS ............................................................................................... 3

    A.    This Action ............................................................................................ 3

    B.    The Establishment Of the PAT And Appointment Of The PAT Trustee ................................................................................................ 4

ARGUMENT ...................................................................................................................... 7

    I.    BECAUSE NOTHING IN STERN AFFECTS THE STANDING OF THE PAT TRUSTEE OR THE DISTRICT COURT'S POWER TO ADJUDICATE THESE FEDERAL-LAW SECURITIES CLAIMS, THIS MOTION TO DISMISS SHOULD BE DENIED. ................................. 7

        A.    Stern v. Marshall ........................................................................ 7

        B.    Stern's Narrow Limitation On A Bankruptcy Court's Power To Enter Final Judgment On Certain State Law Counterclaims Has Nothing To Do With The PAT Trustee's Standing To Pursue Assigned Federal-Law Claims In District Court. ..................................... 10

            1.    Any Stern challenge to the Bankruptcy Court's Article I authority is superfluous, because the PAT Trustee has standing by virtue of the claim holders' voluntary assignment of their claims. ........................................................ 11

            2.    Stern is irrelevant because the Bankruptcy Court's approval of the PAT Agreement and appointment of the PAT Trustee are not actions at common law or final judgments that can be entered only by an Article III court. .......................... 13

            3.    This action, unlike Stern, is a federal-law case in an Article III District Court, and Defendants' catchall allegations of "prejudice" have no relevance to the question of standing, particularly given this Court's unquestioned power to remedy any Stern defect by simply approving the Bankruptcy Court's order. ........................................................ 14

    II.    DEFENDANTS' MOTION IS NOT TIMELY AND IS BARRED UNDER THE DOCTRINES OF RES JUDICATA, COLLATERAL ESTOPPEL AND EQUITABLE MOOTNESS. ............................................. 17

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Caplin v. Marine Midland Grace Trust Co.,
  406 U.S. 416 (1972) .................................................................................. 12

Donaldson v. Bernstein,
  104 F.3d 547 (3d Cir. 1997) ..................................................................... 19

Farey-Jones v. Buckingham,
  132 F. Supp. 2d 92 (E.D.N.Y. 2001) ........................................................ 11

Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.,
  780 F. 2d 549, 551 (6th Cir. 1986) .......................................................... 21

Flast v. Cohen,
  392 U.S. 83 (1968) .................................................................................... 10

Granfinanciera S.A. v. Nordberg,
  492 U.S. 33 (1989) .................................................................................... 15

Grede v. Bank of New York Mellon,
  598 F.3d 899 (7th Cir. 2010) .............................................................. 12, 13

Grupo Dataflux v. Atlas Global Group, L.P.,
  541 U.S. 567 (2004) .................................................................................. 20

Hodge v. Hodge,
  621 F.2d 590 (3d Cir. 1980) ..................................................................... 20

In re Bujak,
  2011 Bankr. LEXIS 4291  (D. Idaho Nov. 3, 2011) ................................. 16

In re Canopy Financial, Inc.,
  2011 WL 3911082 (N.D. Ill. 2011) ............................................................ 9

In re Coudert Brothers LLP,
  2011 U.S. Dist. LEXIS 110425 (S.D.N.Y. Sept. 23, 2011) ...................... 19

In re DBSI, Inc.,
  Bankr. D. Del., 08-12687 ............................................................................ 1

In re Herley Indus. Secs. Litig.,
  2009 U.S. Dist. LEXIS 91600 (E.D. Pa. Sept. 30, 2009) ......................... 12

In re Hoopes,
    2011 Bankr. LEXIS 4442 (Bankr. D. Colo. Nov. 14, 2011) ................................... 14

In re Northfield Labs., Inc.,
    2010 Bankr. LEXIS 2635 (Bankr. D. Del. Aug. 27, 2010) ..................................... 20

In re Refco Inc.,
    2011 Bankr. LEXIS 4496  (Bankr. S.D.N.Y. Nov. 30, 2011) ............................. 8, 14

In re Safety Harbor Resort and Spa,
    2011 WL 3849369 (Bankr. M.D. Fla. Aug. 30, 2011) ............................................ 10

In re Salander O'Reilly Galleries,
    453 B.R. 106 (Bankr. S.D.N.Y. 2011) ................................................................... 14

In re Szostek,
    886 F.2d 1405 (3d Cir. 1989) ................................................................................ 19

In re The Fairchild Corporation,
    452 B.R. 525 (Bankr. D. Del. 2011) ................................................................ 16, 19

In re United Artists Theatre Corp.,
    315 F.3d 217 (3d Cir. 2003) .................................................................................. 21

In re Washington Mutual, Inc.,
    2011 Bankr. LEXIS 3361 (Bankr. D. Del. Sept. 13, 2011) .................................... 14

Kelley v. JPMorgan Chase & Co.,
    2011 WL 4403289 (D. Minn. 2011) ........................................................................ 9

Lowry v. Baltimore & Ohio R.R. Co.,
    707 F.2d 721 (3d Cir.) (en banc ), *cert. denied,* 464 U.S. 893 (1983).................... 11

Macleod v. Stelle,
    43 Idaho 64 (1926)................................................................................................ 11

Marion v. TDI Inc.,
    591 F.3d 137 (3d Cir. 2010)  *cert. denied,* __ U.S. __, 131 S. Ct. 1479 (2011)...... 12

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982)........................................................................................ 8, 9, 15

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,
    267 F.3d 340 (3d Cir. 2001) ................................................................................. 12

Refining, Inc. v. Sharples Specialty Co.,
    21 F. Supp. 511 (D. Del. 1937).............................................................................. 11

Republic Supply Co. v. Shoaf,
   815 F.2d 1046 (5th Cir. 1987) ........................................................................ 19

Semi-Tech Litigation, LLC  v. Bankers Trust Co.,
   272 F. Supp. 2d 319 (S.D.N.Y. 2003) ............................................................ 12

Sprint Communications Co. v. APCC Services, Inc.,
   554 U.S. 269 (2008) ........................................................................................ 11

Stern v. Marshall, __ U.S. __,
   131 S. Ct. 2594 (2011) ............................................................................ passim

Sure-Snap Corp. v. State St. Bank & Trust Co.,
   948 F.2d 869 (2d Cir. 1991) ........................................................................... 20

Vermont Agency of Natural Res. v. United States ex rel. Stevens,
   529 U.S. 765 (2000) ........................................................................................ 11

Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   589 F. 2d 974 (9th Cir. 1978) ......................................................................... 21

Warth v. Seldin,
   422 U.S. 490 (1975) ........................................................................................ 10

Whitehead v. Van Leuven,
   347 F. Supp. 505 (D. Idaho 1972) ................................................................. 11

## **STATUTES**

11 U.S.C. § 105(a) ............................................................................................ 14

11 U.S.C. § 1123(b)(6) ..................................................................................... 14

11 U.S.C. § 1144 ............................................................................................... 18

11 U.S.C. §§ 101-1532 ....................................................................................... 3

15 U.S.C. § 78aa ................................................................................................. 4

28 U.S.C. § 1331 ................................................................................................. 4

28 U.S.C. § 1334(a) .......................................................................................... 19

28 U.S.C. § 1367(a) ............................................................................................ 4

28 U.S.C. § 157(b) ............................................................................................ 14

28 U.S.C. § 157(b)(2) .......................................................................................... 7

28 U.S.C. § 157(b)(2)(C) ........................................................................................ 2, 7, 9

28 U.S.C. § 157(c) ..................................................................................................... 9, 16

28 U.S.C. § 27 ................................................................................................................. 4

28 U.S.C. §§ 1334 ........................................................................................................ 10

28 U.S.C. §157(b)(2)(C) .......................................................................................... 8, 13

## OTHER AUTHORITIES

8 <u>Collier on Bankruptcy</u>
  ¶ 1141.02[1] (16th ed. rev. 2011) ......................................................................... 19

## RULES

Bankr. R. 3017 & 3020(b) ........................................................................................... 18

Fed. R. Civ. P. 17(a)(1)(E) .......................................................................................... 12

Rule 12(b)(1) ............................................................................................................. 1, 22

Plaintiff, James R. Zazzali, as trustee ("PAT Trustee") for the DBSI Private Actions Trust ("PAT"), submits this Answering Brief in Opposition to Certain Defendants' Motion to Dismiss the Complaint for Lack of Standing and Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Standing Motion" [D.I. 153 & 154]).[1]  The Moving Defendants,[2] citing Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011), move to dismiss this action for lack of standing, asserting that the establishment of the PAT and the appointment of the PAT Trustee exceeded the constitutional authority of the Bankruptcy Court.

## NATURE AND STAGE OF PROCEEDINGS

By Order dated October 26, 2010, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order [Bankruptcy D.I. 5924] (the "Confirmation Order") confirming the *Second Amended Joint Chapter 11 Plan of Liquidation Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors* [Bankruptcy D.I. 5699] (the "Plan") in the Chapter 11 cases.  *See In re DBSI Inc.*, Bankr. D. Del., 08-12687 (PJW).  The Plan substantively consolidated the estates of the Plan Debtors and certain Consolidated Non-Debtors (as defined in the Plan), *nunc pro tunc* to November 10, 2008.  The Plan created, *inter alia,* two distinct trusts:  the DBSI Estate

---

[1]     Citations in the form ["D.I."] refer to the docket of this action.  References to the docket in the bankruptcy case, *In re DBSI Inc.*, Bankr. D. Del., 08-12687 (PJW), are in the form ["Bankruptcy D.I."].

[2]     The Moving Defendants for the Standing Motion [D.I. 153, 154] are: Advisory Group Equity Service, Inc., American Portfolios, Inc., Askar Corp., Brecek & Young Advisors, Burch & Co., Inc., Capital Analysts, Inc., Capital Management Securities, Inc., Carlton & Associates, Centaurus Financial, Inc., Dawson James Securities, Inc., Equity Services, Inc., Intervest International Equities Corporation, Investment Security, Corp., Investors Capital Corporation, JW Cole Financial, KMS Financial Services, Inc. LaSalle Street Securities, Merrimac Corporate Securities, Inc. Mid Atlantic Capital Group, National Securities Corp., Nations Financial Group, Inc., NEXT Financial Group, Omni Brokerage, Inc., Partnervest Securities, Inc., Partnervest Financial Group, LLC, Questar Capital Corp., RE Capital, LLC, Regal Securities, Inc., Resource Horizons Group, Sammons Securities Company, LLC, Sanders Morris Harris, Inc., and Sigma Financial Corp.  Defendants Inlet Securities LLC, Axiom Capital, Money Concepts Capital Corp, and Newbridge Securities Corporation have joined the aforementioned motion to dismiss. [D.I. 168; 180; 184; 189]  Any additional arguments contained within those briefs have been addressed herein.

Litigation Trust and the Private Actions Trust. (Complaint [D.I. 1] ("Comp.") ¶ 12.  The "Trusts," for purposes of this motion, are these two.)  Upon the substantial consummation and effectiveness of the Plan, on October 29, 2010, the claims and causes of action held by the Debtors' estates and asserted herein were transferred from the consolidated bankruptcy estates of the Debtor entities to the Estate Litigation Trust.  Thereafter, certain creditors and equity interest holders of DBSI Inc. and certain of its affiliated Chapter 11 debtors (collectively, the "Debtors"), as well as non-debtor affiliates and subsidiaries, assigned their individual claims to the Private Actions Trust in exchange for beneficial interests therein. (For simplicity, these entities are sometimes referred to collectively as "DBSI.") Pursuant to the Plan, certain investors who purchased DBSI Securities from brokers voluntarily assigned their personal Non-Estate Causes of Action against those brokers to the PAT. (Comp. ¶ 13.)

On May 26, 2011, the PAT Trustee, filed the Complaint in this action [D.I. 1] against numerous broker-dealers (the "Defendants" or "Broker Defendants") for their role in the sale of DBSI Securities "DBSI Securities").  The Broker Defendants have filed a series of motions to dismiss the Complaint, including the Standing Motion to which this Brief is a response.

## SUMMARY OF ARGUMENT

1.     Stern v. Marshall, *supra*, held that an Article I Bankruptcy Court cannot enter final judgment as to a narrow class of state-law counterclaims under 28 U.S.C. § 157(b)(2)(C).  Stern has no bearing on the Bankruptcy Court's authority to approve the establishment of the PAT or appoint the PAT Trustee.

2.     In the alternative, the PAT Trustee has standing because the holders of the claims voluntarily assigned them to the Trustee, as they might assign them to anyone.

