## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI, as Trustee for the DBSI
Private Actions Trust,

               Plaintiff,

    v.

ADVISORY GROUP EQUITY SERVICES,
LTD., et al.,

               Defendants.

CIVIL ACTION
NO. 1:11-cv-00475-GMS

---

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO CERTAIN DEFENDANTS'
MOTIONS TO COMPEL ARBITRATION**

---

**GIBBONS, P.C.**

*/s/  Christopher Viceconte*
Christopher Viceconte (No. 5568)
1000 North West Street, Suite 1200
Wilmington, DE 19801-1058
Telephone:  (302) 295-4875
Facsimile:  (302) 295-4876
cviceconte @gibbonslaw.com

Brian J. McMahon
Debra A. Clifford
Fruqan Mouzon
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545

*Counsel for Plaintiff*

Dated:  December 22, 2011

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................ 1

SUMMARY OF ARGUMENTS ................................................................................. 2

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT ......................................................................................................... 4

POINT I        DEFENDANTS' MOTIONS MUST BE DENIED, BECAUSE
THE COURT CANNOT FIND ON THE PRESENT RECORD
THAT EVERY ASSIGNING INVESTOR ASSENTED TO AN
AGREEMENT TO ARBITRATE, OR THAT ASSENT WAS
LAWFULLY OBTAINED ...................................................................... 4

A.    Defendants Have Not Presented Signed Arbitration Agreements
For Every Investor, Making A Wholesale Ruling On Their
Omnibus Motions Impossible. ................................................... 6

B.    Enforceable Assent To The Arbitration Agreements Is Absent
Because Defendants Failed Strictly To Comply With Applicable
Regulations Specifically Enacted To Ensure That Such Assent To
Arbitration Was Deliberate And Well Informed ....................................... 8

POINT II      THE ARBITRATION AGREEMENTS ARE
UNENFORCEABLE BECAUSE THEY ARE
UNCONSCIONABLE ........................................................................... 23

CONCLUSION...................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Alexander v. Anthony Int'l, L.P.,
341 F.3d 256 (3d Cir. 2003) ...................................................................... 24

Armendariz v. Found. Health Psychchare Servs.,
6 P.3d 669 (Cal. 2000) ............................................................................ 25

AT&T Mobility LLC v. Concepcion,
131 S. Ct. 1740 (2011) ............................................................................ 25

AT&T Techs, Inc. v. Commc'ns Workers of Am.,
475 U.S. 643 (1986) ................................................................................. 5

Bess v. DirecTV, Inc.,
885 N.E.2d 488 (Ill. App. Ct. 2008) ........................................................ 26

Blair v. Scott Specialty Gases,
283 F.3d 595 (3d Cir. 2002) ...................................................................... 27

Bowsher v. Merck & Co., Inc.,
460 U.S. 824 (1983) ................................................................................. 5

Bradford v. Rockwell Semiconductor Sys. Inc.,
238 F.3d 549 (4th Cir. 2001) ...................................................................... 27

Brower v. Gateway 2000,
676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ................................................ 26

Brown v. Luxottica Retail N. Am., Inc.,
2010 U.S. Dist. LEXIS 104642 (N.D. Ill. Sept. 29, 2010) ...................... 26

Century Indem. Co. v. Certain Underwriters at Lloyd's,
584 F.3d 513 (3d Cir. 2009) ............................................................... 5, 23

D.E. Frey & Co. v. Wherry,
27 F. Supp. 2d 950 (S.D. Tex. 1998) ....................................................... 29

Delta Funding Corp. v. Harris,
912 A.2d 104 (N.J. 2006) ......................................................................... 27

Doctor's Assocs., Inc. v. Cassarotto,
517 U.S. 681 (1986) ........................................................................... 23, 24

Elston v. Toma,
    2004 U.S. Dist. LEXIS 8760 (D. Or. Apr. 15, 2004) ........................................... 1

Faber v. Menard, Inc.,
    367 F.3d 1048 (8th Cir. 2004) ..................................................... 25, 27

Gleason v. Ney,
    1981 Del. Ch. LEXIS 598 (Del. Ch. Aug. 25, 1981)......................................... 5

Green Tree Fin. Corp.-Alabama v. Randolph,
    531 U.S. 79 (2000)........................................................................ 27

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    885 F.2d 1149 (3d Cir. 1989) ............................................................ 24

Howsam v. Dean Witter Reynolds, Inc.,
    537 U.S. 79 (2002)........................................................................ 30

In re Olshan Found. Repair Co., LLC,
    328 S.W.3d 883 (Tex. 2010)............................................................. 25

Iwen v. U.S. W. Direct,
    977 P.2d 989 (Mont. 1999) .............................................................. 25

Kelly v. MBNA Am. Bank,
    528 F.Supp. 2d 490 (D. Del. 2008).................................................... 4

Kinkel v. Cingular Wireless, LLC,
    857 N.E.2d 250 (Ill. 2006)................................................................ 25

Kirleis v. Dickie, McCamey & Chilcote, P.C.,
    560 F.3d 156 (3d Cir. 2009) ............................................................. 4

Larsen v. J.P. Morgan Chase Bank, N.A.,
    2011 U.S. App. LEXIS 17941 (11th Cir. 2011) ...................................... 8

Litman v. Cellco Partnership,
    655 F.3d 225 (3d Cir. 2011) ............................................................ 23

Lucey v. FedEx Ground Package Sys.,
    2007 U.S. Dist. LEXIS 77454 (D.N.J. Oct. 18, 2007), aff'd in part and rev'd in
    part, 305 F. App'x 875 (3d Cir. 2009) ............................................... 28

McDonald v. Cash N Advance, Inc.,
    312 B.R. 407 (Bankr. D. Nev. 2004) ................................................. 24

Mid-Ohio Secs. Corp. v. Estate of Burns,'
    790 F. Supp. 2d 1263 (D. Nev. 2011)................................................. 30

Mueske v. Piper, Jaffray & Hopwood, Inc.,
    859 P.2d 444 (Mont. 1993) ........................................................................ 13, 23

Murphy v. Mid-West Nat'l Life Ins. Co.,
    78 P.3d 766 (Idaho 2003) ............................................................................... 27

Parada v. Superior Court,
    98 Cal. Rptr. 3d 743 (Cal. Ct. App. 2009) .................................................... 26

Parilla v. IAP Worldwide Servs. VI, Inc.,
    368 F.3d 269 (3d Cir. 2004) ..................................................................... 27, 28

Par-Knit Mills, Inc. v. Stockbridge Fabrics, Co.,
    636 F.2d 51 (3d Cir. 1980) .......................................................................... 5, 6

Pokorny v. Quixtar, Inc.,
    601 F.3d 987 (9th Cir. 2010) .......................................................................... 26

Powertel, Inc. v. Bexley,
    743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ..................................................... 25

Rent-A-Center, W., Inc. v. Jackson,
    130 S. Ct. 2772 (2010) .................................................................................... 23

Sandvick AB v. Advent Int'l Corp.,
    220 F.3d 99 (3d Cir. 2000) ............................................................................... 8

Scovill v. WSYX/ABC, Sinclair Broadcast Group, Inc.,
    425 F.3d 1012 (6th Cir. 2006) ........................................................................ 25

Seus v. John Nuveen & Co.,
    146 F.3d 175 (3d Cir. 1998) ........................................................................... 23

Shearson/American Express, Inc. v. McMahon,
    482 U.S. 220 (1987).......................................................................................... 8, 9

State v. Wolowitz,
    468 N.Y.S.2d 131 (1983).................................................................................. 25

Stelluti v. Casapenn Enters., LLC,
    1 A.3d 678 (N.J. 2010) .................................................................................... 25

Stirlen v. Supercuts, Inc.,
    60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997) .................................................... 26

Strand v. U.S. Bank Nat'l Ass'n ND,
    693 N.W.2d 918 (N.D. 2005) .......................................................................... 26

Tolliver v. Christina Sch. Dist.,
   564 F. Supp. 2d 312 (D. Del. 2008)................................................................ 5

