IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI, as Trustee for the :
DBSI Private Actions Trust,                          :          NO.    1:11-cv-00475-GMS
                                                              :
                            Plaintiff,                     :
                                                              :
            v.                                             :
                                                              :
ADVISORY GROUP EQUITY                      :
SERVICES, LTD., ET AL.                         :
                                                              :
                            Defendants.

---

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN ITS
ENTIRETY WITH PREJUDICE FOR FAILURE TO SUFFICIENTLY STATE CLAIMS
FOR RELIEF AGAINST THE BROKER DEALER DEFENDANTS[1]**

Dated: January 23, 2012

---

[1] Due to the large number of defendants joining in the reply brief, it is not feasible to list all of them and their counsel on the cover page as required by Local Rule 7.1.3 (a)(1). The defendants joining the brief direct the Court's attention to the signature blocks and Exhibit "A" at the end of the brief for a list of all participating defendants and their counsel.

## Table of Contents

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |
|  | A. Plaintiff Has Not Sufficiently Pled Fraud | 1 |
|  | 1. PSLRA Imposes Congressionally-Mandated Pleading Standards. | 1 |
|  | 2. Plaintiff Cannot Take Advantage of a Relaxed Rule 9(b) Standard. | 2 |
|  | B. Plaintiff Has Not Identified an Actionable Misstatement | 3 |
|  | 1. Courts Have Already Rejected 10b-5 Claims Based on the Same Implied Representation Theory that Plaintiff Proffers Here | 4 |
|  | 2. Plaintiff Has Not Pled an Actionable 10b-5 Claim Based on an Explicit Promise to Conduct Due Diligence | 6 |
|  | 3. Plaintiff Has Not Pled Loss Causation | 7 |
|  | 4. Plaintiff Has Not Pled Reliance. | 8 |
|  | 5. Plaintiff Has Not Pled With Specificity Why The Statements Were False | 9 |
|  | 6. Plaintiff Failed to Plead Scienter | 9 |
|  | C. Motion to Dismiss on Statute of Limitations Grounds is Not Premature | 11 |
|  | D. The Court Should Dismiss the Remaining Claims for Lack of Jurisdiction | 13 |
|  | E. Plaintiff Has Not Sufficiently Pled State Law Claims | 13 |
| III. | CONCLUSION | 15 |

## Table of Authorities

### Cases

*Aaron v. SEC*,  446 U.S. 680, 693 (1980) .................................................................... 5

*Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006) ...................................... 12

*Conway v. Icahn & Co.*, 16 F.3d 504, 510 (2d Cir. 1994) ............................................. 14

*Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 641 (D.C. Cir. 2008) ......................... 5

*Egervary v. Young*, 366 F. 3d 238, 246 (3d Cir. 2003) ................................................... 7

*Ellington Mgmt. Group, LLC v. Ameriquest Mortgage Co.*, No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at \*3 (S.D. N.Y. Sept. 29, 2009) ....................................................................... 10

*Eric P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct 2179, 2185 (2011) ...................... 9

*Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ............ 14

*Gabriel Cap. v. NatWest Fin.*, 137 F. Supp. 2d 251, 263 (S.D. N.Y. 2000) ..................... 4

*Goodman  v. Goldman, Sachs & Co.*, Civ. No. 10-1247, 2010 WL 5186180, at \*11 (D. N.J. Dec. 14, 2010) ....................................................................................................................... 5

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 416 (S.D. N.Y. 2007) .................. 9

*In Re Beacon Assocs. Litig.* 745 F.Supp.2d 386 (S.D. NY 2010) .................................. 11

*In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 222 (Bankr. S.D. N.Y. 2011) ............... 10

*In re J.P. Jeanneret*, 769 F. Supp. 2d at 377 (S.D. NY 2011) ....................................... 7

*In re Providian Fin. Corp. ERISA Litig.*, No. C-01-05027 CRB, 2002 WL 31785044, at \*1 (N.D. Cal. Nov. 14, 2002) ...................................................................................................... 15

*In Re: Merck & Company, Inc. Securities, Derivative and ERISA Litigation*, 543 F. 3d 150, 153 fn.1 (3d Cir. 2008) .................................................................................................... 12

*In Re: SB International v. PR Jindal*, 2007 U.S. Dist. LEXIS 3499, \*at 3-6 (N.D. TX 2007) .... 12

*In Re: Synchronoss Securities Litigation*, 705 F. Supp. 2d 367 (D. N.J. 2010) ............. 13

*Janus Cap. Group, Inc. v. First Deriv. Traders*, 131 S. Ct. 2296, 2302 (2011) ............ 3

*Kirschner v. Bennett (In re Refco Sec. Litig.)*, 759 F. Supp. 2d 301 (S.D. N.Y. 2010) ............... 14

*Lattanzio v. Deloitte & Touche*, 476 F.3d 147, 154-155 (2d Cir. 2007 .......................... 4

*Milo v. Galante*, 2011 U.S. Dist. LEXIS 32092, \*at 10 (D. Ct.) ................................... 13

*Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1070 (7th Cir. 1975) .......................... 5

*SEC v. Cohmad Secs Co.*, 2010 WL 363844, \*at 5 (S.D. N.Y. Feb. 2, 2010) ............................ 11

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ............................................................ 5

*South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ...................... 10

*Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 576 (S.D. N.Y. 2011) ....... 10

*Tracinda Corp. v. Daimler Chrysler*, 197 F. Supp. 2d 42, 57 (D. Del. 2002) ............................ 12

*Tse v. Ventana Medical Systems, Inc.*, 123 F. Supp. 2d 213 (D. Del. 2000) .................. 13

*U.S. v. Schiff*, 602 F.3d 152 (3rd Cir. 2010) .................................................................. 5

## I.   **INTRODUCTION**

In opposing this motion to dismiss [D.I. 157-158], the Plaintiff does not even attempt to defend the sufficiency of the Complaint under the well-established *heightened* pleading requirements of the federal securities laws.   Indeed, the Trustee argues those standards are inapplicable here and further, are "relaxed" because the Plaintiff is a Private Actions Trustee appointed by the Bankruptcy Court.   There is no support for this proposition whatsoever.   For the reasons set forth below and in the Opening Brief, Defendants are entitled to an order dismissing the Complaint with prejudice in its entirety.

