UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JAMES R. ZAZZALI, as Trustee for the DBSI Private Actions Trust, | ) ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) ) | Civil Action No. 1:11-cv-00475-GMS |
| ADVISORY EQUITY SERVICES LTD., et al., | ) ) ) ) | |
| Defendants[1] | ) ) ) | |

**REPLY BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF STANDING AND SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1) OF THE FEDERAL RULES OF <u>CIVIL PROCEDURE</u>**

**Dated: January 23, 2012**

---

[1] Due to the large number of Defendants joining in this Opening Brief, it was not feasible to list all of them and their counsel on this cover page as called for by D. Del. L.R. 7.1.3(a)(1).  The Moving Defendants direct the Court's attention to footnote 2, *infra,* for a list of all participating Defendants and to the signature blocks at the end of this Opening Brief for a list of all counsel.

## TABLE OF CONTENTS

Table of Authorities .................................................................................................... iii

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 3

A.    Under *Stern*, Bankruptcy Judges Only Have Constitutional Authority To Enter Final Orders When Adjudicating Public Rights As Set Forth In The Bankruptcy Code.  The Confirmation Order, With Respect To The Creation, Administration, And Funding Of The PAT, For The Purpose Of Prosecuting Non-Estate Claims, Adjudicates No Public Rights Set Forth In the Bankruptcy Code.  As Such, The Creation Of The PAT Represents An Unconstitutional Exercise Of Jurisdiction By The Bankruptcy Court And The PAT Trustee Lacks Standing ................................... 3

B.    There is No Easy Fix For The Constitutional Infirmity Concerning The Creation Of The PAT.  It Cannot Be Ignored, And This Court Does Not Have Authority To Adopt It As A Recommendation Of The Bankruptcy Court ......................................... 8

     1.    The Bankruptcy Court Lacks Statutory Authority to Enter Proposed Orders As To Core Matters Over Which It Lacks Constitutional Authority .............. 8

     2.    Even if the Court Were to Treat The Confirmation Order As a Recommended Order, Adoption or Rejection Cannot Be Considered Without Further Proceedings ........................................................................... 10

C.    The PAT Is A Judicially Created Entity Prosecuting Private Actions – Not A Creature Of Private Action.  The PAT Trustee Cannot, Therefore, Avoid The Effects Of *Stern* By Arguing That This Case Represents Nothing More Than Private Citizens Assigning Their Claims To A Private Trustee Acting On Their Behalf ...... 10

D.    Neither *Res Judicata*, Nor Collateral Estoppel Prevent The Moving Defendants From Raising The Constitutionality Of The Confirmation Order In This Action.  Moreover, Because Of The Magnitude Of The Constitutional Change In *Stern*, A Well-Recognized Exception To These Doctrines Would Apply Here .......................... 11

     1.    *Res Judicata* Is The Wrong Mode Of Analysis Because The Moving Defendants Are Not Seeking To Relitigate The Confirmation Order ........... 12

     2.    Collateral Estoppel Does Not Bar The Moving Defendants From Challenging The PAT Trustee's Standing Under *Stern* Because The Constitutionality Of The Confirmation Order Was Not "Actually Litigated" In DBSI's Bankruptcy ........................................................................................ 13

i

**3.      Even If Collateral Estoppel Applied Here, There Is A Well-Settled Exception For Changes In Law Of The Magnitude Of *Stern* ..........................................14**

**Conclusion** ............................................................................................................................**15**

# TABLE OF AUTHORITIES

## Cases

*Badami v. Sears Cattle Co. (In re AFY, Inc.)*, Adv. No. A10-4062-TLS, 2011 WL 3800041 (Bankr. D. Neb. Aug. 18, 2011)................................................................................................15

*Cerro Metal Prods. v. Marshall*, 620 F.2d 964 (3d Cir. 1980)........................................6

*Commc'ns Liquidating Trust v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573 (Bankr. D. Del. 2002) ....................................................................................................13

*Exec. Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.)*, 661 F.3d 476 (9th Cir. 2011) ..............................................................................................................2, 9

*Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265 (3d Cir. 2007)....................................6

*Gregory v. Chehi*, 843 F.2d 111 (3d Cir. 1988)..........................................................12, 13, 14

*Hollander v. Ranbaxy Laboratories Inc.*, 804 F. Supp. 2d 344 (E.D. Pa. 2011)................5

*Ifert v. Miller*, 138 B.R. 159 (E.D. Pa. 1992), *aff'd* 981 F.2d 1247 (3d Cir. 1992) ...........11

*In re Bayonne Med. Ctr.*, No. 07-15195 MS, 2011 WL 5900960 (Bankr. D.N.J. Nov. 1, 2011)....5

*In re Bearing Point, Inc.*, 2011 Bankr. LEXIS 2585 (Bankr. S.D.N.Y. July 11, 2011) ...............15

*In re D'Angelo*, BR 11-14926-MDC, 2012 WL 27541 (Bankr. E.D. Pa. Jan. 5, 2012) .................4

*In re Davis*, 05-15794-GWE, 2011 WL 5429095 (Bankr. W.D. Tenn. Oct. 5, 2011) ...................6

*In re DeMarco*, 454 B.R. 343 (Bankr. E.D. Pa. 2011) ................................................5

*In re Direct Response Media, Inc.*, 10-10058 KG, 2012 WL 112503 (Bankr. D. Del. Jan. 12, 2012) ..................................................................................................................4

*In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011)..................................4

*In re Keaty*, 397 F.3d 264 (5th Cir. 2005) ................................................................14

*In re McDonald*, 205 F.3d 606 (3d Cir. 2000)............................................................6

*In re Semcrude L.P.*, 2012 WL 8597 (3d Cir. Jan. 3, 2012) ..........................................12

*In re Taylor*, 655 F.3d 274 (3d Cir. 2011) ................................................................5

*In re United Artists Theatre Corp.*, 315 F.3d 217 (3d Cir. 2003)...................................................12

*Kurz v. EMAK Worldwide, Inc.*, No. CV-11-375-NLH, 2011 WL 4048966 (D. Del. Sept. 9, 2011) ..........................................................................................................................................5