3.     Moreover, this Article III District Court unquestionably possesses the authority to adjudicate this action, which asserts claims under the federal Securities Exchange Act of 1934.  And even if the appointment of the PAT Trustee had exceeded the powers of an Article I Bankruptcy

-2-

Court -- which it clearly did not -- this Court would not be required to dismiss the action; it could remedy any <u>Stern</u> defect by simply treating the Bankruptcy Court's Order as a recommendation and approving it.

4.    Finally, in addition and in the alternative, the Standing Motion must be denied because it is barred under the doctrines of *res judicata*, collateral estoppel and equitable mootness.  This Plan has been confirmed and functioning for over a year.  This motion should be seen for what it is: a belated appeal of the Bankruptcy Court's Confirmation Order, timed for maximum disruption, in the guise of a challenge to "standing."

## STATEMENT OF FACTS

### A.    This Action

In 2008, numerous entities under the umbrella of DBSI Inc., filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  An Examiner appointed by the Bankruptcy Court issued an Interim Report which found financial improprieties in connection with the issuance and sale of DBSI Securities.  On September 11, 2009, the Bankruptcy Court approved the appointment of James R. Zazzali as DBSI's Chapter 11 Trustee.[3] (Comp. ¶¶ 8-10)

This action is brought in the District Court (not the Bankruptcy Court, a fact that will be pertinent later) on behalf of purchasers of DBSI securities who have assigned their claims to the PAT Trustee.  The Defendants, broker-dealers, are alleged to be liable for fraudulently marketing the DBSI securities and failing to conduct adequate due diligence.  The First and Second Causes of Action assert federal-law claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5. (Comp. ¶¶ 379-93)  The remaining Causes of Action allege state-law breach of contract, fraud, negligence, and breach of fiduciary duty claims. (Comp. ¶¶ 394-420)  This District

---

[3]    Mr. Zazzali's former capacity as Chapter 11 Trustee is not to be confused with that of PAT Trustee, the capacity in which he has filed this action.

Court has jurisdiction over the two federal-law causes of action pursuant to 28 U.S.C. § 1331 and § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.  It has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(a). (Comp. ¶ 208)

### B.        The Establishment Of the PAT And Appointment Of The PAT Trustee

The claims in this action against the Broker Defendants are not asserted directly by the customers who purchased DBSI Securities from Defendants.  Rather, those customers have assigned their claims to the PAT, and the PAT Trustee now asserts them on the customers' behalf. (Comp. ¶ 13)  That came about as follows:

On October 26, 2010, the Bankruptcy Court issued Findings the Confirmation Order in the Chapter 11 cases.  The Confirmation Order substantively consolidated certain of the Debtors' estates and confirmed the Plan.

The confirmed Plan, *inter alia,* approved the Private Actions Trust Agreement ("PAT Agreement," Plan Exhibit 4).[4]  In particular, it approved establishment of the PAT and the appointment of the PAT Trustee. (Comp. ¶12; Plan I.B.1.142, I.B.1.176-81, VI.M.2)  The PAT is empowered to hold and litigate "Contributed Non-Estate Causes of Action." (Plan I.B.1.33) "Non-Estate" causes of action, as the name implies, are claims related to the DBSI cases, but not held by or asserted against the Debtor.[5]  As relevant to this action, a Non-Estate Cause of Action is one asserted by an injured customer who purchased DBSI securities from a Broker Defendant.

---

[4]       Relevant pages excerpted from a true and correct copy of the Plan and a true and correct copy of the PAT Agreement are attached to the Declaration of Debra A. Clifford ("Clifford Decl.") as Exhibits A and B, respectively.

[5]       More formally, the Plan defines Non-Estate Causes of Action as follows:

those Causes of Action which are held by a TIC Investor, or a Holder of a Note Claim, a Bond Claim, a Preferred Unit, a Sharing Unit or a Non-Preferred Unit, arising from any matter involving the Plan Debtors and Consolidated Non-Debtors against:  (i) all current and former officers, directors, members, shareholders or employees of any of the Plan Debtors; (ii) all Persons or Entities that conducted transactions with any of

The  holder of a Non-Estate Cause of Action had the option to assign it to the PAT.  The

"Private Actions Trust Election" is a voluntary "agreement," evidenced by an Election Form, "to

contribute and assign such Holder's Non-Estate Causes of Action to the Private Actions Trust." (Plan

I.B.1.180)[6]  In return, the holder received a beneficial interest in the PAT.  Thus the PAT does not

own the Non-Estate Cause of Action solely by virtue of an order of the Bankruptcy Court, but also by

means of an ordinary, voluntary assignment.

---

the Plan Debtors, including, without limitation, investment bankers and lenders; and
(iii) all Persons or Entities that provided professional services to any of the Plan
Debtors, including, without limitation, all attorneys, accountants, auditors, financial
advisors and other parties providing services to the Plan Debtors in connection with
the public issuance of debt or equity, including, without limitation, all underwriters,
due diligence providers, or securities brokers/dealers . . .

(Plan I.B.1.151)

The Plan defines Estate Causes of Action as follows:

Avoidance Actions and all other Causes of Action held by any or all of the Estates,
including, but not limited to, any adversary proceeding that is pending on the Effective
Date, and shall exclude, for avoidance of doubt, (i) any Cause of Action arising after
the Effective Date in connection with any Asset of the DBSI Liquidating Trust or the
DBSI Real Estate Liquidating Trust, and (ii) Objection Rights, provided, however, that
(x) to the extent any Estate Cause of Action involving an adversary proceeding that is
pending on the Effective Date relates to a common set of facts or legal issues also
implicated by an Objection Right, the DBSI Estate Litigation Trustee shall have
authority to file, settle, compromise, withdraw or litigate to judgment such Estate
Cause of Action and Objection Right, in coordination and cooperation with the
applicable Trustee, and (y) to the extent any Estate Cause of Action involving an
adversary proceeding that is commenced after the Effective Date relates to a common
set of facts or legal issues also implicated by an Objection Right, there shall be
coordination and cooperation as needed between the applicable Trustee and the DBSI
Estate Litigation Trustee regarding the preservation, assertion, prosecution and any
settlement of such related Objection Right and Estate Cause of Action.

(Plan 1.109)

[6]      A true and correct copy of the Election Form is attached to the Clifford Decl. as Exhibit C.
The Election Form signed by each contributing claim holder states that "I am voluntarily contributing
my Non-Estate Causes of Action and assigning my allocable share of the proceeds from the Non-
Estate Causes of Action to the Private Actions Trust."

The PAT Trustee is empowered, and has begun, to "hold, prosecute and liquidate" the PAT assets by litigating or settling the assigned causes of action.  (Plan VI.M.2(d), (g)(i), (g)(iv))  This District Court action, for example, is part of that liquidation process.