Tranchant v. Ritz Carlton Hotel Co., LLC,
   2011 U.S. Dist. LEXIS 35099 (M.D. Fla. Mar. 31, 2011) ..................................... 26

Trippe Mfg. Co. v. Niles Audio Corp.,
   401 F.3d 529 (3d Cir. 2005) ............................................................................ 4

U.S. Small Bus. Admin. v. Chimicles,
   447 F.3d 207 (3d Cir. 2006) ............................................................................ 5

Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,
   489 U.S. 468 (1989)........................................................................................ 5

Wattenbarger v. A.G. Edwards & Sons,
   246 P.3d 961 (Idaho 2010) ............................................................................ 25

Wells v. Merit Life Ins. Co.,
   671 F. Supp. 2d 570 (D.Del. 2009)................................................................. 26

Wilko v. Swan,
   346 U.S. 427 (1953)..................................................................................... 8, 9

## STATUTES

9 U.S.C. § 2................................................................................................ 23

## OTHER AUTHORITIES

David S. Ruder,
   Foreword to NASD Dispute Resolution, The Arbitration Policy Task Force
   Report—A Report Card 1, 1 (2007) ................................................................ 26

Exchange Act Release No. 56,145,
   72 Fed. Reg. 42,169, at 42,170 (July 26, 2007), available at
   http://www.sec.gov/rules/sro/nasd/2007/34-56146.pdf ........................................ 12

Fin. Servs. Inst.,
   The Efficacy of Securities Arbitration and Proposals for Change 3, 12 (2010)..................... 29

FINRA Bylaws Article 4 § 1 ........................................................................... 12

NASD Notice to Members 05-09 ..................................................................... 13

NASD Notice to Members 11-19 (Apr. 2011) .................................................... 13

NASD Notice to Members 89-58 (Aug. 1989),
available at http://finra.complinet.com/
en/display/display.html?rbid=2403&element_id=1357 ...................................................... 10

NASD Notice to Members 92-65 (Dec. 1992) .......................................................................... 10

Notice of Filing and Immediate Effectiveness of Proposed Rule Change To
Update Rule Cross-References and Make Non-Substantive Technical Changes
to Certain FINRA Rules,
76 Fed. Reg. 32,246, 32,247 (June 3, 2011) ........................................................................... 13

Order Approving Proposed Rule Change Relating to the Exclusion of Class
Actions from Arbitration Proceedings, S.E.C. Release No. 34-31371,
52 S.E.C. Docket 2189, 1992 SEC LEXIS 2767 (Oct. 28, 1992) ........................................... 29

Order Granting Approval to Proposed Rule Changes Regarding NASD Rule
3110(f) Governing Predispute Arbitration Agreements with Customers,
69 Fed. Reg. 70,293 (Dec. 3, 2004) .............................................................................. 12, 13

www.finra.org ....................................................................................................................... 12

## RULES

FINRA Rule 12100 ................................................................................................................. 28

FINRA Rule 12202 ................................................................................................................... 1

FINRA Rule 12204 ................................................................................................................. 29

FINRA Rule 12206 ................................................................................................................. 30

FINRA Rule 12900 ................................................................................................................. 28

FINRA Rule 12902 ................................................................................................................. 28

FINRA Rule 2268 .............................................................................................................. 13, 14

FINRA Rule 4511(b) ................................................................................................................ 7

FINRA Rule 4512 .................................................................................................................... 7

NASD Rule 3110 ............................................................................................................. passim

NASD Rule 3110(f) .......................................................................................................... passim

NASD Rule 3110(f)(2)(A) .................................................................................................. 17, 18

NASD Rule 3110(f)(3) ............................................................................................................. 7

NASD Rule of Fair Practice 21(f) ........................................................................................... 9, 10

SEC Rule 17a-3 ............................................................................................................................ 7

Plaintiff James R. Zazzali, as Trustee for the DBSI Private Actions Trust ("PAT") ("Plaintiff" or "Trustee"), respectfully submits this Answering Brief in opposition to the Motions to Compel Arbitration filed by Defendants Cambridge Investment Research, Inc., Capital Financial Services, Inc., Ogilvie Security Advisors Corp. [D.I. 57 Point I]; Capital Analysts Inc. [D.I. 152]; American Portfolios, Capital Management Securities, LaSalle ST Securities, Omni Brokerage Inc.,[1] Sanders Morris Harris Inc. [D.I. 160 & 161 - Point I]; Calton & Associates, Inc., Merrimac Corporate Securities, Inc., J.W. Cole Financial, Inc., Resource Horizons Group [D.I. 162 & 163]; CFD Investments [D.I. 176, 177 & 178]; and Money Concepts Capital Corp. [D.I. 185 & 186]; and Newbridge Securities' Joinder in Motion to Compel Arbitration [D.I. 189] (collectively, "Movants," "Moving Defendants," or "Defendants").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff incorporates by reference the Statement Of The Nature And Stage Of The Proceedings set forth in Plaintiff's Answering Brief In Opposition To Certain Defendants' Motions to Dismiss The Complaint for Lack of Standing and Subject Matter Jurisdiction, filed contemporaneously herewith.

---

[1]     Omni Brokerage, Inc. ("Omni") cannot force its customers into arbitration because it withdrew its FINRA registration and ceased operations on April 29, 2011. *See* Report attached to Declaration of Fruqan Mouzon ("Mouzon Dec.") at Ex. A. Rule 12202 of the FINRA Code of Arbitration Procedure for Customer Disputes explains that:

> A claim by or against a member in one of the following categories is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises:  a member whose membership is terminated, suspended, cancelled or revoked; a member that has been expelled from FINRA; or a member that is otherwise defunct.

*See* Rule 12202 (emphasis added).  Thus, this Court must deny Omni's motion due to its inactive FINRA status.  *See also* Elston v. Toma, 2004 U.S. Dist. LEXIS 8760, at *11 (D. Or. Apr. 15, 2004) (denying motion to compel arbitration because the broker was no longer a member of NASD and had no reasonable expectation that it could enforce the arbitration agreement).

## SUMMARY OF ARGUMENT

Moving Defendants seek to compel arbitration of all claims asserted by the Trustee based on their assertion that every investor who assigned his or her claims to the PAT signed an agreement containing a predispute arbitration clause.[2]  For the following reasons, Defendants' motions cannot be granted on the present record before this Court:

1. Despite having the ability to do so, most of the Moving Defendants have not placed before the Court the actual, complete, signed arbitration agreements.  Rather, most Defendants have submitted only unsigned forms, and, in some instances, submitted only portions of the form agreement rather than the entire document.  Because the motions cannot be granted unless the Court first determines, among other things, that no genuine issue of fact exists as to whether each investor knowingly assented to an enforceable arbitration agreement, the absence of complete, executed agreements makes granting Defendants' motions impossible.  Moreover, the absence of signed agreements is not a procedural technicality.  For reasons set forth below, the Court must first know when each investor signed an arbitration agreement in order to be able to judge whether the particular agreement that investor signed was in full compliance with the then-applicable regulatory requirements governing the mandatory content of arbitration agreements in broker-dealer contracts.

2. The Supreme Court decided to permit arbitration of statutory securities claims because of the Court's confidence that the rights of investors would be protected via the Securities and Exchange Commission's regulation of arbitration agreements, through supervised

---

[2]    J.W. Cole argues that PAT beneficiaries David J. Williams and David Goldman initiated FINRA arbitrations asserting claims against broker-dealers J.W. Cole and Resource Horizons Group.  Defendants' assertion is factually inaccurate.  Neither David J. Williams nor David Goldman have assigned their claims to Plaintiff through the PAT.

self-regulatory organizations such as the National Association of Securities Dealers. The SEC/NASD have, in fact, put in place detailed regulations concerning the required content of pre-dispute arbitration agreements, which regulations were specifically designed to guarantee that any investor's signature on an agreement containing an arbitration clause was the product of actual informed consent to the presence and import of that clause. At least one state Supreme Court has held that strict compliance with these prophylactic regulations is a condition precedent to the enforcement of the arbitration clause. A review of the form agreements submitted by the Moving Defendants discloses that they are riddled with instances of non-compliance with the regulatory disclosure requirements. For this reason, the agreements cannot be enforced.