## II.   **ARGUMENT**

### A.   **Plaintiff Has Not Sufficiently Pled Fraud**

Plaintiff, like any other party bringing a securities claim, must plead with particularity. Plaintiff argues that Rule 9(b) is typically relaxed in cases involving bankruptcy trustees and cites several bankruptcy cases that required less particularity in pleading. (Opp. at p. 5).   Those cases-none of which are securities fraud cases-are not applicable here.   Nor is this Plaintiff a bankruptcy trustee seeking to recover preferences or fraudulent transfers in bankruptcy court. Plaintiff is an assignee of voluntarily-assigned claims to a for-profit trust.   Plaintiff, and the claims assigned to the trust, are most certainly bound by the same pleadings standards that any other securities fraud plaintiff is bound by when asserting those claims in district court.

#### 1.   **PSLRA Imposes Congressionally-Mandated Pleading Standards.**

While asking the Court to relax the pleading standards, the Trustee barely mentions the PSLRA or cites a single case that discusses the PSLRA's applicability here. The Trustee cites: (a) three cases that pre-date the 1995 passage of the PSLRA and do not involve securities fraud

allegations at all;[2] (b) Judge Walsh's ruling in the context of bankruptcy avoidance actions against a DBSI principal for fraudulent transfers by the Liquidating trustee;[3] (c) three additional bankruptcy avoidance actions holding similarly that also do not involve or address securities fraud pleading requirements;[4] (d) a state law negligence case;[5] (e) an ERISA case;[6] and (f) one securities fraud case that predates passage of the PSLRA.[7]

The PSLRA is a statute passed by Congress and it provides for no exceptions. The language is clear: a court must dismiss a complaint that fails to meet its heightened pleading requirements—especially those of Rule 9(b). 15 U.S.C. 78u-4(b)(3) (West 2011).

### 2.    Plaintiff Cannot Take Advantage of a Relaxed Rule 9(b) Standard.

As set forth above, none of the cases cited allow for relaxing Rule 9(b)'s pleading requirements in the securities fraud context. Relaxing pleading rules in this context would produce perverse incentives that could completely eviscerate the protections of Rule 9(b),

---

[2] See *Eisenber v. Feiner (In re Ahead by A Length, Inc.)*, 100 B.R.157, 167 (Bankr. S.D. N.Y. 1989) (RICO claim brought by bankruptcy trustee against principals of debtor for fraudulent transfers); *In re OPM Leasing Servs., Inc.*, 32 B.R. 199, 203 (S.D.N.Y. 1983) (fraudulent transfer actions against debtors); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (private civil RICO claim re industrial machinery).

[3] *Zazzali v. Swenson (in re DBSI, Inc.)*, 2011 Bankr. LEXIS 1677, at *7 (Bankr. D. Del. May 5, 2011) (liquidating trustee avoidance actions for fraudulent transfers against former principal of DBSI).

[4] See *Pardo v. Gonzaba*, 308 B.R. 183, 188 (Bankr. D. Del. 2004)(liquidating trustee's avoidance action for fraudulent transfers); *Global Link Liquidating Trust v. Avantel, S.A.*, 327 B.R. 711, 717 (Bankr. D. Del. 2005)(same); *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999)(SIPC liquidating trustees' action against principals of brokerage firm debtor seeking to recover fraudulent transfers).

[5] *Scheinman v. Martin's Bulk Milk Serv. Inc.*, 2011 U.S. Dist LEXIS 40701, at *8-9 (N.D. Ill. Apr. 12, 2011)(automobile accident, negligence claim).

[6] *Steffy v. Liberty Life Assurance Co. of Boston*, 2009 U.S. Dist. LEXIS 93515, at *11-12 (W.D. Pa. Oct. 7, 2009)(addressing the sufficiency of a motion to dismiss an ERISA disability benefits case).

[7] *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d. Cir. 1989), does not involve or address standards applicable to a trustee and predates passage of the PSLRA. The Third Circuit in *Craftmatic* did not simply waive the requirements of Rule 9(b), as the Trustee attempts to suggest, but granted plaintiff leave to replead stating:

> We agree that rigid enforcement in such circumstances could permit "sophisticated defrauders" to avoid liability. Nonetheless, even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based.

890 F.2d. at 645 (citations omitted).

encouraging plaintiffs with potentially frivolous claims to simply pool their claims in a trust, and enjoy an easier pleading standard.

Even if this were a bankruptcy case, Rule 9(b) would be fully applicable to the Trustee, as one with access to the debtor's records and knowledge concerning the acts of fraud allegedly committed. *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 837-838 (M.D. Fl. 2011).[8] Plaintiff had access to books and records of DBSI, former DBSI employees and investors Plaintiff alleges were defrauded. Plaintiff had the ability to investigate the alleged fraud for more than 2 years prior to filing the Complaint in May 2011.

Despite this access and knowledge, Plaintiff has pled in generalities. Thus, there is no reason to relax the requirements of 9(b) in this circumstance. *See In re: RSL Com Primecall, Inc.*, 2003 WL 22989669, at*6 (Bkrtcy. S.D.N.Y. 2003) (Rule 9(b) not relaxed where Plaintiffs already had discovery and access to information, including books and records of the debtor).[9]

## B.      Plaintiff Has Not Identified an Actionable Misstatement

Having now recognized that his original theory of liability is barred by *Janus Cap. Group, Inc. v. First Deriv. Traders*, 131 S. Ct. 2296, 2302 (2011), Plaintiff attempts to recast his 10b-5 claim in his Opposition. He now implicitly concedes that Defendants did not make the

---

[8] *In re Charys Holding Company, Inc.*, 2010 WL 2774852, at *3 (D. Del. 2010) ("as outsiders to the Transfers, the Trusts may be put to some trouble, but they are not completely helpless, and the pleading requirements under Rules 8, 9, and 12(b)(6) remain applicable"). As the Court stated in *Ernie Haire*, which involved a fraudulent kickback scheme against 42 defendants, "Having access to the Debtor's records, and armed with a method of identifying particular transactions as potentially fraudulent, Plaintiff has been able to identify specific transactions that he believes are actionable. Accordingly, Plaintiff must plead the details of those transactions and with particularity required by Rule 9(b)." 459 B.R. at 838.