*Michaelson v. Golden Gate Private Equity (In re Appleseed's Intermediate Holdings, LLC)*, No. BR 11-10160, 2011 WL 6293251 (D. Del. Dec. 15, 2011)...........................................................5

*O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062 (3d Cir. 1991)...................................................14

*Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, Nos. 10-3454 & 10-3466, 2011 WL 6880651 (7th Cir. Dec. 30, 2011)..............................................................................................2, 4, 7, 8, 9

*People Who Care v. Rockford Bd. of Ed.*, 68 F.3d 172 (7th Cir. 1995).......................................13

*Sitka Enter., Inc., v. Segarra-Miranda*, No. CV-10-01847-CCC, 2011 U.S. Dist. LEXIS 90243 (D.P.R. Aug. 10, 2011) .........................................................................................................4, 9

*Stern v. Marshall,* 131 S.Ct. 2594 (2011) ........................................................................... *passim*

## Statutes and Rules

D. Del. L.R. 7.1.3(a)(1)........................................................................................ cover page

Fed. R. Bank. P. 9033 .............................................................................................10

Fed. R. Civ. P. 12(b)(1)...................................................................................1, 2, 15

28 U.S.C. § 157(b) .............................................................................................1, 3, 8

28 U.S.C. § 157(c) ................................................................................................9, 10

35 U.S.C. § 292...........................................................................................................5

## Other Authorities

*Restatement (Second) of Judgments* § 28....................................................................14

# INTRODUCTION

The PAT Trustee's[2] Answering Brief in opposition to the Moving Defendants' Motion to Dismiss Complaint for Lack of Standing and Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Opposition") does not address the fundamental issue facing this Court:

> Whether, in light of *Stern v. Marshall*, 131 S.Ct. 2594 (June 23, 2011), the Bankruptcy Court had constitutional authority to enter a final order creating the PAT and thereby imposing and subsidizing a claims-litigation and administration process over the private rights/claims of non-debtor entities against third parties who are neither creditors nor debtors in the DBSI bankruptcy estate?

The answer is no. Because the PAT is a judicially created entity whose sole purpose is to prosecute private rights/claims that are not owned by the DBSI bankruptcy estates, the Bankruptcy Court lacked authority to enter a final order creating the PAT, subsidizing it with money from the DBSI bankruptcy estate, and vesting it with authority to prosecute claims that were not property of the bankruptcy estate. By arguing that the Bankruptcy Court's order establishing the PAT is "*res judicata*" as to the matter at hand, the Trustee, while incorrect in his application of the *res judicata* doctrine, nevertheless acknowledges that the PAT exists by virtue of a Bankruptcy Court order, thereby requiring this Court to assess that Order's constitutionality.

The PAT Trustee attempts to avoid that assessment with a faulty argument. He argues that a Bankruptcy Court order cloaked in the authority of *any* portion of section 157(b)(2) of Title 28 of the United States Code is constitutional under *Stern* as long as no state law counterclaims of a debtor against a creditor are involved. This view misapprehends the meaning and significance of *Stern*, and reduces its constitutional inquiry to one of mere labeling. It also runs contrary to emerging case law from several Article III courts, including from the Seventh

---

[2] Capitalized terms not defined herein shall have the same meaning as set forth in the Defendants' Opening Brief [D.I. 154].

Circuit Court of Appeals as well as Article III courts in the Third Circuit, recognizing that issues larger than those acknowledged by the PAT Trustee are at play.[3]  The PAT Trustee cannot skirt *Stern* by asking this Court to treat the Confirmation Order as a "report and recommendation." As the Seventh Circuit recognized, the Bankruptcy Court lacks statutory authority to make recommended findings of fact or conclusions of law for so-called "core" matters that the Bankruptcy Court cannot constitutionally adjudicate.  *See Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, Nos. 10-3454 & 10-3466, 2011 WL 6880651, at *7 (7th Cir. Dec. 30, 2011).

The PAT Trustee also argues that the Confirmation Order has *res judicata* effect on the Moving Defendants in this action.  Under this theory, the Moving Defendants are bound by the Confirmation Order and cannot re-litigate the constitutionality of the PAT in the context of this 12(b)(1) Motion.  Again, the PAT Trustee errs.  First, he fails to distinguish between "claim preclusion" and "issue preclusion," and erroneously makes his case based on "claim preclusion." This case does not involve "claim preclusion" because there is no attempt by the Moving Defendants to relitigate plan confirmation.  Rather, this case involves "issue preclusion" – that is, whether the Moving Defendants are precluded from addressing the constitutionality of the PAT as a question of standing *in this case*, not in the bankruptcy case.  In order for "issue preclusion" to apply, the issue at hand must have been "actually litigated" in the prior action.  This did not occur.  Second, even if issue preclusion were applicable, there is an important and well-recognized exception to the doctrine for newly developed law.  In this case, *Stern* is a material and new development of the law that fits squarely within the exception to issue preclusion.

In summary, because *Stern* reveals that the Bankruptcy Court lacked constitutional authority to create the PAT and vest in it the money and authority to prosecute non-estate claims,

---

[3] Notably, the Ninth Circuit Court of Appeals has recently requested briefing by *amici* concerning the scope of *Stern*.  *See Exec. Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.)*, 661 F.3d 476 (9th Cir. 2011).

the PAT Trustee lacks standing in this case.  The doctrine of *res judicata,* properly viewed under the "issue preclusion" lens, does not bar the Moving Defendants from presenting their arguments in a motion to dismiss this case.  Therefore, the Complaint in this action must be dismissed.

## ARGUMENT

A.      **Under *Stern*, Bankruptcy Judges Only Have Constitutional Authority To Enter Final Orders When Adjudicating Public Rights As Set Forth In The Bankruptcy Code.  The Confirmation Order, With Respect To The Creation, Administration, And Funding Of The PAT, For Purpose Of Prosecuting Non-Estate Claims, Adjudicates No Public Rights Set Forth In the Bankruptcy Code.  As Such, The Creation Of The PAT Represents An Unconstitutional Exercise Of Jurisdiction By The Bankruptcy Court And The PAT Trustee Lacks Standing.**

As set forth more fully in the Moving Defendants' Opening Brief, the Supreme Court in *Stern* undertook a constitutional review of the statutory jurisdiction granted to bankruptcy courts to adjudicate "core" proceedings under 28 U.S.C. §157(b).  In *Stern*, the Court held that although Title 28 granted statutory authority to bankruptcy judges to adjudicate "core" proceedings, this grant of authority was unconstitutional insofar as any such adjudication went beyond adjudication of "public rights" established by the Bankruptcy Code.[4]  *See* Opening Brief, pp. 12-16 for a more complete discussion.