The beneficiaries of the PAT, which ultimately receive the net proceeds of the liquidation of these Contributed Non-Estate Causes of Action, fall into two categories:

    (a)      The holders who assigned the causes of action to the PAT collectively hold an 80% beneficial interest in the PAT.  They are entitled individually to a *pro rata* share of 80% of the net proceeds of the PAT's liquidation of claims. (Plan VI.M.2(f))

    (b)      The DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust respectively hold a 5% and a 15% beneficial interest in the PAT. (Plan VI.M.2(f), I.B1.178, I.B.1.83(x))  That combined 20% share of the net proceeds directly benefits the Estate.

To "prime the pump" and finance the PAT's activities, the DBSI Real Estate Liquidating Trust initially lent the PAT $1 million to finance its activities.  That sum is to be repaid with the initial proceeds of the PAT Trust's liquidation of certain Non-Estate Causes of Action. (PAT Agreement, § 1.6)

**ARGUMENT**

I.   **BECAUSE NOTHING IN STERN AFFECTS THE STANDING OF THE PAT TRUSTEE OR THE DISTRICT COURT'S POWER TO ADJUDICATE THESE FEDERAL-LAW SECURITIES CLAIMS, THIS MOTION TO DISMISS SHOULD BE DENIED.**

This Standing Motion is a vast *non sequitur*. Stern held that an Article I Bankruptcy Court lacks the power to enter a final judgment as to certain state law counterclaims, which can be finally adjudicated only by an Article III District Court. The action challenged here is not the entry of a final judgment by a Bankruptcy Court; it is the Bankruptcy Court's approval of an agreement creating a trust and the appointment of a trustee. Moreover, and in the alternative, the PAT Trustee's "standing" to assert these claims exists because the holders of the claims voluntarily assigned them to the trustee, as they might assign them to anyone. This is not a state-law action; it asserts claims under the federal securities laws (with pendent state-law claims). Indeed, Defendants' entire lengthy discussion of the claims that may or may not be adjudicated by an Article I Bankruptcy Court is irrelevant; this action was not filed in Bankruptcy Court, but in District Court.

In short, this Standing Motion is a virtual compendium of reasons that Stern does *not* apply.

A.   **Stern v. Marshall**

In Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011), the debtor (Vickie) filed in Bankruptcy Court a counterclaim against Pierce Marshall (Pierce), the son and heir of her deceased husband (J. Howard). Vickie prevailed on that counterclaim, which alleged under state law that Pierce tortiously interfered with a promised gift from J. Howard to Vickie. Although the counterclaim met the statutory definition of a "core" claim, *see* 28 U.S.C. § 157(b)(2)(C),[7] the Court

---

[7]     The Supreme Court found that the bankruptcy court had the statutory authority under 28 U.S.C. § 157(b)(2) to decide this "core" claim. Stern, 131 S. Ct. at 2603-05. A "core" claim, which the bankruptcy court may finally adjudicate, is one arising under bankruptcy law or arising in the bankruptcy case; the statute defines some sixteen categories of core matters. Stern holds, in effect,

concluded that that single subsection of the statute unconstitutionally granted Article III judicial power to Article I bankruptcy judges. Stern, 131 S. Ct. at 2600-01; see also In re Refco Inc., 2011 Bankr. LEXIS 4496 at *4 (Bankr. S.D.N.Y. Nov. 30, 2011) ("Stern . . . held that a different subsection of the Judicial Code, 28 U.S.C. §157(b)(2)(C), unconstitutionally conferred on the bankruptcy courts, as courts established under Article I not Article III of the Constitution, the power to issue final judgments").  The "judicial power" conferred by Article III can be exercised constitutionally only when Article III's lifetime tenure and salary protections guard the "system of checks and balances [and] … the integrity of judicial decision making." 131 S. Ct. at 2609.  As relevant here, that judicial power is the power to decide a case, *i.e.,* to enter judgment in "Cases, in Law and Equity." U.S. Const., art. III, § 2.  Thus, when one of the "'traditional actions at common law …' is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* (quoting Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 90 (1982) (Rehnquist, C.J., concurring)).  A court "exercise[s] the 'judicial power of the United States' in purporting to resolve and enter final judgment on a state common law claim." *Id.* at 2611.  Because a Bankruptcy Court does not enjoy Article III salary and tenure guarantees, it is not authorized by Article III to enter such a judgment.  When a Bankruptcy Court, in a non-core case, enters final judgments, which "are binding and enforceable even in the absence of an appeal," it cannot be regarded as a mere adjunct, partaking of the delegated powers of the District Court. *Id.* at 2611 (quoting Northern Pipeline, 458 U.S. at 85-86).  Rather, its constitutional authority must be found elsewhere: chiefly, within the Article I authority of Congress to enact "Laws, on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4.

---

that the statutory definition of a "core" case is too broad, and exceeds the Constitutional limits of bankruptcy court authority, in one limited respect.

Article I Bankruptcy Courts nevertheless enjoy broad powers to administer and dispose of matters within their specialized domain.  Thus cases which involve "public rights" in connection with a bankruptcy case may proceed, even to final judgment, in the Bankruptcy Court.  The Supreme Court in Stern observed that its case law has been less than clear, but that in general the "public rights" exception permits the Bankruptcy Court to enter judgment where "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Stern, 131 S. Ct. at 2618.

An Article I Bankruptcy Court is statutorily empowered to enter final judgment in "core" cases by the Bankruptcy Act of 1984, which was enacted in response to Northern Pipeline. *See* 28 U.S.C. § 157(b).  Stern held only that "Congress, *in one isolated respect*, exceeded [the Constitutional] limitation in the Bankruptcy Act of 1984." 131 S. Ct. at 2620 (emphasis added).  In short, the issue decided in Stern is a "narrow" one. *Id.*  It is confined to the distribution of issues between the District Court and the Bankruptcy Court with respect to entering judgment on a small class of state-law counterclaims under 28 U.S.C. § 157(b)(2)(C).  Otherwise, Stern leaves the statutory scheme intact.