3.      Even if Defendants could show that, as a matter of fact and law, they obtained each and every investors' informed assent to regulatory-compliant arbitration agreements, which they cannot, the arbitration clauses would still be unenforceable because they are unconscionable under state law. The agreements are procedurally unconscionable because the investors lacked any meaningful choice, and they are substantively unconscionable because forcing the thousands of claims at issue here into arbitration could easily result in exorbitant arbitration fees and costs that would chill the ability of the Trustee to vigorously pursue each claim.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the Statement of Facts set forth in Plaintiff's Answering Brief In Opposition To (1) Broker Defendants' Motions to Dismiss the Complaint in its Entirety With Prejudice for Failure to Sufficiently State Claims for Relief Against the Broker Defendants, (2) Motions for a More Definite Statement, and (3) Motions to Dismiss Based Upon Statutes of Limitations and Statutes of Repose, filed contemporaneously herewith. Plaintiff asserts the following additional facts that are pertinent to Movants' Motions to Compel Arbitration.

A number of Broker Defendants have moved to force this litigation into arbitration. Their motions are premised upon arbitration clauses purportedly contained in customer account agreements. [D.I. 57-3 (A1-11), 161-1 to -6, 163-1 to -4, 178, 186-1.] These Defendants have not produced the actual signed documents, however, and many of the sample forms relied upon by the Movants clearly do not comply with applicable FINRA standards.[3] Moreover, the agreements themselves are unconscionable given that the customers had no meaningful choice but to enter into them, along with the excessively high costs associated with arbitration that could chill the Investors' willingness to bring claims.

## ARGUMENT

### POINT I

**DEFENDANTS' MOTIONS MUST BE DENIED, BECAUSE THE COURT CANNOT FIND ON THE PRESENT RECORD THAT EVERY ASSIGNING INVESTOR ASSENTED TO AN AGREEMENT TO ARBITRATE, OR THAT ASSENT WAS LAWFULLY OBTAINED.**

A motion to compel arbitration should not be granted unless the Court is satisfied that there is an agreement to arbitrate and that the asserted claims fall within the scope of that agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005); Kelly v. MBNA Am. Bank, 528 F.Supp. 2d 490, 493 (D. Del. 2008). A motion to compel arbitration is akin to a summary judgment motion in that it should not be granted when there are unresolved material facts regarding the existence and purview of governing arbitration agreements. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009) (stating that a court may "compel[] arbitration only where there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate") (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics, Co., 636 F.2d

---

[3]    Newbridge Securities has provided no agreements at all in support of its motion [D.I. 189], and for this reason alone, its motion must be denied.

51, 54 (3d Cir. 1980)).  In addition, the party opposing arbitration must be afforded "the benefit of all reasonable doubts and inferences that may arise." Id. (internal quotation marks omitted).

Among the threshold issues as to which Movants must establish the absence of any genuine issue of fact is the presence of mutual assent to arbitration.  The enforceability of any contract requires as an essential element that the Defendants demonstrate as a matter of law that the parties obtained mutual assent, also known as "a meeting of the minds."  As with any contract, if there is no meeting of the minds on the terms of the contract, there is no contract. *See* Bowsher v. Merck & Co., Inc., 460 U.S. 824, 864 (1983) ("A contract, after all, is a meeting of the minds."); Tolliver v. Christina Sch. Dist., 564 F. Supp. 2d 312, 316 (D. Del. 2008) (a contract is only valid and enforceable "if it manifests a meeting of the minds"); Gleason v. Ney, 1981 Del. Ch. LEXIS 598, at *1–2 (Del. Ch. Aug. 25, 1981) ("An express contract cannot arise in the absence of an agreement or mutual assent of the parties. . . . Until all understand alike there can be no assent and therefore no contract.  Both parties must assent to the same thing, in the same sense and at the same time.").

Mutual assent and common understanding by all parties is no less essential when it relates to arbitration clauses because "the basis for contractual arbitration is consent, not coercion." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir. 2009) (emphasis added).  Because the authority to arbitrate is derived solely from the parties' agreement to submit their claims to arbitration, AT&T Techs, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648–49 (1986), a party cannot be compelled to submit a dispute to arbitration unless there is a mutual agreement to do so. U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006); *see also* Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) (explaining that "[a]rbitration under the Act is a matter of

consent."); Par-Knit Mills, Inc., 636 F.2d at 53–55 (3d Cir. 1980) (vacating district court order of arbitration after party presented evidence that, although contract containing arbitration clause was signed, there was no "meeting of the minds").  Here, the Moving Defendants have failed to establish that no genuine issue of fact exists as to each investor's assent to an arbitration agreement, both because they have not presented the Court with signed agreements from every investor and because in most instances the form of the agreements themselves violated regulatory safeguards specifically designed to ensure informed assent, thus rendering the arbitration provisions unenforceable.

### A. Defendants Have Not Presented Signed Arbitration Agreements For Every Investor, Making A Wholesale Ruling On Their Omnibus Motions Impossible.

Here, Moving Defendants seek to compel arbitration for each investor claim assigned to the PAT without supplying these purportedly binding agreements.  Most of the Moving Defendants -- with few exceptions -- have supplied the Court with only unexecuted and undated form documents.  While each proffered document contains an arbitration clause, there is no evidence that every investor in fact signed the agreement and, if so, when.  As explained above, the Court must first determine that valid and enforceable arbitration agreements were entered into by each investor and also that the agreements cover the asserted claims.  This, of course, cannot be accomplished without a thorough review of the actual signed agreements -- a review that is impossible on the record presented by the Moving Defendants in support of their motions to compel.

The Moving Defendants possess the necessary information.  The identity of the PAT beneficiaries is now public information, as such was disclosed by the balloting agent in connection with certifying the voting process during Plan confirmation.  *See* In re DBSI Inc., Bankr. D. Del. 08-12687 (PJW), [D.I. 5851].  Additionally, the identity of the PAT beneficiaries

was disclosed by Plaintiff in a related case.  *See* Zazzali v. Swenson et. al., D. Del. 10-00950 (LPS), [D.I. 1-2].  The Broker Defendants are undeniably aware of at least one of these proceedings, as they have cited to and relied upon documents filed in the main bankruptcy proceeding.  *See, e.g.*, [D.I. 154 at 3–7].  Moreover, as conceded by Defendants, lists identifying the PAT beneficiaries have been provided directly to many of the Defendants by Plaintiff.  *See* [D.I. 163 at 2, D.I. 177 at 2 n.1].  This, combined with the Moving Defendants' own records, which should include a copy of each agreement signed by each PAT beneficiary,[4] place them in a position to provide the documents necessary for the Court to determine arbitrability, but it cannot do so sooner.

This is not a mere formality.  As set forth in the discussion that follows, important regulatory requirements for the contents of arbitration agreements in the securities industry have evolved over time.  Only by knowing when each investor signed each individual agreement in question can the Court assess whether the particular agreement that investor signed complied with the regulations in place at the relevant time.  As set forth in more detail below, many of the unsigned form agreements submitted by Movants are, on their face, not in compliance with current regulations.  Therefore, knowing when each investor signed is indispensable to determining whether the agreement that investor signed complied with the then-existing regulatory requirements.

Here, the Court cannot grant Defendants' motions to compel arbitration absent a finding that valid agreements cover the asserted claims.  Such a conclusion cannot be reached without

---

[4]     Broker-dealers are required under FINRA to retain predispute arbitration agreements for 6 years.  *See* SEC Rule 17a-3; FINRA Rule 4511(b); FINRA Rule 4512.  In addition, Rule 3110(f)(3) requires that, within ten days of receiving a customer request, broker-dealers must provide the customer with a copy of any predispute arbitration agreement clause or agreement that the customer has signed.

access to the agreements at issue and relevant facts regarding the circumstances under which

they were entered.  Because the Moving Defendants have failed to satisfy their burden of

establishing that each and every investor assented to an enforceable agreement to arbitrate that

encompasses the claims set forth by the Trustee, their motions to compel must be denied.[5]

> **B.     Enforceable Assent To The Arbitration Agreements Is Absent Because Defendants Failed Strictly To Comply With Applicable Regulations Specifically Enacted To Ensure That Such Assent To Arbitration Was Deliberate And Well Informed.**

Until 1987, it was commonly understood that predispute arbitration clauses were not

enforceable at all in cases involving securities claims.  This understanding stemmed from the

Supreme Court's decision in <u>Wilko v. Swan</u>, 346 U.S. 427 (1953), in which the Court found

arbitration inadequate to protect a consumer's statutory rights created by § 12(2) of the Securities

Act of 1933.  When <u>Wilko</u> was decided in 1953, there existed a palpable judicial mistrust of the

arbitration process.  In fact, in reaching its decision to deny a defendant's attempt to compel

arbitration, the <u>Wilko</u> Court carefully delineated all that is wrong with arbitration.  <u>Id.</u> at 435–36.