[9] Plaintiff also argues that "courts will also relax Rule 9(b) when information is uniquely within the control of the defendant." (Opp. at p. 6). But Plaintiff has not pled that any information is in the particular control of any defendant.  "[P]leaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 675 (3d Cir. 1988) (pleadings do not satisfy Rule 9(b); no reason to believe that additional information is in the exclusive control of defendant).

statements in DBSI's PPMs that formed the basis of his Complaint (Compl. ¶¶ 4, 241, 245, 250, 253, 255, 262-269, 278-281, 291-293, 311-314), but argues that Defendants made actual/implied statements that they would investigate DBSI's representations. The failure to conduct that investigation, he argues, creates an actionable 10b-5 claim. Plaintiff cannot circumvent *Janus* by claiming a breach of a duty to investigate statements he now admits the Defendants did not make. Given the vast scope of liability this implied statement theory would impose, it is not surprising that courts have rejected it.

### 1.   Courts Have Already Rejected 10b-5 Claims Based on the Same Implied Representation Theory that Plaintiff Proffers Here

*Gabriel Cap. v. NatWest Fin.*, 137 F. Supp. 2d 251, 263 (S.D.N.Y. 2000) rejected a 10b-5 claim against an investment advisor premised on the "proposition that Rule 10b-5 is violated when an investment advisor fails to investigate the accuracy of representations in an offering memorandum or road show or fails to inform its client that it will not investigate the accuracy of those representations." The court refused to impose such duty because an investment advisor is "not required to assume the role of accountant or private investigator and conduct a thorough investigation of the accuracy of the facts contained in the documents that it analyzes for the purpose of recommending an investment." *Id.*

Courts have refused to allow similar claims even against defendants who have an independent obligation to confirm the accuracy of another party's statements. In *Lattanzio v. Deloitte & Touche*, 476 F.3d 147, 154-155 (2d Cir. 2007), plaintiffs argued that because an accounting firm was obligated under federal law to review the financial statements of a company, investors could rightfully construe the firm's silence as a statement that the financials were accurate. The court, applying the bright-line attribution rule adopted in *Janus*, refused to impose liability in the absence of an actual statement by the accountant. *Id.* at 155.

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) held that to the extent the "implied statement" theory proffered by Plaintiff was ever viable, it has not survived *Central Bank* and *Stoneridge*. In holding that an underwriter did not make a statement by distributing a prospectus drafted by an issuer, the court also rejected the claim that every underwriter who distributes a prospectus makes an implied statement that it has complied with a duty to investigate the accuracy of statements in the prospectus. *Id.* at 441, 447-448. This implied statement theory would impose a "free-standing and unconditional duty to disclose" that would "fly in the teeth" of the requirement that a party's non-disclosure of information under 10b-5 is actionable only when there is an "*independent* duty to disclose" that arises outside of the securities laws. *Id.* at 448 (emphasis original); *cf U.S. v. Schiff*, 602 F.3d 152 (3rd Cir. 2010)(no duty to correct misstatements of others). This theory would "impose primary liability under Rule 10b-5(b) on these securities professionals whenever they fail to disclose material information not included in a prospectus, regardless of who prepared the prospectus." *Id.* at 447-448.

The logic in *Tambone* and *Gabriel* applies even more forcefully to ordinary broker-dealers, who do not owe clients an underwriter's "heightened obligation" to investigate an issuer's statements, *Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1070 (7th Cir. 1975) *vacated* 425 U.S. 929 (1976); *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 641 (D.C. Cir. 2008), or the fiduciary duties of investment adviser. *E.g. Aaron v. SEC*, 446 U.S. 680, 693 (1980); *Goodman v. Goldman, Sachs & Co.*, Civ. No. 10-1247, 2010 WL 5186180, at *11 (D.N.J. Dec. 14, 2010) ("Investment advisors, unlike brokers, serve as fiduciaries on behalf of their clients.").

Plaintiff's cases do not change this analysis. In each of those cases, the court found that a broker had made an actual misrepresentation. *Tambone* rejected the SEC's contention that this line of cases supported an implied statement theory, recognizing that, despite the sound bites, the

cases "were directed toward a wholly distinct issue: whether the defendant acted with the required state of mind in making the statements." *Id.* at 448. This Court should reject the implied statement theory and dismiss the 10b-5 claim.

### 2.    Plaintiff Has Not Pled an Actionable 10b-5 Claim Based on an Explicit Promise to Conduct Due Diligence

Plaintiff claims 3 documents contain explicit representations by Defendants that they will conduct due diligence: (1) DBSI's PPMs; (2) the Soliciting Dealer Agreements between DBSI and broker-dealers; and (3) Subscription Agreements that broker-dealers and investors provided to DBSI. None of these documents support Plaintiff's 10b-5 claim. First, these documents do not state that any broker-dealer would (or already did) conduct due diligence. Second, Plaintiff has not pled that any investor, let alone every investor who assigned claims to the PAT, relied on those statements. Finally, even assuming Plaintiff could point to an explicit statement by Defendants that they would conduct due diligence, he has not alleged, consistent with his obligations under Rule 9(b), Rule 11, and the PSLRA that the statement was false with respect to each of the 64 broker-dealers named in the Complaint.