Although the PAT Trustee suggests that the implications of *Stern* should be deemed "narrow" as opposed to "broad," the real issue for this Court is not finding the right label, but rather how to apply the teachings of *Stern* to this case.   The Seventh Circuit, the first Court of Appeals to rule on the reach of *Stern*, highlighted the importance of the constitutional issues

---

[4] The PAT Trustee misunderstands the Moving Defendants' position and artificially sets up a straw man argument to be knocked down, as revealed by his assertion that the Moving Defendants "may hope to invoke the rule that subject matter jurisdiction can be raised at any time in a proceeding."  Opposition, p. 19.  *Stern* was clear on this point – the infirmities of Bankruptcy Court jurisdiction under section 157 are not concerns of subject matter jurisdiction; they are concerns of constitutional authority.   In accordance with *Stern*, the Moving Defendants challenge the constitutional authority of the Bankruptcy Judge to establish the PAT, not its subject matter jurisdiction. Because the Bankruptcy Court lacked constitutional authority to establish the PAT, the PAT lacks standing to pursue the assigned claims asserted in the Complaint, and accordingly *this Court* lacks subject matter jurisdiction.

raised therein:

> Although the Court noted that the question presented was "narrow," it was quite significant as Congress "may no more lawfully chip away at the authority of the Judicial Branch than it may eliminate it entirely." [*Stern*,] 131 S.Ct. at 2620. The Court held that Article III prohibited Congress from giving bankruptcy courts authority to adjudicate claims that went beyond the claims allowance process. *Id.* at 2618. The decision rebuffed an intrusion into the Judicial Branch that would "compromise the integrity of the system of separated powers and the role of the Judiciary in that system, even with respect to challenges that may seem innocuous at first blush." *Id.* at 2620.

*In re Ortiz*, 2011 WL 6880651, at *3. As the Seventh Circuit observed in *Ortiz,* the impact of *Stern* is that "Non-Article III judges may hear cases when the claim arises 'as part of the process of allowance and disallowance of claims,' or when the claim becomes 'integral to the restructuring of the debtor-creditor relationship[.]" *Id.* at *6.

Other Article III courts have agreed on the reach of *Stern* and the impact of that decision. *See, e.g., Sitka Enter., Inc. et al., v. Segarra-Miranda*, No. CV-10-01847-CCC, 2011 U.S. Dist. LEXIS 90243 (D.P.R. Aug. 10, 2011) (concluding that Bankruptcy Court did not have authority to adjudicate fraudulent conveyance action under the Bankruptcy Code; case transferred to District Court after remand); *In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 687-89 (S.D.N.Y. 2011) (concluding in chapter 15 case that Bankruptcy Court lacked constitutional authority to enter final orders in state law avoidance actions brought by defrauded investors because no public rights were at issue). While some Bankruptcy Courts in the Third Circuit are characterizing *Stern* as a "narrow" holding limited to state law counterclaims, others are more appropriately viewing *Stern* as articulating a broader constitutional mandate.[5] Furthermore, as of

---

[5] For a narrow reading of *Stern*, *see, e.g., In re Direct Response Media, Inc.,* 10-10058 KG, 2012 WL 112503 (Bankr. D. Del. Jan. 12, 2012). Other Bankruptcy Courts in this Circuit have viewed the matter differently. For example, the Bankruptcy Court for the Eastern District of Pennsylvania concluded that it likely would not have constitutional authority to hear a securities fraud case by a debtor against a creditor who had already been granted relief from stay to pursue state law remedies. *In re D'Angelo*, BR 11-14926-MDC, 2012 WL 27541, at *2 n.2 (Bankr. E.D. Pa. Jan. 5, 2012). In another case, the Bankruptcy Court for the District of New Jersey recognized that:

this writing, Article III Courts in the Third Circuit have uniformly taken the broader view.  In fact, the only two Article III courts in the Third Circuit to give *Stern* more attention than a footnote[6] have (1) withdrawn the reference to the Bankruptcy Court in an adversary proceeding involving fraudulent transfer and breach of fiduciary duties claims, *Michaelson v. Golden Gate Private Equity (In re Appleseed's Intermediate Holdings, LLC)*, No. BR 11-10160, 2011 WL 6293251 (D. Del. Dec. 15, 2011), and (2) used *Stern* as a basis to articulate fundamental principles related to separation of powers in a non-bankruptcy proceeding adjudicating the constitutionality of the False Marking Statute, 35 U.S.C. § 292, *Hollander v. Ranbaxy Laboratories Inc.*, 804 F. Supp. 2d 344 (E.D. Pa. 2011).

As an alternative way of arguing for a "narrow" interpretation of *Stern,* the PAT Trustee suggests that whatever *Stern* might have to say about anything other than state law counterclaims is merely *dicta* and safely ignored, making the Moving Defendants' arguments "a vast *non sequitur.*"  Opposition, p. 7.  Confining the import of *Stern* to its actual holding, and ignoring the reasoning and principles set forth by the Supreme Court on the important constitutional matters discussed in the case, is perilously restrictive and contrary to sound jurisprudence in this Circuit

---

> *Stern v. Marshall* could implicate more than just state law based counterclaims as statutory core matters which are nonetheless beyond the adjudicatory authority of this court (absent consent).  A pall may have been cast upon bankruptcy court adjudication of the wide range of frequently litigated "proceedings to determine, avoid, and recover fraudulent conveyances" in bankruptcy. *See* 131 U.S. at 2614 (including n.7 and text associated with it).  Such proceedings are "core" by statute. 28 U.S.C. § 157(b)(2)(H).  The same pall may extend to avoidance of preferences, likewise deemed core by statute. 28 U.S.C. § 157(b)(2)(F).