Moreover, Stern left intact the well-established doctrine that the Bankruptcy Court may *hear* a "non-core" case (*i.e.,* one merely "related to" a bankruptcy proceeding).  In such a case, the Bankruptcy Court is empowered to enter proposed findings of fact and conclusions of law.  These will be submitted to an Article III District Court for *de novo* review and a final decision. *See* 131 S. Ct. at 2601-02, 2604, 2620; *see also* 28 U.S.C. § 157(c); Kelley v. JPMorgan Chase & Co., 2011 WL 4403289 (D. Minn. 2011) (Post-Stern, Bankruptcy Court's power to conduct proceedings and submit proposed findings to Article III District Court remains unquestioned); In re Canopy Financial, Inc., 2011 WL 3911082 (N.D. Ill. 2011) (same).  Finally, Stern says nothing at all about the Bankruptcy Court's customary authority to confirm a plan, administer the Debtors' estate, and so on. *See*

*generally* 28 U.S.C. §§ 1334, 157; <u>Stern</u>, 131 S.Ct. at 2620 (concluding only that "Congress, in one isolated respect, exceeded [Article III's] limitation [on Congress' power] in the Bankruptcy Act of 1984" such that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."); <u>In re Safety Harbor Resort and Spa,</u> 2011 WL 3849369 at *1, *10, *12 (Bankr. M.D. Fla. Aug. 30, 2011) (Bankruptcy Court retains core jurisdiction over plan confirmation process and therefore can impose "lock-up" restrictions on the debtors' business and non-debtor guarantors even though the issues raised state law claims).  Unlike the compulsory state law counterclaim at issue in <u>Stern</u>, the plan process and resulting administration and reorganization are truly the *sine qua non* of bankruptcy jurisdiction.

> **B.      Stern's Narrow Limitation On A Bankruptcy Court's Power To Enter Final Judgment On Certain State Law Counterclaims Has Nothing To Do With The PAT Trustee's Standing To Pursue Assigned Federal-Law Claims In District Court.**

The PAT Trustee, like any District Court plaintiff, must possess standing.  The Moving Defendants argue, correctly but irrelevantly, that only a plaintiff who has "made out a 'case or controversy' between himself and the defendant" may pursue an action. <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); *see also* <u>Flast v. Cohen</u>, 392 U.S. 83, 99 (1968) (plaintiff must be "a proper party to request an adjudication on a particular issue"); Standing Motion Opening Brief at 9.  Nothing in <u>Stern</u> affects the PAT Trustee's standing to assert the claims in this action.  The most salient features of <u>Stern</u>, discussed above, demonstrate its remoteness from any issue in this case:

- • Setting aside any issue of the Bankruptcy Court's Article I authority, standing in this case was conferred by the claim holders' assignment of their claims to the PAT Trustee.

- • <u>Stern</u> limits certain state-law counterclaims by a debtor in an Article I Bankruptcy Court; this, by contrast, is a federal-law action in an Article III District Court.

• The issue in <u>Stern</u> was the authority of the Bankruptcy Court, as opposed to the District Court, to enter a final judgment in certain cases; this challenge is to an order approving the creation of a trust and the appointment of a trustee.

• <u>Stern</u> is explicitly a very narrow holding, which should not be extended to this far different context.

• In any event, this Article III Court may approve the action of the Bankruptcy Court and thereby cure any <u>Stern</u> problem.

**1.   Any <u>Stern</u> challenge to the Bankruptcy Court's Article I authority is superfluous, because the PAT Trustee has standing by virtue of the claim holders' voluntary assignment of their claims.**

This "standing" motion is framed as a challenge to the Bankruptcy Court's exercise of authority.  The issue of the Bankruptcy Court's Article I authority to adjudicate particular classes of cases, however, need not be reached, because there are alternative grounds to find standing.  The Bankruptcy Court here approved a Plan and Agreement that *permitted* holders of causes of action, if they wished, to *assign* their causes of action to the PAT Trustee.  Many claim holders have done so.  By virtue of such assignments, the PAT Trustee holds those claims and is empowered to assert them.

There is no doubt that causes of action are, in general, expressly assignable.  *See, e.g.,* <u>Macleod v. Stelle</u>, 43 Idaho 64, 65, 249 P. 254 (1926) (Idaho law); <u>Whitehead v. Van Leuven</u>, 347 F. Supp. 505, 509 (D. Idaho 1972) (Delaware law); <u>Refining, Inc. v. Sharples Specialty Co.</u>, 21 F. Supp. 511, 513 (D. Del. 1937) (Delaware law); <u>Farey-Jones v. Buckingham</u>, 132 F. Supp. 2d 92, 100-02 (E.D.N.Y. 2001) (Federal securities law); *see also* <u>Lowry v. Baltimore & Ohio R.R. Co.</u>, 707 F.2d 721 (3d Cir.) (en banc ), *cert. denied,* 464 U.S. 893 (1983) (Federal securities law).  Similarly, there is no doubt that an assignee, whether or not a trustee, is an appropriate plaintiff to assert the injury of the assignor. *See* <u>Sprint Communications Co. v. APCC Services, Inc.</u>, 554 U.S. 269 (2008) ("Indeed, a claim's assignee may sue even when the claim was assigned for the purpose of collection and there is no formal trust"); *see also* <u>Vermont Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 773 (2000); <u>In re Herley Indus. Secs. Litig.</u>, 2009 U.S. Dist. LEXIS 91600, at *21-22 (E.D.

Pa. Sept. 30, 2009); Fed. R. Civ. P. 17(a)(1)(E) (explicitly permitting a "trustee of an express trust" to

assert assigned claims). Indeed, every case that has considered the assignment of claims to a post-

bankruptcy trustee (like the Private Actions Trustee) has held that such a trustee has standing to assert

claims on behalf of assigning creditors. *See, e.g.,* Grede v. Bank of New York Mellon, 598 F.3d 899,

902 (7th Cir. 2010) (distinguishing the powers of a Chapter 11 trustee during bankruptcy and a

trustee after bankruptcy, and holding that a post-bankruptcy trustee can sue on behalf of assigning

creditors); Semi-Tech Litigation, LLC v. Bankers Trust Co., 272 F. Supp. 2d 319, 323-24 (S.D.N.Y.