In 1987, however, the Court revisited the issue of predispute arbitration clauses for

securities claims in <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220 (1987),

ultimately holding that such clauses are enforceable.  Very critically, however, given the issues

---

[5]     As discussed in further detail below, the "sample" arbitration agreements relied upon by the Moving Defendants in their moving papers suffer from a variety of infirmities, including, significantly, the failure to comply with FINRA's requirements for enforceable arbitration agreements.  As such, it appears unlikely that the Moving Defendants could <u>ever</u> satisfy their burden on a motion to compel arbitration.  At a minimum, however, the motion to compel is premature because the Moving Defendants have not established the prerequisites for arbitrability. <u>See, e.g.</u>, <u>Sandvick AB v. Advent Int'l Corp.</u>, 220 F.3d 99, 107 (3d Cir. 2000) (affirming the Delaware District Court's denial of a motion to compel arbitration because the existence of the underlying contract had not yet been determined); <u>Larsen v. J.P. Morgan Chase Bank, N.A.</u>, 2011 U.S. App. LEXIS 17941, at *2–3 (11th Cir. 2011) (ordering district court to permit discovery on issues having significant bearing on questions of arbitrability).

presented here, the <u>McMahon</u> decision was predicated on the Court's confidence in the ability of the SEC and the various Self-Regulatory Organizations ("SROs") operating under its supervision to ensure that investors' rights and remedies would be properly protected.  <u>Id.</u> at 233–34.  As the <u>McMahon</u> Court explained, when <u>Wilko</u> was decided in 1953, the SEC's then very limited authority over the rules of SROs "appears not to have included any authority at all over their arbitration rules."  <u>Id.</u> at 233.  The <u>McMahon</u> Court, noted, however, that after <u>Wilko</u> the SEC had garnered "broad authority to oversee and to regulate the rules adopted by the SROs relating to customer disputes, including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights."  <u>Id.</u> at 233–34.  Precisely because of the protections provided by NASD (now FINRA), as overseen by the SEC, the <u>McMahon</u> Court ultimately concluded that arbitration could be allowed for disputes arising from the Securities Exchange Act.  <u>Id.</u> at 238, 242.

As the foregoing demonstrates, the <u>McMahon</u> Court's decision to permit the enforcement of predispute arbitration agreements for securities claims was based on the Court's assumption that investors would enjoy the benefits of regulatory oversight by the SEC and SROs concerning such agreements.  Accordingly, if arbitration agreements do not comport with the protections for investors established by the regulatory authorities, the agreements are not enforceable.

The SEC and SROs have, in fact, put in place a strict regulatory regime specifically designed to ensure that any investor's signature on an agreement containing a predispute arbitration clause is a product of that investor's ***informed*** assent to that clause.  Toward that end, the NASD adopted and the SEC approved NASD Rule of Fair Practice 21(f), which became effective September 7, 1989, and provided:

> (l) Any predispute arbitration clause ***shall be highlighted*** and shall be immediately preceded by the following disclosure language

(printed in outline form as set forth herein) which shall also be highlighted:

> (i) Arbitration is final and binding on the parties.

> (ii) The parties are waiving their right to seek remedies in court, including the right to jury trial.

> (iii) Pre-arbitration discovery is generally more limited than and different from court proceedings.

> (iv) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

> (v) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(2) Immediately preceding the signature line, there shall be a statement which ***shall be highlighted*** that the agreement contains a predispute arbitration clause. The statement ***shall also indicate at what page and paragraph the arbitration clause is located***.

(3) A copy of the agreement containing any such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document.

(4) No agreement shall include any condition which limits or contradicts the rules of any self-regulatory organization or limits the ability of a party to file any claim in arbitration or limits the ability of the arbitrators to make any award.

(5) The requirements of this subsection (f) shall apply only to new agreements signed by an existing or new customer of a member after September 7, 1989.

NASD Notice to Members 89-58 (Aug. 1989), underline available at http://finra.complinet.com/

en/display/display.html?rbid=2403&element_id=1357.[6]  *See* Mouzon Dec. at Ex. B.  Effective

---

[6]      Effective October 28, 1993, Rule 21(f) was amended in ways not relevant here.  NASD Notice to Members 92-65 (Dec. 1992).  *See* Mouzon Dec. at Ex. C.  In 1996, Rule 21(f) was renumbered and became NASD Conduct Rule 3110(f).

May 1, 2005, the Rule, which had by then been renumbered as NASD Rule 3110(f), was

amended to enhance the required disclosures:

> (f) Requirements When Using Predispute Arbitration Agreements for Customers Accounts

>> (1) Any predispute arbitration clause shall be highlighted and shall be immediately preceded by the following language in outline form.

>> This agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

>>> (A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

>>> (B) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

>>> (C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

>>> (D) The arbitrators do not have to explain the reason(s) for their award.

>>> (E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

>>> (F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

>>> (G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

>> (2)    (A) In any agreement containing a predispute arbitration agreement, there shall be a highlighted statement immediately preceding any signature line or other place for indicating agreement that states that the agreement contains

> a predispute arbitration clause. The statement shall also
> indicate at what page and paragraph the arbitration clause is
> located.

Order Granting Approval to Proposed Rule Changes Regarding NASD Rule 3110(f) Governing

Predispute Arbitration Agreements with Customers, 69 Fed. Reg. 70,293, 70,293 (Dec. 3,

2004).[7]  *See* Mouzon Dec. at Ex. D.

Finally, in July 2007, the NASD consolidated with certain functions of the New York

Stock Exchange to create FINRA, the largest nongovernmental regulator for securities firms

doing business in the United States.  *See* www.finra.org.  FINRA was established as a SRO

under Section 15A of the Securities Exchange Act of 1934 and was provided authority to

exercise comprehensive oversight of "all securities firms that do business with the public."  *See*

Exchange Act Release No. 56,145, 72 Fed. Reg. 42,169, at 42,170 (July 26, 2007), underline available at

http://www.sec.gov/rules/sro/nasd/2007/34-56146.pdf.  *See* Mouzon Dec. at Ex. E.  FINRA is

responsible for developing rules that govern the conduct of the U.S. securities industry in areas

as diverse as sales practices, advertising, transactions with customers, marketplace rules, and

corporate finance.  Upon joining FINRA, a member organization must expressly agree to comply

with its rules.[8]  *See* FINRA Bylaws Article 4 § 1 (explaining that an application for membership

must contain an agreement by the member to comply with federal securities laws and all FINRA

---

[7]      The amendments made further changes not relevant here.