Neither the PPMs, the Soliciting Dealer Agreements, nor the Subscription Agreements state that broker-dealers will investigate and confirm DBSI's representations. The broker-dealers' representations in the Subscription Agreement make no mention whatsoever about due diligence. On its face, it is clearly a representation by broker-dealers to DBSI Securities (not to investors) that the subscribing investor meets suitability standards, *i.e.* the investor understands and has sufficient net worth and income to bear the risks the investment. (Compl. Ex. D at 4.) Plaintiff also cannot support his explicit representation claim with allegations that the PPMs

"indicated" that broker-dealers would be paid a due diligence fee (Compl. ¶ 240),[10] or that DBSI promised to pay broker-dealers a due diligence fee in the Soliciting Dealer Agreements. (Compl. Ex. C at 4.) Plaintiff offers no support for his claim that the receipt of due diligence fees is equivalent to a statement that "due diligence had been conducted." (*See* Opp. at 14.)

The case Plaintiff cites demonstrates that a much more concrete statement is necessary to support a 10b-5 claim. In *In re: Jeannernet*, defendants claimed in an offering memorandum that they would "research, select, and monitor the Managers" of any investments they recommended and only place the plaintiffs' money in investments that had "been thoroughly researched" by defendants. 769 F. Supp. 2d 340, 356 (S.D.N.Y. 2011). An indication by DBSI that it will pay a due diligence fee, comes nowhere close to this representation.

### 3. Plaintiff Has Not Pled Loss Causation

Plaintiff's arguments- made for the first time in his Opposition- that the PAT Beneficiaries "would not have purchased DBSI Securities in the absence of the representations and omissions" does not satisfy the loss causation pleading requirement. As noted in the Opening Brief, Plaintiff must plead and prove "that it was the very facts about which the defendant lied which caused its injuries." *Egervary v. Young*, 366 F. 3d 238, 246 (3d Cir. 2003). Plaintiff now claims that the PAT Beneficiaries would not have purchased the DBSI Securities in the absence of those misrepresentations and omissions concerning Defendants' alleged due

---

[10] Any statements in PPMs were undoubtedly made by DBSI. Plaintiff's only claim to the contrary is that broker-dealers must have authored the statement because it relates to their responsibility to conduct due diligence. (Opp. at 12.) In other words, a statement *about* a party is necessarily made by that party. Plaintiff's logic has no basis in the law and would actually decrease liability for secondary actors because, secondary actors would be free to make actual misrepresentations about an issuer without incurring liability. None of the cases he cites support this claim. They hold that a party can be liable for making a representation indirectly, *Anixter v. Home-Stake Prod. Co.*, 77 F. Supp. 2d 1215, 1220, fn. 4 (10th Cir. 1996) (auditor's statement quoted in prospectus and attributed to auditor) or creating a statement that is made by another. *In re Van Der Moolen*, 405 F. Supp.2d 388, 402 (S.D.N.Y. 2005); *In Re LaBranche Sec. Litig.*, 405 F. Supp. 2d 351-52 (S.D. N.Y. 2005). The last group of cases are no longer good law. *Janus*, 125 S. Ct. at 2302; *PIMCO v. Mayer Brown*, 603 F. 3d 144, 155 (2d Cir. 2010) (rejecting "creator" standard of liability for secondary actors).

diligence of the DBSI Securities.  (Opp. at 20).  Such was not pled in the Complaint and Plaintiff's reliance on *In re: Jeanneret* is misplaced.  In that case, plaintiffs alleged that they "were told that they were putting their money in the hands of experienced money managers, who would conduct appropriate due diligence before placing their fund with other managers..." 769 F. Supp. 2d at 364.  To the contrary here, there is no allegation that the PAT Beneficiaries were told that Defendants conduced any due diligence of the DBSI Securities.

### 4.    Plaintiff Has Not Pled Reliance.

Plaintiff did not, and likely could not, plead that each PAT Beneficiary relied on statements in Subscription Agreements or Soliciting Dealer Agreements.[11]  Soliciting Dealer Agreements are contracts between DBSI and broker-dealers; there is no allegation that any investor ever saw these agreements.  He fares no better by pointing to the Subscription Agreements.  The Complaint repeatedly and explicitly alleges that the alleged false and misleading statements were within the PPMs. (Compl. ¶¶ 232, 239, 282, 293, 326.)  The Court should reject this new claim, formed for the first time in his Opposition, that investors actually relied on fine print in a document they would have signed only after deciding to invest.  Finally, Plaintiff cannot meet his burden to plead that every investor relied on PPMs through his conclusory assertions that investors relied on the PPMs generally.  No presumption of reliance applies here.[12]  Plaintiff must plead that each investor was aware of the fraudulent statement and purchased DBSI based on that specific misrepresentation. *Eric P. John Fund, Inc. v. Halliburton*

---

[11] Plaintiff's claim that it is inappropriate to consider the reliance element in a motion to dismiss is baseless.  The Third Circuit has stated that it is "axiomatic" that a plaintiff must plead reliance to survive a motion to dismiss. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3rd Cir. 2000). See also *Walzer v. Muriel Siebert & Co.*, No. 10-4536, 2011 WL 4625704 (3d Cir. Oct. 6, 2011) (affirming dismissal for failure to plead reliance).

[12] The *Affiliated Ute* presumption of reliance that Plaintiff invokes only applies to claims of omissions-it does not apply to the affirmative written statements Plaintiff claims exist here. *Johnston v. HBO Film Mgm't, Inc.*, 265 F.3d

*Co.*, 131 S. Ct 2179, 2185 (2011)(discussing actual reliance and fraud-on-the-market presumption).

### 5.    Plaintiff Has Not Pled With Specificity Why The Statements Were False

Finally, the PSLRA and Rule 9(b) require Plaintiff to plead with specificity the reasons these statements were false.  (Opp. at 5-6.)  Plaintiff wholly abdicated this obligation.  The Complaint makes the blanket assertion that the "Broker Defendants" did not conduct independent due diligence (Compl. ¶ 369), an allegation that Plaintiff expands in his Opposition to argue "Defendants did not conduct independent due diligence of any kind."  (Opp. at 21.) This broad, unsupported assertion does not meet the burden of pleading facts to support that the statements about due diligence were false as to each of the Defendants.