*In re Bayonne Med. Ctr.*, No. 07-15195 MS, 2011 WL 5900960, at *7 (Bankr. D.N.J. Nov. 1, 2011).  *See also In re DeMarco*, 454 B.R. 343, 348 n.2 (Bankr. E.D. Pa. 2011) (suggesting that plaintiff-creditor's claims against non-debtor entities would not be within Bankruptcy Court's jurisdiction based on *Stern*, even if joined with nondischargeability proceeding against chapter 7 debtor in no-asset case).

[6] The only other Article III court in the Third Circuit to give substantive treatment to *Stern* – beyond merely citing the case for a standard of review, as in *In re Taylor*, 655 F.3d 274, 282-83 (3d Cir. 2011) – addressed *Stern* in a footnote, concluding that it did not impact the court's analysis of whether remand was necessary for a pre-bankruptcy state law action commenced by a plaintiff who later filed a proof of claim in the defendant's bankruptcy. *Kurz v. EMAK Worldwide, Inc.*, No. CV-11-375-NLH, 2011 WL 4048966, at *7 n.6 (D. Del. Sept. 9, 2011).

and elsewhere.  As the Third Circuit Court of Appeals has observed:

> The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket.  "Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there."

*In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000) (*quoting U.S. v. Bloom,* 149 F.3d 649, 653 (7th Cir. 1998)). *See also Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 978-79 (3d Cir. 1980) (following *dicta* discussing the proper interpretation of a statute because it is "sound judicial policy"); *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) ("Even if what we read as the holdings of *Elrod* and *Branti* could be characterized as *dicta* and therefore not binding on us, such *dicta* are highly persuasive.") (internal quotations omitted).

Although the PAT Trustee cavalierly asks this Court to ignore all but the express holding of *Stern*, the principles of law enunciated by the Supreme Court are to be heeded, not ignored, even if "dicta."  When the rationale of *Stern* is considered, the implications for this case are clear.  As one bankruptcy judge has well summarized:

> Although the [Supreme] Court indicated that its decision was a "narrow" one encompassing one "isolated instance," this court must determine the reasons for the Court's decision in order to decide whether the cause of action in *Stern* may meaningfully be distinguished from the causes of action in this adversary proceeding. [. . .]
>
> The impact of *Stern* is that neither the bankruptcy court nor the parties may simply rely upon the list of core proceedings provided by Congress to determine whether a bankruptcy judge may *finally* determine a particular proceeding. Instead, the bankruptcy court must determine whether the proceeding is a matter of public or private right. Matters of private right may not be finally decided by a bankruptcy judge without the consent of the parties.

*In re Davis*, 05-15794-GWE, 2011 WL 5429095, at *3 & *15 (Bankr. W.D. Tenn. Oct. 5, 2011) (Bankruptcy Court lacked authority to enter final order in a fraudulent transfer action).

6

Ultimately, the issue now before the Court is whether there is any plausible basis for the Bankruptcy Court's Order – which established the PAT and authorized it to prosecute claims that are not property of the bankruptcy estate, and to do so with a cash subsidy from the estate, for the benefit of entities that are neither creditors of nor debtors in the bankruptcy estate – to be viewed as the adjudication or implementation of a "public right" established under the Bankruptcy Code. To state this question is to answer it. While the ultimate boundaries of the public/private rights distinction may not be fully defined, this case is not a close call. There is *nothing* in the Bankruptcy Code that remotely resembles authority for the Bankruptcy Court, an Article I court, to venture out and set up a litigation enterprise like the PAT.[7]

About all that the PAT Trustee has to say about public rights is that the PAT came about as part of a plan, the "*sine qua non*" of bankruptcy. This is no answer, as *Stern* makes clear that the mere relationship of a proceeding to a bankruptcy case does not confer constitutional authority. If it did, there would be no limit on the Bankruptcy Court's authority. Because the PAT was not lawfully formed by the Bankruptcy Court, the PAT Trustee has no lawful authority or standing to prosecute this case.

---

[7] Not a single section of the Bankruptcy Code can be cited as authority for the creation and subsidization of the PAT. To put the matter in the precise rubric of *Stern*,

- The Non-Estate Causes of Action acquired and to be prosecuted by the PAT (with the subsidy of Estate funds) do not arise as part of the allowance of claims.

- The PAT is not essential to the liquidation of DBSI under its Plan. It could be fully liquidated even if the PAT were eliminated. Creditors might get less—or they might get more, by saving the $1 million subsidy of a speculative venture. The point is that there is nothing in the Bankruptcy Code which suggests authority of the Bankruptcy Court to put in place speculative business ventures that are entirely unrelated to estate property (other than the subsidy) for the purpose of making money for creditors. Because the only effect of the PAT claims might be "to augment the bankruptcy estate" they are "the very type of claim that . . . must be decided by an Article III court.'" *In re Ortiz*, 2011 WL 6880651, at *6 (*quoting Stern*, 131 S.Ct. at 2616).

**B.    There is No Easy Fix For The Constitutional Infirmity Concerning The Creation Of The PAT.  It Cannot Be Ignored, And This Court Does Not Have Authority To Adopt It As A Recommendation Of The Bankruptcy Court.**

Despite the PAT Trustee's pleas to the contrary, this Court can neither ignore the constitutional infirmities in the creation of the PAT nor utilize the suggested expedient of taking an unconstitutional order creating the PAT, calling it a proposed order, and adopting it.

1.    The Bankruptcy Court Lacks Statutory Authority To Enter Proposed Orders As To Core Matters Over Which It Lacks Constitutional Authority.

Generally, under 28 U.S.C. § 157(b)(2), "bankruptcy courts may hear and enter final judgments in 'core proceedings' in a bankruptcy case.  In non-core proceedings, the Bankruptcy Court instead makes proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of a final judgment." *Stern*, 131 S.Ct. at 2601-02.  Confirmation orders are perhaps the archetypal "core proceeding," at least as defined by statute.  28 U.S.C. § 157(b)(2)(L).