2003) (holding that a post-bankruptcy trustee has standing to bring claims assigned to him by

creditors under a confirmed bankruptcy plan).[8]

---

[8]      Contrary to Defendant's claims [D.I. 154 at 9; D.I. 184 at 5], the United States Court of
Appeals for the Third Circuit has never held that a private actions trustee lacks standing to assert
claims on behalf of assigning creditors. The Court of Appeals has simply held that a *bankruptcy
trustee* does not, by virtue of that status, possess standing to assert claims on behalf of creditors. *See,
e.g.*, Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 349 (3d Cir.
2001) (noting that "a *bankruptcy trustee* has no standing to assert claims on behalf of creditors.")
(emphasis added); Marion v. TDI Inc., 591 F.3d 137, 148 n.15 (3d Cir. 2010) ("[a] *bankruptcy trustee*
lacks authority to bring a claim directly on behalf of the debtor's creditors") (emphasis added), *cert.
denied,* __ U.S. __, 131 S. Ct. 1479 (2011). The Moving Defendants' arguments fail to observe the
fundamental distinction between a trustee in bankruptcy and a post-bankruptcy private actions
trustee.

For similar reasons, this case does not present the problem addressed in Caplin v. Marine
Midland Grace Trust Co., 406 U.S. 416 (1972). As Judge Easterbrook has explained, Caplin
involved a *bankruptcy trustee*, dealing with the assets of the estate and subject to the power of the
court to determine who shall pursue estate causes of action. A litigation trustee, pursuing assigned
third-party claims, is a different animal altogether:

> Caplin gave three reasons for its conclusion that a bankruptcy trustee may not pursue
> third-party claims. First, the Bankruptcy Act of 1898 elaborately specified the powers
> of trustees in bankruptcy; none of its provisions so much as hinted that bankruptcy
> judges could transfer third-party claims to trustees. 406 U.S. at 428-29. (Six years after
> Caplin, the Bankruptcy Code of 1978 replaced the Bankruptcy Act of 1898. The
> parties agree that the Code does not make any change material to the issue in Caplin.)
> Second, the third-party claims in Caplin might have created a right of subrogation,
> which would have required the debtor in bankruptcy to reimburse the third-party
> defendant for anything the trustee collected on behalf of the investors. The Court did
> not see any benefit in such a roundabout process. 406 U.S. at 429-31. Third,
> permitting a bankruptcy trustee to pursue third-party claims creates a risk of

In short, the Bankruptcy Court's approval was, at worst, superfluous.  It did not transform Plaintiff into the only person on earth who may *not* assert these assigned claims.  Whether designated as the "PAT Trustee" or as "Mr. Zazzali," he holds these causes of action as an assignee and is entitled to assert them on behalf of the assignors.  Whether a Bankruptcy Court hypothetically would have the power to force such an assignment on anyone, or whether it hypothetically would have the Article I power to adjudicate the underlying claims, is irrelevant.  This assignee is bringing federal securities law claims in a federal Article III court.  He would have standing even if he had never set foot in the Bankruptcy Court; that Court's approval and appointment only enhances, and certainly does not defeat, his standing.

> ### 2.   <u>Stern</u> is irrelevant because the Bankruptcy Court's approval of the PAT Agreement and appointment of the PAT Trustee are not actions at common law or final judgments that can be entered only by an Article III court.

At any rate, nothing in <u>Stern</u> affects the Bankruptcy Court's power to approve the establishment of the PAT or its Trustee.  As established above, <u>Stern</u> invalidated a Bankruptcy Court's exercise of  a power reserved to the District Court by Article III: the power to enter final judgment on certain state-law counterclaims described in 28 U.S.C. §157(b)(2)(C).  The action challenged here, by contrast, is the Bankruptcy Court's approval of the Plan establishing the PAT and appointing the PAT Trustee.  There is a complete disconnect between what <u>Stern</u> prohibits and what the Bankruptcy Court did here.

The establishment of the PAT is not a "counterclaim by the estate."  It is not a state-law cause of action. It is not the adjudication of a "case."  (Indeed, the "case" is being brought, not in the

---

inconsistent or double recovery--because the claims had been placed in the trustee's hands by the judge rather than by the claims' owners. 406 U.S. at 431-34. None of these reasons applies to suit by a liquidation trustee on assigned claims.

<u>Grede</u>, 598 F. 3d at 901-02.

Bankruptcy Court, but here, in this District Court.)  It is not the entry of final judgment against any party.  The appointment of a PAT Trustee is not an exercise of judicial power requiring Article III salary and life tenure guarantees to be valid.[9]  In short, it has nothing to do with <u>Stern</u>.

 <u>Stern</u> is explicitly a "narrow" holding, implicating the Bankruptcy Court's entry of judgment in a subset of cases under a single subsection of 28 U.S.C. § 157(b).  Cases citing <u>Stern</u> have consistently recognized that it creates a narrow exception, and does not generally call the powers of the Bankruptcy Courts into doubt.  *See, e.g.,* <u>In re Refco</u>, 2011 Bankr. LEXIS 4496 at \*25 ("<u>Stern</u> is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case") (quoting <u>In re Salander O'Reilly Galleries</u>, 453 B.R. 106, 115-116 (Bankr. S.D.N.Y. 2011)); <u>In re Hoopes</u>, 2011 Bankr. LEXIS 4442 (Bankr. D. Colo. Nov. 14, 2011).  Neither <u>Stern</u> nor any case citing it has addressed what the Bankruptcy Court did here.

 The Standing Motion does not cite a single case that invalidates the formation of a trust or the appointment of a trustee like this one, because there is no such case.  For this reason, too, the Standing Motion must be denied.

   **3.**  **This action, unlike <u>Stern</u>, is a federal-law case in an Article III District Court, and Defendants' catchall allegations of "prejudice" have no relevance to the question of standing, particularly given this Court's unquestioned power to remedy any <u>Stern</u> defect by simply approving the Bankruptcy Court's order.**

 The Standing Motion rests on the Supreme Court cases limiting a Bankruptcy Court's Article I authority to enter final judgment on certain state-law claims not sufficiently intrinsic to the

---

[9]  Rather, as an integral component of the plan process, it constitutes the "meat and potatoes" of bankruptcy jurisdiction and a routine exercise of the Bankruptcy Court's broad authority under 11 U.S.C. §§ 105(a) and 1123(b)(6) (broad power to include in Plan any "appropriate provision not inconsistent with the applicable provisions of this title"). *Cf.* <u>In re Washington Mutual, Inc.</u>, 2011 Bankr. LEXIS 3361 \*10-\*20 (Bankr. D. Del. Sept. 13, 2011) (post-*Stern*, bankruptcy court retains power to approve settlements even if it would have lacked the power to adjudicate the underlying claims).

bankruptcy. (Standing Motion Opening Brief at 10-16 (citing <u>Stern</u>, *supra*; <u>Northern Pipeline</u>, *supra*; <u>Granfinanciera S.A. v. Nordberg</u>, 492 U.S. 33 (1989))  But even if the substantive claims asserted in this action (as opposed to the establishment of the PAT) were the relevant comparison, the motions would fail for multiple reasons.