[8]      All broker-dealers wishing to sell DBSI Securities were also required to sign Soliciting
Dealers Agreements with DBSI.  Each broker-dealer signing such an agreement represented that
they would "comply with . . .  the rules and regulations of the Securities and Exchange
Commission, and with the Constitution, Bylaws and Rules of Fair Practice of the FINRA."
Compl. Ex. C. ¶ 3.2.

and NASD Regulations).  *See* Mouzon Dec. at Ex. F.  Following the creation of FINRA, former

NASD Rule 3110 is now embodied in FINRA Rule 2268.[9]

Significantly, for purposes of this motion, the NASD/FINRA rules concerning the

required form and content of agreements containing predispute arbitration clauses were

specifically intended to ensure that investors knew the content and import of what they were

signing.  Order Granting Approval to Proposed Rule Changes Regarding NASD Rule 3110(f), 69

Fed. Reg. at 70,293; NASD Notice to Members 05-09.  *See* Mouzon Dec. at Ex. G.  In other

words, compliance with these rules goes to the very heart of what the Defendants' own

regulators thought necessary to guarantee true "assent."  Indeed, in Mueske v. Piper, Jaffray &

Hopwood, Inc., 859 P.2d 444, 449–50 (Mont. 1993), the Montana Supreme Court confronted this

very issue and concluded that strict compliance with the SRO's disclosure rules concerning

predispute arbitration agreements was a condition precedent to their enforceability.  There, a

brokerage firm sought to compel arbitration of claims filed by an investor.  At issue was the

firm's violation of a NYSE and NASD rule requiring that a copy of any agreement containing a

predispute arbitration clause "be given to the customer who shall acknowledge receipt thereof on

the agreement or on a separate document."  Id. at 447.  The firm argued that any violation of the

rule was merely technical and that "nothing in the NASD rules mandate that the clause is void if

the rules are not followed."  Id.  The court disagreed with the firm's categorization of its

noncompliance as a "minor triviality," making note that "the NYSE and NASD rules . . . resulted

---

[9]    Rule 2268 was amended effective December 5, 2011, but those amendments are not
relevant to the dispute at bar.  Notice of Filing and Immediate Effectiveness of Proposed Rule
Change to Update Rule Cross-References and Make Non-Substantive Technical Changes to
Certain FINRA Rules, 76 Fed. Reg. 32,246, 32,247 (June 3, 2011); NASD Notice to Members
11-19 (Apr. 2011).  *See* Mouzon Dec. at Exs. H, I.  This Brief cites to Rule 3110(f) for ease of
reference because Defendants' conduct occurred while Rule 3110(f) was effective and before it
became Rule 2268.

from deliberate and purposeful actions of the Securities and Exchange Commission which require proper recognition from the court." Id.  The court further explained that "[t]he disclosure requirements of the rules were intended to further the purpose of the [Federal Arbitration Act] in enforcing arbitration agreements, but only when the agreements are fully disclosed to the investor." Id. at 449.  Against this backdrop the court held that the firm's failure to comply with NASD rules rendered the predispute arbitration clause invalid.  Id. at 450.

Against this legal and regulatory backdrop, review of the alleged agreements to arbitrate provided by the Moving Defendants in support of their motions to compel demonstrates consistent noncompliance with former NASD Rule 3110(f)/current FINRA Rule 2268.  Set forth below are particular problems with each Defendant's alleged arbitration agreements:

**Capital Financial Services ("CFS").**  Defendant CFS attaches a copy of its "Account Card and Account Agreement" without any sworn Declaration authenticating the document or explaining its use.  [D.I. 57-3 (A8–9).]  Initially, it is not known whether all CFS investors who assigned their claims to the Trustee actually read and signed the document.  Assuming that a document in the form provided by Defendant CFS was signed by each CFS investor, it fails to comply with several portions of Rule 3110(f).  Specifically, the rule requires that predispute arbitration clauses be "highlighted."  The arbitration clause contained in the form document provided is not highlighted.  Also, the rule requires that immediately above the signature line, the agreement must inform the customer not only that an arbitration provision is contained in the agreement but it also must identify the page and paragraph where the clause is located.  The form document provided by CFS also fails to satisfy the page and paragraph requirement.  The multitude of deficiencies in the CFS agreement precludes its enforcement and compels denial of CFS's motion to compel arbitration.

**Ogilvie Security Advisors Corp. ("OSA").**  Defendant OSA attaches a copy of a "New Account Form" dated August 25, 2005, without any sworn Declaration authenticating the document or explaining its use.  [D.I. 57-3 (A10–11).]  As explained above, discovery is needed to ascertain whether all OSA investors who assigned their claims to the Trustee signed the agreement under conditions that would support compulsory arbitration.  Assuming, however, that the investors actually read and signed the agreement, they should not be compelled to arbitrate because of the violation of Rule 3110's requirement that the arbitration clause be highlighted and its location identified.  In addition, the OSA agreement does not comply with the heightened disclosure requirements of the 2005 amendments to Rule 3110, but instead tracks the language of the prior version.  As such, the agreement does not comply with either the SEC or NASD standards for sufficiently informing customers of the import of what they are signing.

The OSA agreement also contains contradictory statements on a page with two signature lines:

## Ogilvie Security Advisors Corporation

### AGREEMENT TO ARBITRATE

I.   Arbitration

   A.   Arbitration is final and binding on the parties in arbitration;

   B.   The parties are waiving their right to seek remedies in court, including the right to a jury trial;

   C.   Pre-arbitration discovery is generally more limited and different from court proceedings;

   D.   The arbitrator's award is not required to include factual findings or legal reasoning and the right of any party to appeal or seek modification of rulings by arbitrators is strictly limited;

   E.   The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

II.   The undersigned agree(s) that any controversy between Client(s), and Ogilvie Security Advisors Corp. and/or its Registered Representatives (hereafter referred to as the "Company") arising out of or relating to Client(s) account(s) transactions with or for the Client(s) or the agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then obtaining of the National Association of Securities Dealers, Inc.

III.   The Client(s) and the Company agree that all controversies between the parties concerning any transaction or the construction, performance or breach of this or any agreement between the parties, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

IV.   No person shall being a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (i) the class certification is denied, or (II) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

By signing below, the undersigned acknowledges and agrees to the Arbitration Agreement above.

Addendum to the Arbitration Agreement

I hereby refuse to acknowledge and agree to the aforementioned Arbitration Agreement, but attest that all information provided on this new account application is accurate.

Signature: _____   Date: _____

Signature (Co-owner): _____   Date: _____

*To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial organizations to obtain, verify, and record information that identifies each person who opens an account. When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask you to provide a copy of your driver's license or other identifying documents.*

*Thank you for your cooperation.*

By signing this form the undersigned acknowledges the accuracy of the information contained within this New Account Form.

_____   8-25-05
CLIENT /OWNER/TRUSTEE OR CUSTODIAN SIGNATURE   (REQUIRED)   DATE

_____   DATE
JOINT SIGNATURE   (if applicable)

_____   8-25-05
RR SIGNATURE   (REQUIRED)   DATE

_____   OSA APPROVAL: _____
OSA RR NUMBER (REQUIRED)

operations/common/finsahaw account form.xls   Rev 12/04

16

The document states that "by signing below, the undersigned acknowledges and agrees to the Arbitration Agreement above." That statement is followed by a declaration of an "Addendum to the Arbitration Agreement," which is followed by a line that reads: "I hereby refuse to acknowledge and agree to the aforementioned Arbitration Agreement, but attest that all information provided on this new account application is accurate." Investors did not assent to arbitrate all of their claims when signing this document. In fact, by signing the above, investors expressly "refuse to acknowledge . . ." (whatever that means). Perplexing language such as that contained in the OSA agreement cannot be used to compel arbitration because it is frankly anybody's guess what each investor's understanding was of the significance of the separate signature lines. The alleged agreement is hopelessly muddled, completely ambiguous and legally unenforceable.

**Capital Analysts Inc. ("CA").** Defendant CA attaches records related to accounts involving investors Robert Eddy, Mark Wilkins and Kathy Wilkins. [D.I. 161-6.] Rule 3110(f)(2)(A) requires that immediately above the signature line, the document contain a highlighted statement indicating that the agreement contains a predispute arbitration clause and indicating the page and paragraph where the clause is located. The documents submitted by CA neither highlight the arbitration clause nor set forth the paragraph where the clause is located, and the clause itself is printed in microscopic type that could hardly be called clear and informative. These defects render CA's arbitration agreement invalid and unenforceable.

**American Portfolios ("AP").** Defendant AP attaches to its motion a document titled "New Account Qualifications/Disclosure Statement." [D.I. 161-1.] It is an unexecuted document, not attributable to any investor. Assuming that the document was indeed executed by all AP investors who assigned their claims to the Trustee, it does not, in any event, comply with

NASD rules.  First, the agreement reflects that it was revised in December 2009, but the arbitration clause does not reflect the 2005 amendments to Rule 3110.  Second, the document cannot be read without the assistance of a magnifying glass or other device used to enhance the size of written text, precluding any argument that the arbitration clause was "highlighted" within the meaning of Rule 3110(f).  Third, the location of the arbitration clause is not identified in the notice preceding the signature line, further violating Rule 3110(f)(2)(A).