### 6.    Plaintiff Failed to Plead Scienter

Plaintiff argues that he established scienter because he alleged that the defendants failed to conduct due diligence and failed to respond to red flags.  Courts routinely find that neither of these arguments are sufficient to show scienter.  Even if the Complaint alleged that Defendants stated that they would conduct due diligence of DBSI for which they received the due diligence fee and they failed to conduct the promised review, as a matter of law, such assertions fall short of stating a claim for securities fraud.[13]  Courts routinely find that a failure to investigate at best establishes negligence and does not meet the scienter requirement of 10b-5.  *In re J.P. Jeanneret*, 769 F. Supp. 2d at 377 (alleging that defendant "'would' or 'could' or even 'should'" have learned of fraud if it paid attention to red flags does not establish strong inference of scienter); *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 416 (S.D. N.Y. 2007) (allegations that

---

178, 193 (3d. Cir. 2001).  Courts allow a presumption in the case of omissions, because they recognize it would be difficult for a plaintiff to allege he relied on the lack of information. *Id.*
[13] The assertions in Plaintiff's Opposition contradict the Complaint.  The Complaint acknowledged that Defendants conducted due diligence when it asserts that they engaged in "inadequate" due diligence. *See* Compl. at ¶ 76.

defendant promised to conduct "a uniquely comprehensive brand of due diligence" but failed to do so and "failed to perform due diligence commensurate with industry standards" do not establish scienter.).

*South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) held that the allegation that defendants "represented that it had performed due diligence when in fact it had not done so ... does not give rise to a strong inference that the alleged failure to conduct due diligence was indicative of an intent to defraud." *Id.* at 113; see also *Ellington Mgmt. Group, LLC v. Ameriquest Mortgage Co.*, No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at \*3 (S.D. N.Y. Sept. 29, 2009) (dismissing claim based upon assertion that "'deficiencies are so apparent and so pervasive that they would have been discovered had the Mortgage Companies conducted even a minimal review prior to creating the securities.'"); *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 576 (S.D.N.Y. 2011) (dismissing claim "that PWC had access to information that would have revealed a variance in BMIS's reported assets or that PWC would have discovered such a variance if it had done what it promised.").

Fatally, the Complaint and Opposition contain no facts showing that Defendants "did not believe that the various [DBSI's] representations ... were accurate." *South Cherry Street*, 573 F. 3d at 112. Plaintiff argues that he has identified "numerous" red flags but the only purported red flag Plaintiff identifies is a modest  a rate of return of 8-11%. During a period of economic prosperity, a return of 11% would not trigger any second glances, much less qualify as actionable red flags.  "[B]etween 1996 and 2007, the S&P saw average annual returns of 10.72%" *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 222 (Bankr. S.D. N.Y. 2011).  The DBSI investments here were only available to accredited investors and unquestionably carried more risk than the S&P 500 and should have naturally been accompanied by higher returns.  Courts

inferring scienter from red flags that include allegedly outsized returns have only done so where an investment provided multiple instances of annual returns in excess of 50% and 100%. *Id.* Even in those cases, courts have not relied on a high rate of return alone to establish scienter. Courts have refused to find that returns as large as 46% were a red flag to support a finding of scienter. *SEC v. Cohmad Secs Co.*, 2010 WL 363844, at *5 (S.D. N.Y. Feb. 2, 2010).

Plaintiff's citations show that courts routinely reject the claim based upon much more concrete and definite red flags. *In Re Beacon Assocs. Litig.* rejected the claim that 12 different red flags should have alerted defendants that Bernie Madoff's hedge fund was a Ponzi scheme. 745 F. Supp. 2d 386, 401-402, 414 (S.D. N.Y. 2010). Those alleged red flags included: an inability to replicate Madoff's results using his claimed strategy; Madoff's claims to buy a security at its daily high and sell it at its daily low consistently; instances of Madoff's records reflecting a trade of a security at a price outside of the daily reported range; an insufficient volume of options traded on certain days to support Madoff's stated strategy; and Madoff's stated practice of liquidating all securities at the end of each reporting quarter and investing the proceeds in treasury bills thus preventing auditors from confirming that Madoff actually held the securities he claimed. *Id.* at 401-402. The court joined the numerous others that refused to infer scienter from allegations that a party should have learned of a fraud if it had investigated. Because Plaintiff has failed to allege any facts that establish a "compelling inference" of scienter, his Complaint should be dismissed.

C.    **Motion to Dismiss on Statute of Limitations Grounds is Not Premature**

Plaintiff's argument that judicially noticed facts cannot be the basis for a Motion to Dismiss on statute of limitations grounds is not persuasive and he has not even addressed the

11

statute of repose.[14]  (Opp. at p. 29)  Plaintiff cites *Tracinda Corp. v. Daimler Chrysler*, 197 F.

Supp. 2d 42, 57 (D. Del. 2002) to argue that inquiry notice is fact intensive, making it

inappropriate for resolution on a Motion to Dismiss.  (Opp. at p. 29).  *Tracinda* involved the

narrow factual finding that financial articles in the financial press were not within the four

corners of the complaints and, "they raise potential factual issues regarding notice and due

diligence which would preclude the Court from resolving the issue at this stage."  *Id.*

To the contrary, judicial notice of public records outside the pleadings is permitted on a

Motion to Dismiss.  *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006).  It is

appropriate to take judicial notice of public documents submitted in connection with a Motion to

Dismiss based on an objective standard.  *In Re: Merck & Company, Inc. Securities, Derivative

and ERISA Litigation*, 543 F. 3d 150, 153 fn.1 (3d Cir. 2008).  "Whether appellants read the

documents or were aware of them is immaterial.  They serve only to indicate what was in the

public realm at the time, not whether the contents of those documents were in fact true."  *Id.*

(internal citations omitted).[15]

Consistent with the Third Circuit's view on applying F.R.E. Rule 201(b), courts have

taken judicial notice of documents filed in other courts which are submitted in an appendix.  *In

Re: SB International v. PR Jindal*, 2007 U.S. Dist. LEXIS 3499, at *3-4, stated that "a court may

take judicial notice of a document filed in another court . . . to establish the fact of such litigation

and related filings, but cannot take notice of the factual findings of another court."  (ellipses in

---

[14] It is ironic that Plaintiff asks the Court to ignore publicly available information in news articles and reports, since Plaintiff based his claims on "news articles and reports concerning the DBSI entities." (Compl. at ¶ 1).