However, as several Article III courts have recognized, when a bankruptcy court is disabled from adjudicating a core proceeding for constitutional reasons, there is nothing in the Bankruptcy Code providing "back up" authority for the Bankruptcy Court to make recommended findings of fact and conclusions of law.  Where a core matter cannot constitutionally be adjudicated by the bankruptcy court, there is no statutory authority for it to employ some other device, no matter how expedient.  The bankruptcy court's authority to act is prescribed by statute.  If the authorization is unconstitutional, and no other statute applies, the bankruptcy court cannot act.

The Seventh Circuit addressed this issue in *Ortiz*, where it rejected the proposition that bankruptcy courts could make proposed findings or conclusions in core matters as to which they lacked constitutional authority to adjudicate.  The Court stated:

> For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were "not a core proceeding" but are "otherwise related to a case under title 11." *Id.* As we just concluded, the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1).

*In re Ortiz*, 2011 WL 6880651, at *7. Similarly, the District Court for the District of Puerto Rico recognized the same limitation on the authority of the Bankruptcy Court to act in a core matter, where it lacked constitutional authority:

> [T]he [Supreme] Court stated outright that "Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court." [*citing Stern*]. Given this definitive finding by the Court in *Stern*, the resolution of the fraudulent conveyance action brought by the trustee in this case cannot be adjudicated by the Bankruptcy Court since it lacks constitutional authority to do so under the restrictions placed by Article III. Accordingly, pursuant to . . . *Stern*, the Court . . . GRANTS the appeal of the order denying the motion to dismiss for lack of jurisdiction since the fraudulent conveyance action brought by the trustee cannot be adjudicated by the Bankruptcy Court, a non-Article III court, for lack of constitutional authority to do so. Such action, in compliance with Article III, must be adjudicated by the U.S. District Court.

*Sitka Enter., Inc.*, 2011 U.S. Dist. LEXIS 90243, at *7–8.

It is also noteworthy that the Ninth Circuit Court of Appeals has questioned the authority of bankruptcy courts to make recommended findings and conclusions in core matters that it may not constitutionally adjudicate and recently requested *amicus* briefs on the following subject:

> Does *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), prohibit bankruptcy courts from entering a final, binding judgment on an action to avoid a fraudulent conveyance? If so, may the bankruptcy court hear the proceeding and submit a report and recommendation to a federal district court in lieu of entering a final judgment?

*In re Bellingham Ins. Agency, Inc.*, 661 F.3d at 476.

In short, contrary to the PAT Trustee's invitation, this Court may not improvise a "fix" where the Bankruptcy Court lacks constitutional authority to exercise the jurisdiction it has been given by statute. This might be an expedient thing to do, but as several Article III courts have recognized, it is up to Congress to provide proper and constitutional authorization to the

Bankruptcy Court. Accordingly, the Confirmation Order, insofar as it purported to establish the PAT, is ineffective and must be disregarded.

> 2. **Even If The Court Were To Treat The Confirmation Order As A Recommended Order, Adoption Or Rejection Cannot Be Considered Without Further Proceedings.**

Even if this Court proposed to treat the provisions of the Confirmation Order pertaining to the PAT as a report and recommendation under section 157(c) – which the Moving Defendants maintain is not permitted – this Court would need to conduct a hearing on adoption or rejection of such provisions, with the appropriate form of notice and an opportunity to be heard. More specifically, Federal Rule of Bankruptcy Procedure 9033 requires the clerk to serve all parties with copies of proposed findings of fact and conclusions of law, which, in turn, triggers an objection period to the proposed findings of fact and conclusions of law. Because there has been no compliance with Bankruptcy Rule 9033, this Court is not free to simply treat the PAT provisions of the Confirmation Order as "recommendations" and then adopt them. Accordingly, this argument is without merit both for procedural and jurisdictional reasons.

> **C.     The PAT Is A Judicially Created Entity Prosecuting Private Actions – Not A Creature Of Private Action. The PAT Trustee Cannot, Therefore, Avoid The Effects Of *Stern* By Arguing That This Case Represents Nothing More Than Private Citizens Assigning Their Claims To A Private Trustee Acting On Their Behalf.**

In another effort to dismiss the significance of *Stern* to this case, the PAT Trustee asserts that this case represents no more than the happenstance that private claimants got together, assigned their claims to a private Trustee, and authorized him to pursue them. As such, the PAT Trustee argues, there is nothing that warrants any constitutional scrutiny under *Stern* or any other case. Of course, the PAT represents far more than the serendipitous assembly of private claims and their assignment to a trustee for prosecution. Specifically,

- The PAT is a judicially created entity – and the PAT Trustee acknowledges as much, particularly when he argues that *res judicata* is a relevant consideration.

- The claimants received an "invitation" from the Bankruptcy Court to join the PAT, and thereby received the Bankruptcy Court's imprimatur.

- The Bankruptcy Court provided the seed money to the PAT, from bankruptcy estate funds, for prosecution of the assigned claims.

- In opposing a companion motion to dismiss for failure to state a claim, the PAT Trustee argues that he is entitled to certain benefits accorded *bankruptcy trustees bringing estate claims*, *i.e.*, a lower threshold for pleading fraud.

These facts highlight the extent to which the PAT is a creature of the Confirmation Order and now seeks to exercise powers purportedly granted under that Order, not simply a private collection of individual claimants getting together to prosecute claims.

The fact that the PAT was created by an order of the Bankruptcy Court is, of course, significant for the PAT Trustee's standing to prosecute this case, for all of the reasons discussed above.  Simply put, an assignment of claims to an entity unlawfully established cannot vest that entity with standing to prosecute the claims.  *Ifert v. Miller*, 138 B.R. 159, 166 (E.D. Pa. 1992) (applying Texas law) *aff'd* 981 F.2d 1247 (3d Cir. 1992) ("the law permits the obligor to raise as a defense against the assignee the fact that the assignment contract between the assignor and the assignee was void").

Thus, the claim that the PAT holds causes of action that purport to be validly assigned by private extra-judicial action of the assignors is neither accurate nor dispositive of the underlying question of whether the PAT itself was constitutionally established.  Because the PAT is not validly formed and has no constitutional authority to prosecute this case, dismissal is required.