First, this action asserts securities claims under federal, not state, law.  The <u>Stern</u> line of cases deals with state-law claims.  The only state-law claims here are pendent causes of action based on the same facts as the federal claims.

Second, limitations on a Bankruptcy Court's Article I authority are irrelevant because this action was filed in an Article III federal District Court.  This Court -- protected by Article III's life tenure and salary guarantees -- will be hearing and entering final judgment in this case.  The <u>Stern</u> issue simply does not arise.

Six pages of irrelevant argument based on <u>Stern</u> lead up to the Defendants' anticlimactic, grudging concession that the filing of this action in District Court "might seem to alleviate" the <u>Stern</u> problem.  Nevertheless, Defendants -- citing no law of any kind -- seem to be arguing that, because the definitions section of the Plan does not rule out the possibility that the Trustee *could* file an action in Bankruptcy Court, there is a "plain constitutional violation," requiring dismissal of this District Court action. (Standing Motion Opening Brief [D.I. # 154] at 16.)

The Moving Defendants cite no supporting law because there is, and could be, none.  Even accepting Defendants' premise *arguendo,* the whole point of <u>Stern,</u> <u>Northern Pipeline</u>, and <u>Granfinanciera</u> is that an Article I court cannot usurp certain functions of an Article III court.  It would be nonsensical for an Article III court to dismiss an action filed in the right place because plaintiff might have filed in the wrong place.

Finally, the Moving Defendants argue that standing must be denied because they have been "prejudiced" by the Bankruptcy Court's action, insisting that their rights "cannot be altered or

-15-

impaired without the exercise of judicial authority by an Article III court." (Standing Motion Opening Brief at 17)  That is a curious basis for *objecting* to this Article III court's exercise of judicial authority.  Indeed, it is pregnant with the suggestion that, if there were a flaw in the order approving the PAT, this Court could easily remedy it, not by dismissing this action, but by treating the Bankruptcy Court's order as a recommendation and approving it. *See* 28 U.S.C. § 157(c); In re Bujak, 2011 Bankr. LEXIS 4291 at *11 (D. Idaho Nov. 3, 2011) ("Even if there were a question about this Court's constitutional power to finally determine Trustee's claims against the County in this case, there is nothing in *Stern* to prevent the District Court, upon any appeal from this Court's decision, from simply treating this Court's findings of fact and conclusions of law as 'proposed,' or as 'recommendations' subject to *de novo* review."); In re The Fairchild Corporation, 452 B.R. 525, 530 n.14 (Bankr. D. Del. 2011) ("The issue in *Stern v. Marshall* was when, under the United States Constitution, the bankruptcy court could enter a final judgment as opposed to proposed findings of fact and conclusions of law….").

At any rate, however, the relation of these assertions to the issue of standing is attenuated and the claims of "prejudice" are insubstantial:

• *Overriding arbitration*.  This is addressed in Plaintiff's response to Defendant's Motion to Compel Arbitration.  It has no bearing on the Stern standing issue.

• "De facto *class action*."  This is not a class action. The PAT, as established by the confirmed Plan, has been entrusted with these claims on behalf of their owners.  The Trustee does not purport to speak as a "representative" based on issues in common with absent claimants.  He asserts specific claims that have been assigned to him, on behalf of customers well known to these Broker Defendants.  Defendants' real gripe seems to be that some of these claims "would not have been brought" separately because it would have been too expensive or inconvenient. Defendants have no enforceable right to have their customers forgo meritorious claims, whether for economic reasons or out of frustration.

• *Funding by the Estate*.  As noted above, the DBSI Real Estate Liquidating Trust initially lent the PAT $1 million to finance its activities, to be repaid from the proceeds of the PAT Trustee's liquidation of claims.  The Trusts benefit from the PAT to the tune of 20% of net proceeds. Again, Defendants' preference for an atomized, underfunded set of adversaries is understandable, but it is unclear what this might have to do with Stern or standing.  It would be illogical to conclude that the standing of the PAT Trustee is somehow curtailed because the PAT Trustee

entered into a business transaction with the DBSI Real Estate Liquidating Trust, which transaction was approved by the Bankruptcy Court and virtually every creditor.

• *Bankruptcy Court's "seal of approval" used to solicit assignments of claim*.  The Election Form nowhere states or implies that the Bankruptcy Court is giving an "imprimatur" or its "valuable endorsement."  Again, any relation between this objection and standing to sue in this Court is obscure.

The Moving Defendants have demonstrated no connection between their elaborate discussion of Stern, their complaints of "prejudice," and the issue of the PAT Trustee's standing to pursue these assigned, federal law claims in District Court.  The Standing Motion must be denied.

## II.   DEFENDANTS' MOTION IS NOT TIMELY AND IS BARRED UNDER THE DOCTRINES OF RES JUDICATA, COLLATERAL ESTOPPEL AND EQUITABLE MOOTNESS.

As discussed above, the Moving Defendants' standing arguments fail entirely on the merits. In addition, however, such arguments are barred under the doctrines of *res judicata*, collateral estoppel and equitable mootness.  Both the Plan and case law permit the PAT Trustee to assert claims on behalf of assigning creditors.  With respect to the Plan, Defendants did not timely object before confirmation, did not appeal within 10 days, and did not challenge the Plan as having been obtained by fraud (not that there would be any basis for such a contention) within 180 days after confirmation. *See* Bankr. R. 3017 & 3020(b) (time limits for objections to a plan); 8002(a) (time limits for appeal); 11 U.S.C. § 1144 (time limit for challenging plan allegedly "obtained by fraud").  Instead, long after the expiration of these deadlines, Defendants assert that the PAT Trustee lacks "standing" because the Plan, which explicitly permits the challenged conduct, is unlawful.  The propriety of the Plan was litigated and the Confirmation Order was duly issued.   It is a basic rule of procedure that, once the deadline for objections has passed, a Plan is binding.  This "standing" motion should be seen for what it is: a belated appeal of the Bankruptcy Court's Confirmation Order, timed for maximum disruption of the ongoing claims liquidation process.