The agreement attached to AP's motion is also fraught with other deficiencies.  The clause contained therein provides that:

> It is agreed that any controversy between the Parties arising out of your business or this agreement, except for those disputes between the parties arising under the federal securities laws which are held to be nonarbitrable as a matter of law, shall be submitted to arbitration conducted under the provisions of the constitution and rules of the Board of Governors of the New York Stock Exchange . . . .

*See* [D.I. 161-1] (Emphasis added).  At a minimum, this language suggests that federal securities law claims are <u>exempt</u> from arbitration (*i.e.* "nonarbitrable as a matter of law").  Based on this language alone, the Moving Defendants cannot demonstrate, as a matter of law, that the investors who may have signed this agreement consented to arbitrate the federal securities claims that have been assigned to the Trustee here.  As such, denial of AP's motion to compel arbitration is warranted.

**Capital Management Securities ("CMS").**  Defendant CMS attaches an unexecuted copy of its "New Account Form."  [D.I. 161-2.]  The form contains a predispute arbitration agreement with the information required under Rule 3110 related to the significant differences between arbitration and litigation.  Since the document is unexecuted, however, it is impossible to discern whether CMS investors who assigned their claims to the Trustee actually signed the document.  Moreover, without dates that the agreements were signed it is impossible to know

which version of the NASD/FINRA arbitration rules govern, which would be essential to any determination regarding its enforceability.

**LaSalle ST Securities ("LaSalle").**  Defendant LaSalle attaches two versions of new account forms, which it claims were executed by all new investors.  [D.I. 161-3.]  The signature lines are not attached, making it impossible to know whether the agreements comply with Rule 3110.  Further, since the documents are unexecuted, it is not known whether Defendant is correct in its assertion that each LaSalle investor who assigned their claims to the Trustee actually signed the documents and, if so, when.  Moreover, each of the LaSalle agreements from 2005 and later fails to state, as required by Rule 3110(f), that "[t]his agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows."  As noted above, the SEC and NASD strictly mandate that this language be included so that customers may be fully informed.  LaSalle failed to comply with this mandate and, as such, may not compel arbitration.

**Sanders Morris Harris, Inc. ("SMH").**  Defendant SMH attaches its "New Account Form."  *See* [D.I. 161-4.]  The form does not comply with Rule 3110's requirement that the disclosure above the signature line be highlighted and identify the location of the arbitration clause.  As with many of the documents provided by the Moving Defendants, it is impossible to determine if all SMH investors who assigned their claims to the Trustee actually signed the document.  Also, the agreement tracks the pre-2005 language of Rule 3110(f), and while the agreement itself does not appear to be dated, the SMH declaration states that its customers "are required" to sign a substantially similar form, suggesting that SMH uses the pre-2005 language to this day.  [D.I. 161-3, Ex. 4.]  Moreover, the arbitration clause is printed in an extremely small

font.  Because SMH failed to comply with the SEC and NASD mandate of full disclosure, it is precluded for enforcing its invalid arbitration agreement.

**J.W. Cole Financial ("J.W. Cole").**  Defendant J.W. Cole attaches to its motion, without any sworn Declaration as to authenticity, a "Customer Account Pre-Dispute Arbitration Agreement" purportedly signed on November 20, 2007, by David J. Williams, an agreement purportedly signed on April 11, 2005 by Bradley Carver, an agreement purportedly signed on March 11, 2008 by the Carol Jean Rogers Revocable Trust, an agreement purportedly signed on February 18, 2008 by Gregory Stalvey, and an agreement purportedly signed on March 18, 2008 by Joseph Sasser.  [D.I. 163-3.]  While there is a predispute arbitration clause in all agreements provided and the clauses are mentioned on the line immediately preceding the investor signatures, the clauses are not "highlighted" as required, and the form employs microscopic print.  Accordingly, J.W. Cole's alleged agreement to arbitrate does not comport with the regulatory requirements designed to protect investors, and, as such, cannot be used as a basis to compel arbitration.

**Merrimac Corporate Securities, Inc. ("Merrimac").**  Defendant Merrimac attached a form containing an arbitration agreement purportedly signed by each investor who purchased his or her Securities through Merrimac.  [D.I. 163-2.]  As explained above, further discovery is necessary to determine whether Merrimac investors who assigned their claims to the Trustee signed an identical agreement.  Also, the agreement is dated August 8, 2005, but the arbitration clause uses the pre-2005 language of Rule 3110(f).  Merrimac's failure to keep up with the SEC and NASD's disclosure mandates is clear from the fact that the agreement it provided states that the form was last revised in 2004.  Indeed, the Merrimac arbitration clause does not include the required statement notifying customers that "[t]his agreement contains a predispute arbitration

clause." It does not include the required clearer language about relinquishing the right to sue, limitations on discovery, and time limits for bringing a claim in arbitration, and it does not notify customers that the arbitration forum's rules are incorporated into the agreement.

**Resource Horizons Group LLC ("RHG").** Defendant RHG provided a "Customer Agreement and Disclosure Statement," without any sworn Declaration authenticating the document or explaining its use. [D.I. 163-4]. Is is rife with deficiencies. First, the form contains the pre-2005 Rule 3110(f) language despite being signed in March 2008. Second, the arbitration clause, like the one used by American Portfolios, excludes from its purview "those disputes between the parties arising under the federal securities laws which are or are held to be nonarbitrable as a matter of law." Third, the arbitration clause is not highlighted, in violation of Rule 3110. And finally, the arbitration clause is printed in illegible microscopic type. The RHG agreement patently does not satisfy all of the required disclosure obligations and, as such, is invalid. Accordingly, RHG's motion to compel arbitration must be denied.

**Calton & Associates ("Calton").** Defendant Calton has attached an unexecuted copy of its "Customer Information and Disclosure Document." [D.I. 163-1.] Since the document is unexecuted, it is not known whether Calton investors who assigned their claims to the Trustee actually signed an identical document. Moreover, assuming that the document was executed by all Calton investors, without dates it is impossible to discern which version of the NASD arbitration rules govern, which is essential to any determination regarding its enforceability. In any event, the arbitration clause is not highlighted, as required by all versions of Rule 3110(f). These deficiencies mandate denial of Calton's motion to compel arbitration.

**CFD Investments ("CFD").** Defendant CFD attaches a copy of six New Account Agreements signed by investors. [D.I. 178] These agreements are in noncompliance as they do

not contain a highlighted statement preceding the signature line identifying the page and paragraph where the arbitration clause is located.  The page where the clause is located is identified in the statement, but the paragraph is not.  Further, the arbitration provision is not "highlighted" because, while italicized, it is barely distinguishable from surrounding text due to the diminutive size of the font.  Accordingly, the CFD agreement is unenforceable and does not support CFD's motion to compel arbitration.

**Money Concepts Capital Corp. ("Money Concepts").**  Defendant Money Concepts attaches to its motion an unexecuted copy of an Agreement to Arbitrate that it claims is signed by all of its customers.  [D.I. 186-1]  Since the document is unexecuted the Court cannot be sure that all Money Concepts investors who assigned their claims to the Trustee actually signed an identical document.  Assuming that the document was signed by those PAT beneficiaries, without dates it is impossible to discern which version of the NASD/FINRA arbitration rules govern.  Moreover, Money Concepts has not provided the page containing the signature line, making it impossible to determine whether the clause complies with Rule 3110.  Money Concepts has not sustained its burden of establishing an enforceable arbitration agreement and, as such, cannot compel arbitration.