[15] F.R.E. Rule 201(b) permits a district court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either 1. generally known within the territorial jurisdiction of the trial court; or 2. capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In Re: NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1331 (3d Cir. 2002) (noting that the district court properly took judicial notice of: 1. documents relied upon in the complaint; 2. documents filed with the SEC, but not relied upon in the complaint; and 3. stock price data compiled by the Dow Jones news service)

original, internal citations omitted); *In Re: Synchronoss Securities Litigation*, 705 F. Supp. 2d 367 (D.N.J. 2010)(judicial notice may be taken with respect to opinions of analysts or reporters, for the fact that these opinions were published); *Milo v. Galante*, 2011 U.S. Dist. LEXIS 32092, at *10 (D. Conn.)(it is proper in considering a motion to dismiss to take judicial notice of public records, such as news coverage and court filings in assessing inquiry notice).   Thus, this Court may take judicial notice of public allegations, such as prior litigation and press coverage, that DBSI was a "Ponzi scheme" more than 2 years before the suit was filed.

**D.     The Court Should Dismiss the Remaining Claims for Lack of Jurisdiction**

Plaintiff argues that it would make "judicial and economic sense" for this Court to take jurisdiction of the state law claims after it dismisses his 10b-5 claim.  (Opp. at 23, n 5)  This contention has no merit. Plaintiff dragged numerous parties, many with no connection to Delaware, to this court by asserting a baseless securities fraud claim.  If his federal securities laws claims are dismissed, he should not be allowed pursue his state law claims in this Court.  It might make economic sense for Plaintiff to litigate in this District, but it needlessly wastes resources of Defendants and this Court to hold dozens of trials applying law of dozens of states.

**E.     Plaintiff Has Not Sufficiently Pled State Law Claims**

First, Plaintiff argues that he has sufficiently pled a claim for securities fraud.  (Opp. at 23.) As explained in the Opening Brief and above, Plaintiff failed to establish any of the elements of a securities fraud claim and his common law fraud claim should be dismissed. See *Tse v. Ventana Medical Systems, Inc.*, 123 F. Supp. 2d 213 (D. Del. 2000) (dismissing common law fraud claim where 10b-5 claim failed for lack of proof of scienter).

Second, Plaintiff's breach of fiduciary duty claim fails as well.  The mere existence of a relationship between the Defendants and PAT Beneficiaries is insufficient as a matter of law to

13

establish a fiduciary duty. *See* Opening Brief at 19. None of the cases cited in the Opposition compels a different finding. Quoting *Kirschner v. Bennett* (*In re Refco Sec. Litig.*), 759 F. Supp. 2d 301 (S.D.N.Y. 2010), Plaintiff ignores the court's holding that "where a broker does not have discretionary trading authority over an account, ***the broker's only duty is the proper execution of transactions*** upon explicit customer instructions." *Id.* (emphasis added). Here, there is no allegation that Defendants had discretionary trading authority over the unidentified accounts at issue. The only duty would be a duty of execution, on the facts alleged.

*Conway v. Icahn & Co.*, 16 F. 3d 504, 510 (2d Cir. 1994) is also unpersuasive. There, a broker executed trades in a customer's non-discretionary account without the customer's consent and approval. Here, in stark contrast, there is no allegation of such unauthorized trading. Further, as *Kirschner* notes, "*Conway* is one of the few instances in which the Second Circuit found that a broker ordinarily owes a fiduciary duty to the purchaser of securities." 759 F. Supp. 2d at 317 n.11.[16] Since *Conway*, the Second Circuit has affirmed that "[u]nder New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship." *The Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F. 3d 933, 941 (2d Cir. 1998) (affirming dismissal of fiduciary duty claim). Plaintiff failed to allege any facts demonstrating that any Defendants had authority to trade on PAT Beneficiaries' behalf or facts describing how any Defendants breached any purported fiduciary duty.

Third, the negligence claim fails because Plaintiff still has not included any particularized allegations about what each Defendant did or did not do to fulfill their purported duties. Even under the more liberal pleading standards of Rule 8(a), a plaintiff fails to state a cause of action

---

[16] The other cases cited by Plaintiff are similarly distinguishable. See *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010) (whether officers of a company owe fiduciary duties to that company); *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14-15 (App. Div. 1st Dep't 1998) (whether an investment bank engaged to negotiate on behalf of a client owed the client a fiduciary duty after receiving confidential information).

against multiple defendants when it "lump[s] them together . . . into an undifferentiated mass" and alleges that they all have engaged in wrongdoing. *In re Providian Fin. Corp. ERISA Litig.*, No. C-01-05027 CRB, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002).[17]

The contract claim also fails. Soliciting Dealers Agreements are agreements between DBSI and Defendants. The PAT Beneficiaries cannot be third-party beneficiaries. Under the law of nearly every state, a party is a third party beneficiary only where the contract explicitly provides for benefits to that party. (Opp. at p. 27) Such is not the case here.

Subscription Agreements also do not support the breach of contract claim. In those agreements, broker dealers represented to DBSI that they had a basis to believe investors met the suitability standard, but nowhere did they promise to take any action for the benefit of any investor. Finally, the claim that contracts between the investors are exclusively in Defendants' control is of no moment. Plaintiff claims to have received assignments from thousands of investors who can provide him with a copy of the contract. In any event, Plaintiff cites no law holding that a party can bring a suit for breach of contract without knowing the contract's terms or whether it was breached, when the contract is in sole possession of the other party.[18]

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order dismissing this action in its entirety with prejudice.