> **D.    Neither *Res Judicata* Nor Collateral Estoppel Prevent The Moving Defendants From Raising The Constitutionality Of The Confirmation Order In This Action.  Moreover, Because Of The Magnitude Of The Constitutional Change In *Stern*, A Well-Recognized Exception To These Doctrines Would Apply Here.**

11

Finally, the PAT Trustee argues that regardless of the merits of the objections, the matter has already been decided, and any challenge to the Confirmation Order establishing and funding the PAT is barred by the doctrines of *res judicata*, collateral estoppel, and equitable mootness.[8] These arguments are misplaced and without merit for the following reasons.

> 1.   *Res Judicata* Is The Wrong Mode Of Analysis Because The Moving Defendants Are Not Seeking To Relitigate The Confirmation Order.

Of course, the PAT Trustee is correct in noting that as a general matter, principles of *res judicata* (*i.e.*, claim preclusion) apply to bankruptcy court orders, but *res judicata* is not the correct mode of analysis here because the Moving Defendants are not seeking to relitigate confirmation of the DBSI Plan.[9]   Indeed, the Moving Defendants have not sought any relief with respect of confirmation of the DBSI Plan.   Instead, the Moving Defendants challenge only the PAT Trustee's standing to prosecute *this* case.   This challenge raises a single issue, *i.e.* whether the plaintiff in this action has proper authority to prosecute the causes of action included in the

---

[8] The PAT Trustee's reliance on equitable mootness is misplaced.  The PAT can return its war chest for distribution to DBSI's creditors, and the assignors of the PAT's claims can bring these actions on their own behalf.  Moreover, it would be inequitable to prevent the Moving Defendants from challenging the PAT Trustee's standing where (a) the Debtors chose not to serve their proposed Plan on all of the defendants, and thus this litigation presents the defendants' first real opportunity to challenge the PAT Trustee's standing and (b) Moving Defendants challenge only a specific provision of the Plan and a successful challenge to the PAT Trustee's standing would not upset the Plan itself.  *See, e.g.*, *In re United Artists Theatre Corp.*, 315 F.3d 217, 228 (3d Cir. 2003) (rejecting equitable mootness argument where requested remedy would "not undermine the Plan's foundation" but rather sought to invalidate specific provision).  *See also In re Semcrude L.P.*, 2012 WL 8597, at *1 (3d Cir. Jan. 3, 2012) ("We have emphasized that th[e] doctrine of equitable mootness should be 'limited in scope and cautiously applied.'") (citation omitted).

[9] The PAT Trustee makes no meaningful effort to distinguish between *res judicata* and collateral estoppel.  The Third Circuit has clarified these concepts:

> The Supreme Court and the Second Restatement of Judgments use the terms "claim preclusion" and "issue preclusion."  Claim preclusion replaces "res judicata" and encompasses both merger and bar principles in giving dispositive effect in a later action to a prior judgment. Issue preclusion now substitutes for "collateral estoppel."  This preclusive device is somewhat more limited than claim preclusion because it bars relitigation only of an issue identical to that adjudicated in the prior action.

*Gregory v. Chehi*, 843 F.2d 111, 115-16 (3d Cir. 1988) (internal citations omitted).

case.  It is the preclusive effect of the Confirmation Order, if any, on this single issue of standing that is the proper focus of any *res judicata* inquiry.

To the extent that the PAT Trustee refers to "*res judicata*" as "claim preclusion," it applies only when there is "(1) a final judgment on the merits, rendered by a court of competent jurisdiction, in a prior action involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action."  *Commc'ns Liquidating Trust v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573, 586 (Bankr. D. Del. 2002) (internal citation omitted).

However, the Motion to Dismiss has nothing to do with confirmation of the DBSI Plan. It does not involve the same parties who were parties to the confirmation proceedings (which would consist of all creditors of the DBSI estate), and it arises in the context of an entirely separate legal proceeding from the confirmation hearing.  *See In re USN Commc'ns, Inc.*, 280 B.R. at 586 (noting that confirmation order is different cause of action from subsequent avoidance action).  In short, the principles of "*res judicata*" as claim preclusion are inapplicable on their face in this case.

> 2.   Collateral Estoppel Does Not Bar The Moving Defendants From Challenging The PAT Trustee's Standing Under *Stern* Because The Constitutionality Of The Confirmation Order Was Not "Actually Litigated" In DBSI's Bankruptcy.

The PAT Trustee's reliance on collateral estoppel is equally unavailing.  Collateral estoppel is the functional equivalent of "issue preclusion."  *Gregory*, 843 F.2d at 115-16 (internal citations omitted).

> For collateral estoppel to apply, 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been *actually litigated*, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*People Who Care v. Rockford Bd. of Ed.*, 68 F.3d 172, 178 (7th Cir. 1995) (emphasis added).

"The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005).

However, the precise issue the Moving Defendants raise here was not "actually litigated" before the Bankruptcy Court. Therefore, "[t]he first judgment does not prevent reexamination of issues that might have been, but were not, litigated in the earlier action." *Gregory*, 843 F.2d at 116. The PAT Trustee has not identified any objection in response to DBSI's Second Amended Chapter 11 Plan that challenged the Bankruptcy Court's constitutional authority to enter a final order creating the PAT. Indeed, the DBSI docket reveals that no such objection was made. [*See* D.I. 5906, *In re DBSI, Inc.*, No. 08-12687, Chapter 11 Trustee's Memorandum Of Law (A) In Support Of Confirmation Of The Second Amended Joint Chapter 11 Plan Of Liquidation And (b) In Response To Objections Thereto, pp. 133-37 (summarizing of objections to DBSI's chapter 11 plan)].

> 3. Even If Collateral Estoppel Applied Here, There Is A Well-Settled Exception For Changes In Law Of The Magnitude Of *Stern*.

Even if some of the principles discussed above were applicable to the Moving Defendants, there is an important, well-settled exception to principles of preclusion that the PAT Trustee overlooks. That exception is described in the *Restatement (Second) of Judgments* § 28:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: [...] (2) The issue is one of law and . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws[.]

The Third Circuit has validated the importance of this exception and observed that it ought to apply when there are changes in decisional law of a constitutional nature. *O'Leary v. Liberty*

14

*Mut. Ins. Co.*, 923 F.2d 1062, 1070 (3d Cir. 1991).