As noted above, by Order dated October 26, 2010, the Bankruptcy Court substantively consolidated the estates of the Plan Debtors and certain Consolidated Non-Debtors, and confirmed the Plan in the Debtors' Chapter 11 cases.  As relevant here, the Plan created the Estate Litigation Trust and the PAT, and provided for assignment of claims to the PAT Trustee.  Upon the substantial consummation and effectiveness of the Plan, on October 29, 2010, claims and causes of action were transferred from the consolidated bankruptcy estate of the Debtor Entities to the Estate Litigation Trust, and from the creditors and equity interest holders of DBSI to the PAT, in exchange for beneficial interests therein.

-18-

The United States Court of Appeals for the Third Circuit has explicitly held that "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989); *see also* Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.") (internal citations omitted); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1050 (5th Cir. 1987) ("Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed."); 8 Collier on Bankruptcy ¶ 1141.02[1] (16th ed. rev. 2011) (confirmed plan bars relitigation of all claims or issues that could have been raised before confirmation). In fact, many of the Broker Defendants were on notice as potential defendants; they did not oppose or appeal the Plan. (*See* Schedule of Non-Exclusive List of Potential Defendants in Non-Estate Causes of Action, attached to the Clifford Decl. as Exhibit D.)

The Moving Defendants may hope to invoke the rule that subject matter jurisdiction can be raised at any time in a proceeding and cannot be waived, and, hence, that Defendants may not be estopped from challenging standing at this juncture. This will not aid them.

First, a Stern challenge is not a challenge to subject matter jurisdiction. *See, e.g.,* In re Coudert Brothers LLP, 2011 U.S. Dist. LEXIS 110425 at *28 (S.D.N.Y. Sept. 23, 2011); In re The Fairchild Corporation, 452 B.R. 525, 530 n.14 (Bankr. D. Del. 2011) ("The issue in *Stern v. Marshall* was when, under the United States Constitution, the bankruptcy court could enter a final judgment as opposed to proposed findings of fact and conclusions of law in a case where subject matter jurisdiction existed under 28 U.S.C. § 1334(a). As such, Stern v. Marshall is not a case about subject matter jurisdiction."). Stern carefully confined itself to questions of the Bankruptcy Court's "authority," not jurisdiction. Stern defined constitutional limits on Section 157's distribution of

issues between District Courts and Bankruptcy Courts, not on the jurisdictional power to hear a case *at all. See* <u>Stern</u>, 131 S. Ct. at 2607 ("[28 U.S.C.] Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. [] That allocation does not implicate questions of subject matter jurisdiction.")

Second, even if this were an issue of subject matter jurisdiction, the result would be no different. A party's ability to challenge subject matter jurisdiction ends when judgment becomes final. *See* <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment.") (internal citations omitted). As the Third Circuit has observed: "It was settled long ago . . . that when a federal court proceeds to final judgment on the merits, the issue of subject matter jurisdiction is *res judicata* even though it was not litigated . . . " <u>Hodge v. Hodge</u>, 621 F.2d 590, 592 (3d Cir. 1980) (internal citation omitted).

The confirmed Plan serves as a judgment, which became final in 2010 when the time to appeal expired. Defendants are therefore barred from challenging subject matter jurisdiction. *See, e.g.*, <u>Sure-Snap Corp. v. State St. Bank & Trust Co.</u>, 948 F.2d 869, 872-73 (2d Cir. 1991) (A confirmed plan constitutes a final judgment on the merits entitled to preclusive effect under the doctrine of *res judicata*); <u>In re Northfield Labs., Inc.</u>, 2010 Bankr. LEXIS 2635, at *14 (Bankr. D. Del. Aug. 27, 2010) ("Claim preclusion applies to confirmed plans of reorganization, just as it does to any final judgment on the merits."). The Plan plainly and explicitly confers standing on the Trustee to assert the PAT claims assigned to him. Defendants may not collaterally attack the preclusive effect of that ruling now, in a different proceeding.

The Moving Defendants are likewise bound and may not contest the fact of the assignment of the claims and the other facts giving rise to the Trustee's standing. These, too, are *res judicata* between the parties; Defendants would be bound by them even if they were free to raise the ultimate

issue of the PAT Trustee's standing.  It is settled law that, even though subject matter jurisdiction

may not be waived, a party can be barred by waiver, estoppel, *res judicata,* or otherwise, from

challenging the underlying facts (in this case, contained in the Plan and the assignments) that give

rise to subject matter jurisdiction.  *See, e.g*., Ferguson v. Neighborhood Hous. Servs. of Cleveland,

Inc., 780 F. 2d 549, 551 (6th Cir. 1986) ("[w]hile it is axiomatic that 'consent of parties cannot give

the courts of the United States jurisdiction,' it is also true that 'the parties may admit the existence of

facts which show jurisdiction, and the courts may act judicially upon such an admission.'"); Verzosa

v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 589 F. 2d 974, 977 (9th Cir. 1978).

The Plan and the Confirmation Order are valid instruments that have been reasonably relied

upon by thousands of individuals.  Unwinding the PAT at this juncture would result in substantial

undue burdens and hardships.  Under the equitable mootness doctrine, a court has discretion to deny

even legally justified relief if the plan is confirmed and relied upon, such that the grant of the

requested relief would be imprudent or inequitable. *See, e.g*., In re United Artists Theatre Corp., 315

F.3d 217, 228 (3d Cir. 2003).

Even if the requested relief were legally justified (which it is not), the relief would be barred

under the doctrines of *res judicata*, collateral estoppel and equitable mootness.  The Defendants did

not object to the Plan, did not appeal within 10 days of the Confirmation Order, and did not challenge

the manner in which the Plan was obtained within 180 days of the entry of the Confirmation Order.

The Plan sanctions the use of the PAT and the ability of the PAT Trustee to assert claims on behalf of

assigning creditors.  The Defendants are bound by the terms of the Plan.

**CONCLUSION**

For the foregoing reasons, Certain Defendants' Motion to Dismiss the Complaint for Lack of

Standing and Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure must be denied.

Dated:  December  22, 2011                    **GIBBONS, P.C.**


                                              */s/  Christopher Viceconte*
                                              Christopher Viceconte (No. 5568)
                                              1000 North West Street, Suite 1200
                                              Wilmington, DE 19801-1058
                                              Telephone:  (302) 295-4875
                                              Facsimile:  (302) 295-4876
                                              cviceconte@gibbonslaw.com

                                              Brian J. McMahon
                                              Gibbons P.C.
                                              One Gateway Center
                                              Newark, New Jersey  07102-5310
                                              Telephone:  (973) 596-4500
                                              Facsimile:  (973) 596-0545

                                              *Counsel for Plaintiff*