The Moving Defendants expressly agreed to follow the Rules enacted by FINRA both when they submitted their applications for membership in the organization and again when they entered into agreements with DBSI.  The rules are not trivial and are in place to protect investors and broker-dealers alike.  The rules are very specific and strict and are designed to ensure that investors who execute agreements with arbitration provisions are fully cognizant that they are agreeing to arbitration, which greatly impacts consumer's rights and can include far greater costs than litigation, limits on discovery, the lack of a reasoned opinion, and severe restrictions on the

right to appeal.  As explained in detail above, many of the Moving Defendants failed to comply with FINRA Rules governing the use of arbitration clauses, and, as a result, those arbitration clauses cannot be enforced by this Court.  *See* Mueske, 859 P.2d at 449–50.

## POINT II

### THE ARBITRATION AGREEMENTS ARE UNENFORCEABLE BECAUSE THEY ARE UNCONSCIONABLE.

Even if the Moving Defendants could prove that they lawfully obtained every investor's assent to a rules-compliant arbitration clause, which they cannot, the arbitration clauses would still be void as unconscionable.  Unconscionability is a fact-sensitive inquiry that cannot be resolved on the record before the Court.  The Federal Arbitration Act provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party's mere demand, however, does not automatically require the submission of a dispute to arbitration.  Century Indem. Co., 584 F.3d at 523.  A dispute should not be submitted to arbitration even if an arbitration clause exists that covers the disputed issue(s) if the agreement to arbitrate is subject to any other contract defense, such as unconscionability.  Doctor's Assocs., Inc. v. Cassarotto, 517 U.S. 681, 687 (1986); *see also* Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (explaining that just like other contracts, arbitration clauses may be invalidated by generally applicable contract defenses such as fraud, duress or unconscionability); Litman v. Cellco Partnership, 655 F.3d 225, 230 (3d Cir. 2011) (stating that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements"); Seus v. John Nuveen & Co., 146 F.3d 175, 183 (3d Cir. 1998) (stating that an arbitration agreement can be revoked under "generally applicable principle[s] of contract law").

In their moving briefs, the Moving Defendants emphasize that the Trustee is bound by the arbitration agreements entered into by the investors as a result of the court's decision in <u>Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F.2d 1149, 1153–54 (3d Cir. 1989). The <u>Hays</u> court based its decision on the fact that the Federal Arbitration Act ("FAA") "puts arbitration agreements on the same footing as other contracts." <u>Id.</u> at 1154.  As such, like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." <u>Doctor's Assocs</u>, 517 U.S. at 687.  Because, pursuant to <u>Hays</u>, the Trustee here "stands in the shoes" of the investors, 885 F.2d at 1153, if the arbitration agreements are invalidated for any "applicable contract defense" such as unconscionability, the agreements may not be enforced against the Trustee. *See, e.g.*, <u>McDonald v. Cash N Advance, Inc.</u>, 312 B.R. 407, 412 (Bankr. D. Nev. 2004) (denying motion to dismiss Chapter 13 trustee's claims against defendant in an adversary proceeding on the basis of an arbitration provision in an agreement between defendant and debtor where the arbitration provision was unconscionable, stating:  "[B]ecause the Note is an adhesion contract that limits the Debtor's rights, [Defendant] has the burden of establishing that the Debtor received plain and clear notification of the arbitration provision and gave his understanding consent to it. . . . . [T]he Court concludes that it is not sufficient to show that the provision was clearly visible in a single page document signed by the Debtor. . . . [N]o evidence was provided that the significance of the arbitration provision was explained to the Debtor before he signed the Note.") (internal quotation marks and citation omitted).

Whether an arbitration clause is unconscionable is a question of state contract law. <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 264 (3d Cir. 2003).  A representative sample of unconscionability doctrines from states whose laws apply here demonstrates that the analysis is

similar from state to state:  generally, an arbitration agreement is unconscionable if there is both

procedural and substantive unconscionability.[10]

The arbitration agreements at issue here are unconscionable under any of the

aforementioned states' contract law.  Procedural unconscionability exists where "one of the

parties lacks meaningful choice."  Wells v. Merit Life Ins. Co., 671 F. Supp. 2d 570, 574 (D.

---

[10]     See Scovill v. WSYX/ABC, Sinclair Broad. Grp., Inc., 425 F.3d 1012, 1017 (6th Cir. 2006) (stating that Ohio law requires that for a contract to be unenforceable, it must be both procedurally and substantively unconscionable); Faber v. Menard, Inc., 367 F.3d 1048, 1053 (8th Cir. 2004) ("The Iowa Supreme Court has established that we should analyze the following factors of unconscionability:  (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness.  The ultimate conclusion of whether a provision is unconscionable is to be made 'in view of all the circumstances.'") (citation omitted); Wells v. Merit Life Ins. Co., 671 F. Supp. 2d 570, 574 (D. Del. 2009) ("Under Delaware law, a contract is rendered unconscionable if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other."); Armendariz v. Found. Health Psychchare Servs., 6 P.3d 669, 690 (Cal. 2000) (stating that California applies a sliding-scale unconscionability analysis), abrogated in part by AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011); Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999) ("To support a determination of unconscionability [under Florida law], however, the court must find that the contract is both procedurally unconscionable and substantively unconscionable."); Wattenbarger v. A.G. Edwards & Sons, 246 P.3d 961, 974 (Idaho 2010) ("In order for a contractual provision to be voided for unconscionability [under Idaho law], it must be both procedurally and substantively unconscionable."); Kinkel v. Cingular Wireless, LLC, 857 N.E.2d 250, 263 (Ill. 2006) ("A finding of unconscionability [under Illinois law] may be based on either procedural or substantive unconscionability, or a combination of both."); Iwen v. U.S. W. Direct, 977 P.2d 989, 994–95 (Mont. 1999) (A contract of adhesion "will not be enforced [under Montana law] against the weaker party when it is:  (1) not within the reasonable expectations of said party, or (2) within the reasonable expectations of the party, but, when considered in its context, is unduly oppressive, unconscionable or against public policy."); Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 687 (N.J. 2010) ("When making the determination that a contract of adhesion is unconscionable and unenforceable [under New Jersey law], we consider, using a sliding scale analysis, the way in which the contract was formed and, further, whether enforcement of the contract implicates matters of public interest."); State v. Wolowitz, 468 N.Y.S.2d 131, 145 (1983) (stating that while New York requires a showing of both procedural and substantive unconscionability, "it can be said that procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa"); In re Olshan Found. Repair Co., LLC, 328 S.W.3d 883, 892 (Tex. 2010) (stating that Texas recognizes both procedural and substantive unconscionability).

Del. 2009) (footnote omitted); *see also, e.g.*, Stirlen v. Supercuts, Inc., 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997); Bess v. DirecTV, Inc., 885 N.E.2d 488, 496 (Ill. App. Ct. 2008). The customers here clearly lacked meaningful choice. Their options were to "take it or leave it": take the arbitration provision or leave the securities market. The Moving Defendants concede that their policies require all new customers to sign arbitration agreements [D.I. 57, at 7; D.I. 161, at 2; D.I. 163, at 2; D.I. 177, at 2; D.I. 186, at 2], and the vast majority of broker-dealers across the country do the same. David S. Ruder, Foreword to NASD Dispute Resolution, The Arbitration Policy Task Force Report—A Report Card 1, 1 (2007). In addition, the DBSI Securities involved here were only available through a limited number of brokers. Therefore, the customers had no option to shop around for better contractual provisions.

An arbitration agreement is substantively unconscionable where its terms are unduly harsh or oppressive. *See, e.g.*, Pokorny v. Quixtar, Inc., 601 F.3d 987, 996 (9th Cir. 2010) (noting that under California's sliding-scale unconscionability analysis, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa"); Strand v. U.S. Bank Nat'l Ass'n ND, 693 N.W.2d 918, 926 (N.D. 2005) ("Substantive unconscionability focuses upon the harshness or one-sidedness of the contractual provision in question."). Many states recognize that an arbitration agreement that subjects the plaintiff to exorbitant arbitration fees may be deemed substantively unconscionable. *See* Tranchant v. Ritz Carlton Hotel Co., LLC, 2011 U.S. Dist. LEXIS 35099, at *17 (M.D. Fla. Mar. 31, 2011) (applying Florida law); Brown v. Luxottica Retail N. Am., Inc., 2010 U.S. Dist. LEXIS 104642, at *7 (N.D. Ill. Sept. 29, 2010) (applying Illinois law); Parada v. Superior Court, 98 Cal. Rptr. 3d 743, 765 (Cal. Ct. App. 2009); Brower v. Gateway 2000, 676 N.Y.S.2d 569, 574 (N.Y. App. Div. 1998) ("We do find, however,

that the excessive cost factor that is necessarily entailed in arbitrating before the ICC is unreasonable and surely serves to deter the individual consumer from invoking the process.").