---

[17] If the basis for the negligence claim is a violation of FINRA regulatory rules, it is well-settled law that violations of regulatory rules do not give rise to any private cause of action for damages. See *Apert v. Morgan Stanley*, 2009 WL 3764120 (N.D. Ill 2009)(Court explicitly rejected the argument that the violation of a NASD Rule can serve as the basis for a common law claim for breach of contract claim).

[18] To the extent that Plaintiff's breach of contract claim is that Defendants violated FINRA Rules of Fair Practice in the handling of the investors' accounts, no private right of action exists for violation of industry or regulatory rules. *Apert v. Morgan Stanley*, 2009 WL 3764120 (N.D. Ill 2009).

15

Dated: January 23, 2012

Respectfully submitted,

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

Derek C. Anderson
Cliff G. Anderson
Michaels, Ward & Rabinovitz, LLP
1113 Spruce Street, Ste 302B
Boulder, CO 80302
Telephone: 303.482.1042
dca@michaelsward.com
cga@michaelsward.com

*Attorneys for American Portfolios*


**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

Ford Elsaesser
Cindy Elliott


**RICHARDS LAYTON & FINGER, PA**

/s/ Robert J. Stearn, Jr.
Robert J. Stearn, Jr. (No. 2915)
Julie A. Finocchiaro (No. 5303)
920 North King Street
Wilmington, DE 19801
Telephone: 302.651.7700
Facsimile: 302.651.7701
stearn@rlf.com
jfinocciaro@rlf.com

-and-

Terri L. Combs
Jeff J. Hicks
Faegre Baker Daniels LLP
801 Grand Ave, Suite 3100
Des Moines, Iowa 50309
515-447-4107
515-248-9010 fax
terri.combs@faegrebd.com
jeff.hicks@faegrebd.com

*Attorneys for Questar Capital Corp.*


**MARSHALL DENNEHEY WARNER, COLEMAN & GOGGIN**

/s/ Armand J. Della Porta, Jr.
Armand J. Della Porta, Jr. (No. 2861)
1220 North Market Street, 5th Fl.
Wilmington, DE 19801
Telephone: 302.552.4323
Facsimile: 302.651.7905
ajdellaporta@mdwcg.com

-and-

Denis C. Dice
Joel Wertman

16

Elsaesser Jarzabek Anderson
Elliott & Macdonald, Chtd.
PO Box 1049
102 South Euclid Avenue, Suite 307
Sandpoint, ID 83864
Telephone: 208.263.8517
Facsimile: 208.263.0759
ford@ejame.com
cindy@ejame.com

*Attorneys for Advisory Group Equity Service,*
*Ltd., Askar Corporation, Burch & Co., Inc.,*
*Capital Analysts Inc., Centaurus Financial Inc.,*
*Mid Atlantic Capital Group, Nations Financial*
*Group, Inc., Partnervest Securities, Inc.,*
*Partnervest Financial Group, LLC, and RP*
*Capital, LLC, Fintegra, LLC and TransAm*
*Securities, Inc.*

**WOMBLE CARLYLE SANDRIDGE &**
**RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

Matthew T. Boos
Patrick D.J. Mahlberg
Fredrikson & Byron, PA
200 South Sixth Street, Ste 400
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
Facsimile: 612.492.7077
mboos@fredlaw.com
pmahlberg@fredlaw.com

*Attorneys for Capital Management Securities,*
*Inc.*

Marshall, Dennehey, Warner, Colman &
Goggin
1845 Walnut Street
Philadelphia, PA 19103
Telephone: 215.575.2779
Facsimile: 215.575.2600
dcdice@mdwcg.com
jmwertman@mdwcg.com

*Attorneys for Brecek & Young Advisors*

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

George J. Marcus
Jennie L. Clegg
David C. Johnson
Andrew C. Helman
Marcus, Clegg & Mistretta, P.A.
One Canal Plaza, Suite 600
Portland, ME 04101
Telephone: 207.828.8000
Facsimile: 207.773.3210
gmarcus@mcm-law.com
djohnson@mcm-law.com
jclegg@mcm-law.com

17

-and-

Robert A. Buhlman
Sarah G. Kim
Corey D. Winer
Bingham McCutchen LLP
One Federal Street
Boston, MA 02127
Telephone: 617.951.8000
Facsimile: 617.951.8736
robert.buhlman@bingham.com
sarah.kim@bingham.com
corey.winer@bingham.com

*Attorneys for Equity Services Inc.*

**LAW OFFICE OF FRED BARAKAT**

/s/ Fred Barakat
Fred Barakat (No. 3069)
901 N. Market St., Suite 460
Wilmington, DE 19801
Telephone: 302.479.7771
Facsimile: 484.770.8209
Fredbarakat.attorney@verizon.net

-and-

Lee D. Lubin
Law Office of Lee David Lubin, Inc
16133 Ventura Boulevard, Suite 1174
Encino, CA 91436
818-728-0712
818-995-7335 (Fax)
Leelubin@gmail.com

*Attorneys for Investment Security Corp.*

**SAUL EWING LLP**

/s/ Lucian B. Murley
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone: 302.421.6898
Facsimile: 302.421.5864
lmurley@saul.com

-and-

Martin Jaszczuk
Alan M Wolper
Helen Din
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: 312.443.0222
Facsimile: 312.896.6222
mjaszczuk@lockelord.com
awolper@lockelord.com
hdin@lockelord.com

*Attorneys for Calton & Associates, JW Cole*
*Financial, Merrimac Corporate Securities, Inc.,*
*and Resource Horizons Group LLC*

18

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

Christian T. Kemnitz
Brian J. Poronsky
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: 312.902.5611
Facsimile: 312.577.4499
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for KMS Financial Services, Inc., LaSalle Street Securities, OMNI Brokerage, Inc., Regal Securities, Inc., and Sanders Morris Harris, Inc.*