In this case, it is clear that material and significant intervening developments of constitutional law warrant application of the exception. *Stern* was decided on June 23, 2011, after entry of the Confirmation Order. A decision of the Supreme Court on significant constitutional matters is the paradigm case for the application of this exception. Several courts have acknowledged that principles of "*res judicata*" must yield in the face of changes in decisional law of the magnitude of *Stern*. *E.g.*, *Badami v. Sears Cattle Co. (In re AFY, Inc.)*, No. A10-4062-TLS, 2011 WL 3800041, at *2 (Bankr. D. Neb. Aug. 18, 2011) (in light of *Stern*, granting Rule 60(b) relief against trustee who had been successful in turnover action and recommending that district court withdraw reference); *In re Bearingpoint, Inc.*, 453 B.R. 486, 488 (Bankr. S.D.N.Y. 2011) (granting Rule 60(b) relief as to portions of confirmed chapter 11 plan requiring litigation of debtor's claims against its former officers and directors in bankruptcy court).

Accordingly, the PAT Trustee's argument that principles of *res judicata* and collateral estoppel bar the Moving Defendants from raising the important issue of the PAT Trustee's standing is without merit.

## CONCLUSION

By what constitutional authority does a bankruptcy court create, fund, and oversee a special purpose litigation trust whose mission is to litigate non-bankruptcy claims for hire? *Stern* makes clear that the Bankruptcy Court had no such authority. Accordingly, for the foregoing reasons, the Moving Defendants respectfully request that this Court enter an order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the plaintiff lacks standing.

Dated: January 23, 2012

Respectfully submitted,

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

Derek C. Anderson
Cliff G. Anderson
Michaels, Ward & Rabinovitz, LLP
1113 Spruce Street, Ste 302B
Boulder, CO 80302
Telephone: 303.482.1042
dca@michaelsward.com
cga@michaelsward.com

*Attorneys American Portfolios*

**RICHARDS LAYTON & FINGER, PA**

/s/ Robert J. Stearn, Jr.
Robert J. Stearn, Jr. (No. 2915)
Julie A. Finocchiaro (No. 5303)
920 North King Street
Wilmington, DE 19801
Telephone: 302.651.7700
Facsimile: 302.651.7701
stearn@rlf.com
jfinocciaro@rlf.com

-and-

Terri L. Combs
Jeff J. Hicks
Faegre Baker Daniels
801 Grand Ave, Suite 3100
Des Moines, Iowa 50309
515-447-4107
515-248-9010 fax
terri.combs@faegrebd.com
jeff.hicks@faegrebd.com

*Attorneys for Questar Capital Corp.*

**WOMBLE, CARLYLE, SANDRIDGE & RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

**MARSHALL DENNEHEY WARNER, COLEMAN & GOGGIN**

/s/ Armand J. Della Porta, Jr.
Armand J. Della Porta, Jr. (No. 2861)
1220 North Market Street, 5th Fl.
Wilmington, DE 19801
Telephone: 302.552.4323
Facsimile: 302.651.7905
ajdellaporta@mdwcg.com

-and-

Ford Elsaesser
Cindy Elliott
Elsaesser Jarzabek Anderson
Elliott & Macdonald, Chtd.
PO Box 1049
102 South Euclid Avenue, Suite 307
Sandpoint, ID  83864
Telephone: 208.263.8517
Facsimile: 208.263.0759
ford@ejame.com
cindy@ejame.com

*Attorneys for Advisory Group Equity Service,
Ltd., Askar Corporation, Burch & Co., Inc.,
Capital Analysts Inc., Centaurus Financial Inc.,
Mid Atlantic Capital Group, Nations Financial
Group, Inc., Partnervest Securities, Inc.,
Partnervest Financial Group, LLC, and RP
Capital, LLC*

**WOMBLE, CARLYLE, SANDRIDGE &
RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

Matthew T. Boos
Patrick D.J. Mahlberg
Fredrikson & Byron, PA
200 South Sixth Street, Ste 400
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
Facsimile: 612.492.7077
mboos@fredlaw.com
pmahlberg@fredlaw.com

*Attorneys for Capital Management Securities,
Inc.*

Denis C. Dice
Joel Wertman
Marshall, Dennehey, Warner, Colman &
Goggin
1845 Walnut Street
Philadelphia, PA 19103
Telephone: 215.575.2779
Facsimile: 215.575.2600
dcdice@mdwcg.com
jmwertman@mdwcg.com

*Attorneys for Brecek & Young Advisors*

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

George J. Marcus
Jennie L. Clegg
David C. Johnson
Andrew C. Helman
Marcus, Clegg & Mistretta, P.A.
One Canal Plaza, Suite 600
Portland, ME  04101
Telephone: 207.828.8000
Facsimile: 207.773.3210
gmarcus@mcm-law.com
djohnson@mcm-law.com
jclegg@mcm-law.com

-and-

**SAUL EWING LLP**


/s/ Lucian B. Murley
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone: 302.421.6898
Facsimile: 302.421.5864
lmurley@saul.com

-and-

Martin Jaszczuk
Alan M Wolper
Helen Din
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: 312.443.0222
Facsimile: 312.896.6222
mjaszczuk@lockelord.com
awolper@lockelord.com
hdin@lockelord.com

*Attorneys for Calton & Associates, JW Cole
Financial, Merrimac Corporate Securities, Inc.,
and Resource Horizons Group LLC*

Robert A. Buhlman
Sarah G. Kim
Corey D. Winer
Bingham McCutchen LLP
One Federal Street
Boston, MA 02127
Telephone: 617.951.8000
Facsimile: 617.951.8736
robert.buhlman@bingham.com
sarah.kim@bingham.com
corey.winer@bingham.com

*Attorneys for Equity Services Inc.*


**LAW OFFICE OF FRED BARAKAT**


/s/ Fred Barakat
Fred Barakat (No. 3069)
901 N. Market St., Suite 460
Wilmington, DE 19801
Telephone: 302.479.7771
Facsimile: 484.770.8209
Fredbarakat.attorney@verizon.net

-and-

Lee D. Lubin
Law Office of Lee David Lubin, Inc
16133 Ventura Boulevard, Suite 1174
Encino, CA 91436
818-728-0712
818-995-7335 (Fax)
Leelubin@gmail.com