Similarly, several federal and state courts have held that a court may decline to enforce an arbitration agreement if the excessive fees provided for in the agreement prevent the plaintiff from effectively vindicating his or her statutory rights. *See, e.g.*, <u>Faber</u>, 367 F.3d at 1053; <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 605 (3d Cir. 2002); <u>Murphy v. Mid-West Nat'l Life Ins. Co.</u>, 78 P.3d 766, 768 (Idaho 2003); <u>Delta Funding Corp. v. Harris</u>, 912 A.2d 104, 112 (N.J. 2006). Courts have held that a plaintiff will not be able to vindicate his or her statutory rights if arbitration fees present an excessive financial burden. <u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 90 (2000); <u>Blair</u>, 283 F.3d at 605. This inquiry is done on a case-by-case basis and should focus on the "'claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.'" <u>Blair</u>, 283 F.3d at 609 (quoting <u>Bradford v. Rockwell Semiconductor Sys. Inc.</u>, 238 F.3d 549 (4th Cir. 2001)).

The Third Circuit Court of Appeals has recognized that a plaintiff need not demonstrate to a certainty that he will be forced to bear the costs of arbitration to prove the existence of an excessive financial burden. <u>Parilla v. IAP Worldwide Servs. VI, Inc.</u>, 368 F.3d 269, 284–85 (3d Cir. 2004). In <u>Parilla</u>, the court stated that the indeterminate possibility that a plaintiff would have to bear all of the costs of arbitration is sufficient to demonstrate that arbitration will be prohibitively expensive. <u>Id.</u> at 284. "Simply the prospect that the [plaintiff] may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim." <u>Id.</u> at 285. The fact that the arbitrator might have discretion to award fees, as an arbitrator does under FINRA Rules 12900 and 12902, does not change the calculation. <u>Id.</u> "This

is so because an opportunity for the apportionment of fees by an arbitrator does not counter the preclusive effect of high arbitration fees." Lucey v. FedEx Ground Package Sys., 2007 U.S. Dist. LEXIS 77454, at *29 (D.N.J. Oct. 18, 2007), aff'd in part and rev'd in part, 305 F. App'x 875 (3d Cir. 2009).

If successful on the current motion, Defendants are likely to attempt to force the Trustee to separately arbitrate his claim as to each of the thousands of individual assigning investors, thus saddling the PAT with potentially enormous fees required under applicable arbitration rules. For example, while the fee to file a complaint in this Court is $350, the fee to file a FINRA arbitration relating to investments such as the DBSI securities sold by the Moving Defendants could be four times that amount (or nearly $1,500) for each arbitration. FINRA Rule 12900. *See* Mouzon Dec. at Ex. J. In addition, the fee for each hearing session, which is defined as "any meeting between the parties and arbitrator(s) of four hours or less" and includes any prehearing conference, will probably exceed $1,000. *See* FINRA Rules 12100, 12902. *See* Mouzon Dec. at Exs. K, L. One or both of the parties will also be responsible for administrative costs, such as those associated with recording proceedings and producing witnesses for testimony. *See* FINRA Rule 12902(d). While the arbitrators may allocate fees and costs among the parties in their award, FINRA Rule 12902(c), the risk that the PAT will be responsible to pay upwards of $10,000 per arbitration, exclusive of attorney's fees and other costs, is not insignificant. The prospect of such burdensome fees may, as a practical matter, significantly chill the ability of the Trustee vigorously to pursue every claim in arbitration. *See* Parilla, 368 F.3d at 285.

Moreover, given the number of investors on whose behalf the Trustee is bringing claims, compelling arbitration would undermine a primary objective of arbitration, *i.e.*, an efficient and

cost-effective dispute resolution process.[11]   A 2010 survey by the Financial Services Institute, an

industry advocate, concluded that "[t]he perceived benefits of FINRA arbitration diminish when

the number of claimants or respondents increases, or when a large demand for monetary relief is

made," and noted that most survey respondents reported that "as few as three to five claimants or

respondents is sufficient to warrant litigating in court instead of arbitration."  *See* Fin. Servs.

Inst., The Efficacy of Securities Arbitration and Proposals for Change 3, 12 (2010).  In fact,

since 1992, FINRA and its predecessors have barred class action claims from being submitted to

arbitration.  FINRA Rule 12204, *see* Mouzon Dec. Ex. M; *see also* Order Approving Proposed

Rule Change Relating to the Exclusion of Class Actions from Arbitration Proceedings, S.E.C.

Release No. 34-31371, 52 S.E.C. Docket 2189, 1992 SEC LEXIS 2767, at *8–9 (Oct. 28, 1992)

("[T]he NASD believes, and the Commission agrees, that the judicial system has already

developed the procedures to manage class action claims.  Entertaining such claims through

arbitration at the NASD would be difficult, duplicative and wasteful. . . . The Commission agrees

with the NASD's position that, in all cases, class actions are better handled by the courts and that

investors should have access to the courts to resolve class actions efficiently."); D.E. Frey & Co.

v. Wherry, 27 F. Supp. 2d 950, 951 (S.D. Tex. 1998) ("[Predecessor NASD] rule armed

investors with a means to object to an attempt to compel arbitration when they would rather

pursue class action litigation in a court.").  While this is not a class action, this litigation bears

many similarities to class action litigation in scope, complexity, and number of injured investors.

The policies reflected in the FINRA ban on class arbitration -- the effective use of judicial

---

[11]     Only certain of the Broker Defendants have moved to compel arbitration.  Thus, even if
this Court were to grant all of the pending motions to compel arbitration, this litigation would
still continue against the remaining Broker Defendants.  The Trustee would then be faced with
the prospect of litigating the same issues on multiple fronts, further diminishing the potential
recovery available to the PAT beneficiaries injured by Defendants' wrongful conduct.

expertise, the interests of judicial economy, and the preservation of investor choice -- apply

equally here.  Arbitration of the many claims raised here would be "difficult, duplicative and

wasteful," and the Court should deny Defendants' motions to force these litigants into an

inadequate forum.[12]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Moving

Defendants' Motions to Compel Arbitration.

Dated:  December 22, 2011          **GIBBONS, P.C.**
         Wilmington, Delaware

                                   */s/  Christopher Viceconte*
                                   Christopher Viceconte (No. 5568)
                                   1000 North West Street, Suite 1200
                                   Wilmington, DE 19801-1058
                                   Telephone:  (302) 295-4875
                                   Facsimile:  (302) 295-4876
                                   cviceconte @gibbonslaw.com

                                   *Counsel for Plaintiff*

---

[12]     Plaintiff notes that should the Court rule in Broker Defendants' favor on the motions to compel arbitration [D.I. 57, 189], their statute of limitations motions would thereby be rendered moot.  FINRA's arbitration rules provide for a six-year limitations period.  Exempted from this period, however, are claims "directed to arbitration by a court of competent jurisdiction upon request of a member or associated person."  FINRA Rule 12206.  Under FINRA rules, therefore, all of Plaintiff's claims would be eligible for arbitration because this Court will have directed them to arbitration at Broker Defendants' request.  In any event, if the Court compels arbitration, it would be improper to also render a decision on statute of limitations grounds because the question of whether Plaintiff's claims are eligible for arbitration under Rule 12206 would be for the arbitrator to decide in the first instance.  *See* Mid-Ohio Secs. Corp. v. Estate of Burns, 790 F. Supp. 2d 1263, 1271-72 (D. Nev. 2011) (holding that applicability of Rule 12206 is a procedural question for the arbitrator, and not the court); *see also* Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002) (holding a similar eligibility rule to be a matter that is presumptively for the arbitrator).