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

Carla B. Minckley
Thomas D. Birge
Birge & Minckley, PC
9055 East Mineral Circle, Suite 110
Centennial, Colorado  80112-3457

**COOLEY MANION JONES LLP**

/s/ Amaryah K. Bocchino
Jason A. Cincilla (No. 4232)
Amaryah K. Bocchino (No. 4879)
Peter J. Faben (No. 5163)
1105 North Market St., Suite 200
Wilmington, DE 19801
Telephone: 302.657.2100
Facsimile: 302.657.2104
jcincilla@cmjlaw.com
abocchino@cmjlaw.com
pfaben@cmjlaw.com

-and-

Jessica Longobardi
Fred Knopf
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
Telephone: 914.323.7000
Facsimile: 914.323.7001
jessica.longobardi@wilsonelser.com

*Attorneys for National Securities Corp. and NEXT Financial Group*

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Mark L. Desgrosseilliers
Mark L. Desgrosseilliers (No. 4083)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com
mdesgrosseilliers@wcsr.com

-and-

Janine M. Lucas
Gary M. Saretsky
Saretsky Hart Michaels & Gould PC

Telephone: 303.860.7100
Facsimile: 303.860.7338
cminckley@birgeminckley.com
tbirge@birgeminckley.com

*Attorneys for Intervest International Equities
Corp.*

995 S. Eton
Birmingham, MI 48009
Telephone: 248.502.3300
Facsimile: 248.502.3301
jlucas@saretsky.com
gsaretsky@saretsky.com

*Attorneys for Sammon Securities Company
LLC and Sigma Financial Corp.*

**BIFFERATO GENTILOTTI LLC**

**MARSHALL DENNEHEY WARNER,
COLEMAN & GOGGIN**

/s/ Garvan F. McDaniel
Garvan F. McDaniel (No. 4167  )
900 North King Street, Plaza Level
Wilmington, DE 19801
Telephone: 302.429.1900
Facsimile: 302.429.8600
gmcdaniel@bgdelaw.com

-and-

Gregg Breitbart
Kaufman Dolowich Voluck & Gonzo LLP
2101 NW Corporate Blvd, Ste 218
Boca Raton, FL 33431
Telephone: 561.910.5650
Facsimile: 888-464-7982
gbreitbart@kdvglaw.com

*Attorneys for Dawson James Securities, Inc.*

/s/ Armand J. Della Porta, Jr.
Armand J. Della Porta, Jr. (No. 2861)
1220 North Market Street, 5th Fl.
Wilmington, DE 19801
Telephone: 302.552.4323
Facsimile: 302.651.7905
ajdellaporta@mdwcg.com

-and-

David A. Baugh
Erin M. Korrison
Baugh, Dalton, Carlson & Ryan, L.L.C.
55 West Monroe St., Suite 600
Chicago, IL 60603
(312) 759-1400
dbaugh@baughdaltonlaw.com
ekorrison@baughdaltonlaw.com

*Attorneys for Defendants Capital Financial
Services, Inc.
and Ogilvie Security Advisors Corp.*

**FRANKLIN & PROKOPIK**

/s/ Eric D. Boyle
Eric D. Boyle (#3577)
300 Delaware Ave., Ste. 1340
Wilmington, DE 19801
Telephone:  (410) 752-8700
Facsimile: (410) 752-6868
eboyle@fandpnet.com

-and-
Akerman Senterfitt, LLP

Kathy M. Klock
Jonathan B. Butler
222 Lakeview Ave., Ste. 400
W. Palm Beach, FL 33401
Telephone: (561) 671-3672
Facsimile (561) 659-6313
kathy.klock@akerman.com
jonathan.butler@akerman.com

*Attorneys for Money Concepts Capital Corp.*

**BIFFERATO LLC**

/s/ Tom Driscoll III
Tom Driscoll III (#4703)
Kevin G. Collins (#5149)
800 N. King Street, Plaza Level
P.O. Box 2165
Wilmington, DE 19899-2165
Tel:    (302) 225-7600
Fax:    (302) 792-7473

-and-

James N. Lawlor, Esq.
Fletcher W. Strong, Esq.
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Tel:    (212) 382-3300
Fax:    (212) 382-0050

*Attorneys for Defendant Axiom Capital*

**EXHIBIT A**

21

## Broker Defendants Joining The Motion

| Defendant's Name |
|---|
| Advisory Group Equity Service, Inc. |
| Askar Corp. |
| Burch & Co., Inc. |
| Capital Analysts, Inc. |
| Capital Management Securities, Inc. |
| Centarus Financial Inc. |
| Mid Atlantic Capital Group |
| Nations Financial Group, Inc. |
| Partnervest Securities, Inc. |
| Partnervest Financial Group, LLC |
| RP Capital, LLC |
| Sammons Securities Company, LLC |
| Sigma Financial Corp. |
| American Portfolios |
| Equity Services, Inc. |
| Intervest International Equities Corporation |
| Brecek & Young Advisors |
| Calton & Associates |
| JW Cole Financial |
| Merrimac Corporate Securities, Inc. |
| Resource Horizons Group LLC |
| Investment Security Corp. |
| KMS Financial Services, Inc. |
| LaSalle Street Securities |
| Omni Brokerage, Inc. |
| Regal Securities Inc. |
| Sanders Morris Harris, Inc. |
| National Securities Corp. |
| NEXT Financial Group |
| Questar Capital Corp. |
| Dawson James Securities, Inc. |
| Ogilvie Security Advisors Corp. |
| Capital Financial Services |
| Fintegra, LLC |
| TransAm Securities, Inc. |
| Axiom Capital |
| Money Concepts Capital Corp. |

### Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on January 23, 2011.


    /s/ Armand J. Della Porta, Jr. (#2861)

ARMAND DELLA PORTA, JR. ESQUIRE
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4300

01/7533467.v1

23