*Attorneys for Investment Security Corp.*

**WOMBLE, CARLYLE, SANDRIDGE &
RICE, LLP**

/s/ Francis A. Monaco, Jr.
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com

-and-

Christian T. Kemnitz
Brian J. Poronsky
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: 312.902.5611
Facsimile: 312.577.4499
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for KMS Financial Services, Inc.,
LaSalle Street Securities, OMNI Brokerage, Inc.,
Regal Securities, Inc., and Sanders Morris
Harris, Inc.*

**COOLEY MANION JONES LLP**

/s/ Amaryah K. Bocchino
Jason A. Cincilla (No. 4232)
Amaryah K. Bocchino (No. 4879)
Peter J. Faben (No. 5163)
1105 North Market St., Suite 200
Wilmington, DE 19801
Telephone: 302.657.2100
Facsimile: 302.657.2104
jcincilla@cmjlaw.com
abocchino@cmjlaw.com
pfaben@cmjlaw.com

-and-

Jessica Longobardi
Fred Knopf
Wilson Elser Moskowitz Edelman & Dicker
LLP
3 Gannett Drive
White Plains, NY 10604-3407
Telephone: 914.323.7000
Facsimile: 914.323.7001
jessica.longobardi@wilsonelser.com

*Attorneys for National Securities Corp. and
NEXT Financial Group*

**FERRY, JOSEPH & PEARCE, PA**

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box. 1351
Wilmington, DE 19899-1351
Telephone: 302.575.1555
Facsimile: 302.575.1714
ttacconelli@ferryjoseph.com

-and-

**WOMBLE, CARLYLE, SANDRIDGE &
RICE, LLP**

/s/ Mark L. Desgrosseilliers
Francis A. Monaco, Jr. (No. 2078)
Mark L. Desgrosseilliers (No. 4083)
222 Delaware Avenue, Suite 1501
Wilmington, DE 1801
Telephone: 302.252.4340
Facsimile: 302.661.7730
fmonaco@wcsr.com
mdesgrosseilliers@wcsr.com

-and-

Carla B. Minckley
Thomas D. Birge
Brige & Minckley, PC
9055 East Mineral Circle, Suite 110
Centennial, Colorado  80112-3457
Telephone: 303.860.7100
Facsimile: 303.860.7338
cminckley@birgeminckley.com
tbirge@birgeminckley.com

*Attorneys for Intervest International Equities*
*Corp.*

**BIFFERATO GENTILOTTI LLC**

/s/ Garvan F. McDaniel
Garvan F. McDaniel (No. 4167 )
900 North King Street, Plaza Level
Wilmington, DE 19801
Telephone: 302.429.1900
Facsimile: 302.429.8600
gmcdaniel @bgdelaw.com

-and-

Gregg Breitbart
Kaufman Dolowich Voluck & Gonzo LLP
2101 NW Corporate Blvd, Ste 218
Boca Raton, FL 33431
Telephone: 561.910.5650
Facsimile: 888-464-7982
gbreitbart@kdvglaw.com

*Attorneys for Dawson James Securities, Inc.*

Janine M. Lucas
Gary M. Saretsky
Saretsky Hart Michaels & Gould PC
995 S. Eton
Birmingham, MI 48009
Telephone: 248.502.3300
Facsimile: 248.502.3301
jlucas@saretsky.com
gsaretsky@saretsky.com

*Attorneys for Sammon Securities Company*
*LLC and Sigma Financial Corp.*

**BIFFERATO LLC**

By:    */s/ Tom Driscoll III*
Kevin G. Collins (No. 5149)
Tom Driscoll III (No. 4703)
800 N. King Street, Plaza Level
Wilmington, DE  19801
Telephone:  (302) 225-7600
Facsimile:  (302) 429-8600
kcollins@bifferato.com
tdriscoll@bifferato.com

-and-

**WOLLMUTH MAHER & DEUTSCH**
**LLP**
James N. Lawlor
Fletcher W. Strong
500 Fifth Avenue
New York, NY 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
jlawlor@wmd-law.com
fstrong@wmd-law.com

*Counsel for Axiom Capital*

**FRANKLIN & PROKOPIK**

By:  */s/ Eric D. Boyle*
Eric D. Boyle (No. 3577)
300 Delaware Avenue, Suite 1340
Wilmington, DE  19801
Telephone:  (302) 594-9780
Facsimile:  (302) 594-9785
eboyle@fandpnet.com
acole@fandpnet.com

-and-

**AKERMAN SENTERFITT, LLP**
Kathy M. Klock
Jonathan B. Butler
222 Lakeview Avenue, Suite 400
West Palm Beach, FL  33401
Telephone:  (561) 671-3672
Facsimile:  (561) 659-6313
kathy.klock@akerman.com
jonathan.butler@akerman.com
***Counsel** for Money Concepts Capital Corp.*

## EXHIBIT A

### Broker Defendants Joining The Motion

| Defendant's Name |
| --- |
| Advisory Group Equity Service, Inc. |
| Askar Corp. |
| Axiom Capital |
| Burch & Co., Inc. |
| Capital Analysts, Inc. |
| Capital Management Securities, Inc. |
| Centarus Financial Inc. |
| Mid Atlantic Capital Group |
| Nations Financial Group, Inc. |
| Partnervest Securities, Inc. |
| Partnervest Financial Group, LLC |
| RP Capital, LLC |
| Sammons Securities Company, LLC |
| Sigma Financial Corp. |
| American Portfolios |
| Equity Services, Inc. |
| Intervest International Equities Corporation |
| Brecek & Young Advisors |
| Calton & Associates |
| JW Cole Financial |
| Merrimac Corporate Securities, Inc. |
| Resource Horizons Group LLC |
| Investment Security Corp. |
| KMS Financial Services, Inc. |
| LaSalle Street Securities |
| Omni Brokerage, Inc. |
| Regal Securities Inc. |
| Sanders Morris Harris, Inc. |
| National Securities Corp. |
| NEXT Financial Group |
| Questar Capital Corp. |
| Dawson James Securities, Inc. |
| Money Concepts Capital Corp. |